# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARC J. MILLICAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06cv1582 (GK)** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant respectfully moves to dismiss this case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, defendant respectfully moves for summary judgment. In support of this Motion, defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities. A proposed Order is attached.

December 19, 2007 Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

_____/s/_____
KAREN MELNIK, D.C. Bar #436452
Assistant United States Attorney
Judiciary Center Building
555 4th St, NW Rm E4112- Civil Division
Washington, D.C. 20530
(202) 307-0338

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
MARC J. MILLICAN,                )
                                 )
        Plaintiff,               )
                                 )        Civil Action No. 06-1582 (GK)
        v.                       )
                                 )
UNITED STATES                    )
                                 )
        Defendant.               )
———————————————————————)

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S  MOTION TO DISMISS
OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(1) and 12(b)(6) or, in the alternative, Rule 56 of the Federal

Rules of Civil Procedure, the United States respectfully requests that the Court dismiss plaintiff's

complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief

may be granted, or alternatively, grant summary judgment for defendant.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Marc J. Millican is a major in the United States Air Force Retired Reserve.

Amended Compl. at ¶ 34.  In 1999 and 2000, plaintiff was a C-5 pilot and member of the 312th

Airlift Squadron headquartered at Travis Air Force Base, California.  Amended Compl.at ¶ 1;

Administrative Record ("AR") 54-55.

In late 1998, the Department of Defense embarked on a large-scale program called the

Anthrax Vaccination Immunization Program ("AVIP"), to protect military members and civilian

employees against inhalation anthrax.  Amended Compl. at ¶ 2; see generally Doe v. Rumsfeld,

297 F. Supp. 2d 119, 125 (D.D.C. 2003). [1]  As part of the AVIP, in early 1999 the Air Force

Reserve directed that members of the 312th Airlift Squadron begin a series of vaccinations

against the anthrax virus.  AR 24-25.  Squadron members who did not receive the anthrax

immunization series were not permitted to perform airlift missions, and were later barred from

participating in Reserve Unit Training Assemblies ("UTAs" or drills).  AR 45.

     In response to the directive, plaintiff refused to receive the anthrax immunization series.

Amended Compl. at ¶ 15. Moreover, plaintiff urged other members of his squadron to refuse as

well.  AR 3, 50-51.  As a result, the Air Force took a number of adverse administrative actions

against him:

- On December 19, 1999, Major Millican's squadron commander, Lt Col Frank J. Padilla, the 312th Airlift Squadron Commander (312 AS/CC), issued a Letter of Reprimand ("LOR") to Major Millican; the LOR was later placed in Major Millican's Unfavorable Information File ("UIF"). AR 50-51, 131. The basis for the LOR was not that Major Millican had refused the AVIP, but that he had actively encouraged squadron members to refuse the anthrax series in a manner intended to cause discontent and disloyalty in the unit. Id.

- In March 2000, 312 AS/CC directed an Officer Performance Report ("OPR") in which he wrote that Major Millican's performance did not meet professional and leadership standards, Major Millican had failed to participate in unit training, and that Major Millican's conduct with respect to the AVIP A sought to foment discord within the squadron. AR 53-55.

---

[1] In a February 9, 2006, the United States Court of Appeals for the District of Columbia Circuit held that the District Court's injunction barring the Department of Defense from administering the anthrax vaccine had dissolved by its own terms following the FDA determination that the vaccine was safe and effective and not misbranded.  Doe v. Rumsfeld, 172 Fed. Appx. 327 (D.C. Cir. 2006) (order finding appeal moot and remanding case to district court).

- Also in March 2000, Colonel Gerald A. Black, the commander of the 349th Air Mobility Wing (349 AMW/CC), recommended to the Secretary of the Air Force that Major Millican's name be removed from the FY2000 Lieutenant Colonel promotion list. Amended Compl & 30; AR 4, 56. The 349 AMW/CC cited (1) Major Millican's attempt to "purposefully undermine the credibility of squadron leadership"; (2) his attempt to disrupt orderly unit operations; and (3) his disregard of Air Force policies and procedures. Id.

- On April 17, 2002, the President approved the recommendations of the Secretary of Defense and the Secretary of the Air Force and removed Major Millican's name from the promotion list. AR 59. The removal action resulted in a first-time statutory non-selection for promotion. See 10 U.S.C. § 14501(b)(3).[2]

- In September 2002, an Air Force Selection Board did not select Major Millican for promotion to Lieutenant Colonel. App. 60. This second non-selection resulted in statutory separation from the Air Force Reserve. Id. See 10 U.S.C. § 14506.[3]

---

[2] Title 10, United States Code Section 14501(b) ("Officers Twice Failed of Selection") states in pertinent part as follows:

(b) An officer shall be considered for all purposes to have twice failed of selection for promotion if any of the following applies:

. . .

(3) The officer's name has been removed from the report of a selection board under section 14111(b) [10 U.S.C. § 14111(b)] or from a promotion list under section 14310 of this title [10 U.S.C. § 14101(a)] or by a special selection board convened under section 14502(a) or 14502(b) of this title [10 U.S.C. § 14502(a) or 14502(b)] and - -

(A) the officer is not recommended for promotion by the next mandatory promotion board convened under section 14101(a) or special selection board convened under section 14502(a) of this title for that officer's grade and competitive category.

[3] Title 10, United States Code Section 14506 ("Effect of Failure of Selection for Promotion: Reserve Majors of the Army, Air Force, and Marine Corps and Reserve Lieutenant Commanders of the Navy") provides in pertinent part as follows:

Unless retained as provided in sections 12646, 12686, 14701, or 14702 of this title, each reserve officer of the Army, Navy, Air Force, or Marine Corps who holds the grade of major or lieutenant commander who has failed of selection to the next higher grade for the second time and whose name is not on a list of officers recommended for promotin to the next

3

•    As a two-time non-selection for promotion, Major Millican was involuntarily transferred to the Retired Reserve in the rank of Major on April 1, 2003.  AR 60-62.

In July 2003, Major Millican applied to the Air Force Board for Correction of Military Records ("AFBCMR" or "Board"), requesting that the Board void the various adverse actions taken against him.  AR 10.  In a decision dated August 4, 2004, the AFBCMR found no material error or injustice in any of the Air Force actions, and denied plaintiff's application.  AR 2-9.

In reaching its conclusion in plaintiff's case, the AFBCMR solicited written advisory opinions concerning plaintiff's claims in accordance with 32 C.F.R. § 865.2(c).[4]  It considered advisory opinions from ARPC/DPB [5] and the USAF/JAA[6] , both which concluded plaintiff's application should be denied.  The AFBCMR also received multiple filings from plaintiff in support of his case, and in response to the other opinions filed with the AFBCMR.  The AFBCMR reviewed all of these materials and decided to deny plaintiff's application.  In doing so, the Board found that plaintiff "did not demonstrate the existence of material error or

---

higher grade shall, if not earlier removed from the reserve active-status list, be removed from that list in accordance with section 14513 of this title on the later of (1) the first day of the month after the month in which the officer completes 20 years of commissioned service, or (2) the first day of the seventh month after the month in which the President approves the report of the board which considered the officer for the second time.

[4]  Title 32, Code of Federal Regulations, § 865.2(c) ("Deciding Cases") provides as follows: "The Board normally decides cases on the evidence of the record.  It is not an investigative body.  However, the Board may, in its discretion, hold a hearing or call for additional evidence or opinions in any case."

[5]  ARPC/DPB is the Selection Board Secretariat for the Air Reserve Personnel Center. AR 64, 71.

[6]  SAF/JAA is the Administrative Law Division of the Office of The Judge Advocate General of the United States Air Force. AR 130, 135.

injustice."  AR 9.

On December 19, 2005, plaintiff filed a complaint in the United States Court of Federal Claims seeking review of the Board's August 4, 2004 decision, affirming the Air Force's 2002 decision to remove his name from its Fiscal Year 2000 ("FY2000") Lieutenant Colonel promotion list, and its April 2003 decision to transfer him to the Retired Reserve as a Major rather than as a Lieutenant Colonel.  Compl. at ¶¶ 1, 13-14 (attached hereto).  Plaintiff also asked the Board to remove related derogatory records from his personnel file.  Compl at ¶ 1.

On March 13, 2006, defendant filed a Motion to Dismiss.  <u>Millican v. United States</u>, No. 05-1330C (Fed Cl. August 24, 2007) (attached hereto) at 27.  On March 29, 2006, plaintiff filed a Motion to Transfer.  <u>Id</u>.  On May 2, 2006, plaintiff filed a Motion for Leave to Amend Complaint and an Amended Complaint.  <u>Id</u>.  On August 24, 2006, the Court of Federal Claims granted plaintiff's Motion for Leave to Amend Complaint, denied defendant's Motion to Dismiss and granted plaintiff's Motion to Transfer the case to the United States District Court for the District of Columbia.  <u>Id</u>.  The Court of Federal Claims concluded that each of plaintiff's claims could have been filed in a federal district court for review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 <u>et seq</u>, and that transfer would be in the interest of justice.  <u>Id</u>. at 26.

## II.    ARGUMENT

It is the applicant's burden, before the AFBCMR, to provide "sufficient evidence of probable material error or injustice."  32 C.F.R. § 865.4(a).  The Board's jurisdiction to amend military records is limited to those instances in which correction is "necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  The Board's refusal to set aside plaintiff's Officer Performance Report (OPR) and his Letter of Reprimand (LOR) was not arbitrary,

capricious, an abuse of discretion or contrary to law.

Plaintiff's misconduct provided the basis for the LOR and the negative comments in the OPR. Plaintiff's commander issued the LOR because plaintiff "engaged in acts of a nature to cause discontent and undermine military discipline within this squadron." AR 50, 131. Plaintiff's specific acts of misconduct included "efforts to actively seek out squadron members and encourage them to defy Air Force policy by refusing to undergo the anthrax immunization series," and demonstrating an "apparent intent to raise discontent and disloyalty" by sending e-mails to squadron members advising them that the commander did not care about them and encouraging them to disregard the commander's advice and directives. Id. Plaintiff did not respond to the LOR. AR 131. When negative remarks regarding plaintiff's misconduct were included in his OPR, plaintiff was informed of his right to respond, but he failed to do so. AR 131.

The Board found that plaintiff "provided no evidence showing the referral OPR was inaccurate." AR 6. The referral OPR "accurately reflected [plaintiff's] negative impact on mission readiness, good order, and discipline." Id. The Board found that the LOR was given "not for refusing the anthrax shot, but for inciting disloyalty and mistrust within the squadron." AR 5. Plaintiff "was not at liberty to actively persuade other squadron members to refuse to participate." Id. His acts of misconduct and subsequent failure to respond to the LOR and OPR at the appropriate time, are sufficient reasons for the Board's refusal to set them aside. As such, the Board's actions were reasonable, in accordance with the law, and not arbitrary, capricious or an abuse of discretion.

The President determined that plaintiff's misconduct, which  resulted in plaintiff's

6

receipt of a Letter of Reprimand and a referral Office Performance Report, did not warrant his

promotion to lieutenant colonel and, accordingly, removed his name from the promotion list. AR

6, 59, 67. By statute, the President's decision to remove plaintiff's name from the promotion list

is tantamount to plaintiff being not selected for promotion in the first place. 10 U.S.C. §

14501(b)(3). See footnote 2. The promotion board's decision to non-select plaintiff for

promotion after the President removed plaintiff from the promotion list is non-justiciable because

the decision to promote an officer is a matter which courts defer to the expertise of the military

services. See Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1511 (D.C. Cir. 1989)

("Appellant's request for retroactive promotion falls squarely within the realm of nonjusticiable

military personnel decisions.").

　　　　The Board correctly found that plaintiff presented "no grounds for the Board to set aside

[his] second non-selection for promotion. AR 6. After plaintiff was not selected by the

promotion board the following year for advancement, the Air Force properly considered plaintiff

as having been twice non-selected for promotion. When plaintiff was non-selected for promotion

a second time, the Air Force, as required by law under 10 U.S.C. § 14506, automatically

transferred plaintiff to the Retired Reserve on his adjusted mandatory separation date of April 1,

2003. See footnote 3. As there was no error or injustice, the Board had no reason to grant relief

to plaintiff.

### A.　　The Applicable Legal Standards

#### 1.　　Lack of Jurisdiction (12(b)(1))

"On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1),

the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction." Fed.

Election Comm'n v. Club for Growth, Inc., 432 F. Supp. 2d 87, 99 (D.D.C. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). "The Court may dismiss a complaint for lack of subject-matter jurisdiction only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. (quoting Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 315 F.3d 338, 343 (D.C. Cir. 2003)).

2.    Failure to State a Claim (12(b)(6))

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Atchinson v. District of Columbia, 73 F. 3d 418, 421 (D.C. Cir. 1996). A complaint may be dismissed for failure to state a claim upon which relief may be granted, if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested. Appleton v. United States, 69 F. Supp. 2d 83, 86 (D.D.C. 1999); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000). A court should dismiss a complaint for failure to state a claim when the complaint fails "to raise a right to relief above the speculative level." E.g., Bell Atlantic v. Twombly, 1275 S.Ct. 1955, 1956 (2007). The court need not, however, accept as true the plaintiff's legal conclusions. See Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997). From the facts alleged in the complaint in this case, Plaintiff can prove no set of facts that would entitle him to relief.

3.    Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). In determining whether a genuine issue of material fact exists, a court must view all facts, and draw all reasonable inferences, in the light

8

most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).  The party opposing summary judgment "may not rest upon the mere

allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  "Summary Judgment is an

appropriate procedure for resolving a challenge to a federal agency's administrative decision

when review is based upon the administrative record." Bloch v. Powell, 227 F. Supp. 2d 25,

30-31 (D.D.C. 2002).

                    4.        Deference to the Air Force

When called upon to review a decision of a military records correction board, the

standard of review is whether the decision is arbitrary, capricious, unsupported by substantial

evidence, or contrary to law.  Chappell v. Wallace, 462 U.S. 296, 303 (1983).   To prevail in this

Court, Plaintiff "must overcome the strong, but rebuttable, presumption that administrators of the

military, like other public officers, discharge their duties correctly, lawfully, and in good faith."

Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir 1997) (quoting Sanders v. United States, 594 F.2d

804, 813 (Cl. Ct. 1979)).  To rebut this presumption, Plaintiff bears the burden to demonstrate

through "cogent and clearly convincing evidence," that the AFBCMR's findings were arbitrary,

capricious, unsupported by substantial evidence, or contrary to law or regulations.  Calloway v.

Brownlee, 366 F. Supp. 2d 43, 53 (D.D.C. 2005); McDougall v. Widnall, 20 F.Supp. 2d 78, 82

(D.D.C. 1998).  Due to this very high standard, only the most egregious agency decisions do not

satisfy this very deferential standard of review.  Kreis v. Air Force, 866 F.2d 1508, 1515 (D.C.

Cir. 1989).

In reviewing an agency's action under the APA standard, the Court is limited to reviewing

the administrative record that was in front of the agency when it made its decision, Commercial Drapery v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998), and it "will not disturb the decision of an agency that has examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." MD Pharm. Inc. v. Drug Enforcement Administration, 133 F.3d 8, 16 (D.C. Cir. 1998). The explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge." Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995). A reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Id. Even if reasonable minds might reach differing conclusions, the court is not empowered to substitute its judgment for that of the agency. U.S.P.S. v. Gregory, 534 U.S. 1, 11 (2001).

"When reviewing a decision by a military Correction Board, a Court must do so under an 'unusually deferential application of the arbitrary and capricious standard of the APA.'" Lebrun v. England, 212 F. Supp. 2d 5, 14 (D.D.C. 2002) (quoting Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002)); see also Piersal v. Winter, 435 F.3d 319 (D.C. Cir. 2006)(Review of military correction board decision is to be under a particularly deferential standard of review). "Moreover, military boards such as the AFBCMR are entitled to even greater deference than civilian administrative agencies." Labin v. Harvey, 2006 U.S. Dist. LEXIS 17937, *18 (D.D.C. April 10, 2006), citing Calloway v. Brownless, 366 F. Supp. 2d 43, 53 (D.D.C. 2005). This higher level of deference "is calculated to ensure that the courts do not become forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Cone v. Caldera, 223 F.3d

789, 793 (D.C. Cir. 2000). Thus, a court need only find that the AFBCMR's decision "minimally

contains a rational connection between the facts found and the choice made." <u>Labin</u>, at *19,

quoting <u>Frizelle</u>, 111 F.3d at 176.

**B.    The AFBCMR**

The AFBCMR acts under authority delegated to it by the Secretary of Defense, who is

empowered to amend military records. <u>See</u> 10 U.S.C. § 1552. In most circumstances, the

Secretary accomplishes these corrections by "acting through boards comprised of civilians from

the executive part of that military department." <u>Id</u>. In a few limited circumstances not at issue in

this case - - namely, favorable corrections regarding enlistment or re-enlistment, promotion or

appointment, the Secretary may act without resorting to a civilian board. <u>Id.</u> at § 1552(a)(2).

Whether acting alone or through a civilian board, the authority to correct records is statutorily

limited to instances when the Secretary "considers it necessary to correct an error or remove an

injustice." <u>Id.</u> at § 1552(a)(1). Both the Secretary and the civilian board are limited in the types

of remedies they may provide. Besides correcting military records, they are statutorily authorized

to order compensation to an applicant for loss of pay, allowances, compensation, emoluments, or

other pecuniary benefits, or repayment of fines or forfeitures if such payment is due as a result of

correcting the applicant's record. <u>See</u> 10 U.S.C. §1552(c).

The AFBCMR is the civilian board through which the Secretary acts for matters relating

to the correction of Air Force records. The AFBCMR typically renders decisions based on the

record before it. <u>See</u> footnote 4, <u>supra</u>, quoting 32 C.F.R. § 865.2(c). It is not an investigative

body, though it may hold hearings or call for additional evidence or opinions in any case. <u>Id</u>.

Any member of the Air Force is permitted to apply for correction of his or her military records.

Applicants have three years from the time the alleged error or injustice is discovered to file their

application, but the AFBCMR may waive untimely filing "in the interest of justice." See 32

C.F.R. § 865.3(f)(1). Applying to the AFBCMR does not stay other proceedings. See 32 C.F.R.

§ 865.3(g).

An applicant bears the burden of providing "sufficient evidence of probable material error

or injustice," 32 C.F.R. § 865.4(a), but once an application is received, the AFBCMR may (1)

solicit "additional information and advisory opinions . . . from any AF organization or official,"

id. at § 865.4(a)(1); (2) "require the applicant to furnish additional information," id. at §

865.4(a)(2); and order a hearing at which the applicant may choose to have counsel represent

him. Id. at § 865.4(f), (h). The AFBCMR typically gives the applicant an opportunity to review

and comment on the advisory opinions before issuing its written decision. Id. at § 865.4(b).

### C.    Legal Challenges To The Anthrax Vaccination Program

#### 1.    Doe v. Rumsfeld

At plaintiff's request, this Court suspended proceedings in the instant case from October

27, 2006 to November 13, 2007, pending the outcome of Doe v. Rumsfeld, 297 F. Supp. 2d 119

(D.D.C. 2003). See Motion to Suspend Proceedings, Dkt. # 6; Status Report and Proposed

Briefing Schedule, Dkt. # 15. In his Motion to Suspend Proceedings, plaintiff indicates that

> [t]he related issue asserted in Millican's [sic] arises from the
> military's vaccination order he received in 1999 and the FDA's
> failure to determine that the vaccine was safe and effective for the
> military's intended purpose. Later in 2003 other military plaintiffs
> in Doe were successful in enjoining the vaccine program for this
> reason. Id, Mem.Op., (D.D.C., Dec. 22, 2003). When the FDA in
> December 2005 issued it Final Order, the injunction was dissolved
> on appeal. Id 04-5440 (D.C.Cir., Feb. 9, 2006, citing 70 FR 75180,
> 75197 (Dec. 19 2005)).

Id. at 1-2.  Plaintiff also relied upon Doe v. Rumsfeld in his Amended Complaint at ¶ 29 n.5, and ¶¶ 36, 39-43.  In his Amended Complaint, plaintiff sets forth his belief that the preliminary and permanent injunctions issued in that case retroactively rendered illegal the order he received to take the anthrax vaccination.  See Amended Compl. at ¶¶ 40, 42.

By way of background, in 2003 six unnamed plaintiffs who were ordered to submit to anthrax vaccinations in connection with their military service, filed suit in this Court claiming that the military's AVIP was illegal.  They argued that the vaccine being administered in AVIP, the Anthrax Vaccine Adsorbed ("AVA"), to the extent it was being used against inhalation exposure to anthrax, was either an experimental drug or an approved drug being used for an unapproved purpose. Plaintiffs claimed, therefore, that the AVIP violated 10 U.S.C. § 1107, which precludes the administration of experimental drugs to service members absent their informed consent or a Presidential waiver.  Doe v. Rumsfeld, 297 F. Supp. 2d 119, 122-23 (D.D.C. 2003).  Plaintiffs moved for a preliminary injunction barring the military from continuing the AVIP.  Id. at 122.

Although the AVA was approved for use in inoculating individuals against exposure to anthrax, and its license was silent as to the route of exposure, the drug was the subject of an Investigational New Drug ("IND") application, seeking to amend the drug's label to state specifically that it was safe for use against inhalation exposure to anthrax.  Id. at 124.  The District Court granted the plaintiffs' motion for a preliminary injunction finding a likelihood of success on the merits because the AVIP's use of the AVA for inoculation against inhalation exposure to anthrax violated 10 U.S.C. § 1107.  Id. at 135.  The Court stated that "[i]n sum, because the record is devoid of an FDA decision on the investigational status of AVA, this Court

13

must determine AVA's status for itself.  This Court is persuaded that AVA is an investigational drug and a drug being used for an unapproved purpose."  Id.

Shortly after the Court entered a preliminary injunction in the case, the FDA published a final rule categorizing AVA as safe and effective for use against inhalation exposure to anthrax. See Doe v. Rumsfeld, 297 F. Supp. 2d 200 (D.D.C. 2004). Defendants moved to have the Court's preliminary injunction stayed as to all parties other than the named plaintiffs.  Id. at 201. The Court lifted the injunction as to all parties except the named plaintiffs, noting that the preliminary injunction was premised on the Court's finding that the evidence was "devoid of an FDA final decision on the investigational status of [AVA]."  Id. at 200-01.

Nearly a year later, following further briefing, the Court considered the FDA's final rule on AVA in Doe v. Rumsfeld, 341 F. Supp. 2d 1 (D.D.C. 2004).  After addressing a number of procedural arguments not relevant to the instant lawsuit, the Court concluded that the FDA's final rule on AVA violated the APA because the FDA had not followed its own internal guidelines which require providing the public with  "an opportunity to comment on the safety and efficacy of AVA as it pertains to inhalation anthrax."  Id. at 15.  Although the Court had not certified a class of plaintiffs, it issued a permanent injunction barring the use of AVA on any individual subject to the AVIP program.  Id. at 19. The Court also remanded the final rule to the FDA for "reconsideration following an appropriate notice-and-comment period in accordance with the APA, [and] the Agency's own regulations."  Id. at 16.

Soon after the District Court entered the permanent injunction, defendants appealed to the D.C. Circuit.  While the appeal was pending, the FDA engaged in the notice-and-comment period ordered by the district court.  On December 19, 2005, the FDA issued a new final rule,

14

again classifying AVA as safe and effective for use against inhalation anthrax.  See Doe v. Rumsfeld, 172 Fed. Appx. 327, 328 (D.C. Cir. Feb. 9, 2006) (per curiam).  The Circuit concluded that the FDA's compliance with the District Court's order effectively dissolved the District Court's injunction, which by its own terms remained in effect "unless and until FDA classifies AVA as a safe and effective drug for its intended use." Id. at 327.  The Circuit also explicitly noted that the District Court's order "never granted . . . declaratory relief, nor any other relief except the injunction." Id. at 328.  Thus, the Circuit remanded the case to the District Court because there was no longer a live case or controversy before it.[7]

### 2.    Other Legal Challenges To The AVIP

Before Doe v. Rumsfeld, a number of other courts examined the AVIP's legality, and they upheld orders given to military personnel to take the anthrax vaccine.  For example, in contrast to the ruling in Doe v. Rumsfeld, the United States District Court for the Western District of Pennsylvania held in O'Neil v. Secretary of the Navy, 76 F. Supp. 2d 641 (W.D. Pa. 1999), that because the FDA licensed the AVA in 1970, it was not an experimental drug, and that the AVIP was, therefore, a " lawful response by defendants to the dangers with which the military personnel of the United States may be confronted in the future." Id. at 645.

Similarly, in Marzares v. Dep't of the Navy, 302 F.3d 1382 (Fed. Cir. 2002), the Federal

---

[7]  On remand, the only issue remaining was attorneys' fees and costs.  Doe v. Rumsfeld, 501 F.Supp. 2d 186, 188 (D.D.C. 2007).  The Doe Court concluded that plaintiffs were entitled to fees and costs for litigating the action, including the appeal " because plaintiffs are the prevailing party and the government's position was not substantially justified." Id. at 190.  However, because plaintiffs' request for attorneys' fees and costs contained "flaws that preclude the Court from determining the proper amount of fees and costs," the petition was denied without prejudice to amend. Id. at 195.  Plaintiffs' flaws included excessive hourly rates for attorneys and staff and improper accounting of billable hours and costs. Id. at 191-95.

Circuit examined claims brought by civilian members of the Navy who were removed after refusing to comply with an order to take the anthrax vaccine. Though it did not address the investigational status of the AVA, the Federal Circuit held that "[t]he military has broad authority and discretion in dealing with its personnel, both military and civilian, including the protection of their health. The Navy did not exceed its authority or otherwise abuse its discretion by ordering [plaintiffs] to undergo anthrax vaccination." Marzares, 302 F.3d at 1385.  See also United States v. Washington, 57 M.J. 394, 398 (C.A.A.F. 2002) (upholding the conviction of a service member, over his defense of duress, who refused to receive the last in the series of vaccinations administered under the AVIP, noting  "[w]hen a commander gives an order that is reasonably necessary to accomplish the mission - - including an order involving protective measures, such as defensive positioning, wearing protective armor, or taking a vaccine to counter a biological weapon - - the service member is obligated to obey or face punishment under Articles 90, 91, or 92, UCMJ.").

     Finally, in United States v. Kisala, 64 M.J. 50 (2006), a case post-dating Doe v. Rumsfeld, the U.S. Court of Appeals for the Armed Forces upheld Kisala's conviction for refusing to take the anthrax vaccine.  Kisala claimed that the order to take the anthrax vaccine was illegal, because at the time he received the order, the FDA had not issued a final rule approving the vaccine for use against inhalation anthrax, and because the vaccine was the subject of a pending IND application.  In support of his argument, Kisala cited Doe v. Rumsfeld.  The Court of Appeals for the Armed Forces rejected Kisala's claims, finding that he had failed to "overcome the presumption that the order to receive the Vaccine was lawful." Id. at 54.  The court distinguished Doe v. Rumsfeld, noting that Doe was a civil case challenging the legality of

the AVIP, while Kisala's case concerned the legality of the order he received to take the AVA, and his criminal disobedience of that presumptively lawful military order.  Id. at 53.  "The linchpin of this case is the presumed legality of the military order to receive the Vaccine. The district court opinions neither recognize nor address this critical presumption."  Id.

  **D.    This Court Lacks Jurisdiction To Set Aside President's Removal Action And To Promote Plaintiff To Lieutenant Colonel.**

  Notwithstanding plaintiff's strenuous objections to the basis for his removal from the FY2000 Lieutenant Colonel list, this Court lacks jurisdiction to review the propriety of the President's decision to remove plaintiff, as well as the merits of plaintiff's subsequent non-selection for promotion.  Dysart v. United States, 369 F.3d 1303, 1317 (Fed. Cir. 2004); Murphy v. United States, 993 F.2d 871, 872-73 (Fed. Cir. 1993); see also Fisher v. United States, 402 F.3d at 1177; Porter v. United States, 163 F.3d 1304, 1315-20 (Fed. Cir. 1998) (It is well-settled that the court's authority to review promotions extends only to whether the service followed its regulations and procedures.).

  This District Court has addressed this issue previously in Nation v. Dalton, 107 F. Supp. 2d 37 (D.D.C. 2000).  There, a Naval lieutenant "filed [an APA] complaint against the Secretary of the Navy (the "Secretary"), alleging that she had been improperly removed from the fiscal year 1995 promotion list for lieutenant commander before she retired."  Id. at 39.  Regarding plaintiff's request for a retroactive promotion, the District Court held that such request "is not justiciable because it would require a court to 'second-guess the Secretary's decision about how to best allocate military personnel in order to serve the security needs of the Nation.'"  Id. at 42 (quoting Kreis v. Secretary of the Air Force, supra, 866 F.2d at 1511.  While "a claim

17

challenging a records-correction decision is justiciable," the correctness of the Secretary's ultimate decision is not reviewable because it would "require the Court to substitute its judgment for that of the Secretary in the sensitive area of military personnel decisions."  See Nation v. Dalton, 107 F.Supp. 2d at 42, 43.

Under the APA, a "final agency action is subject to judicial review unless precluded by statute, or unless the action is committed to agency discretion by law."  See id. at 43 (citing 5 U.S.C. §§ 701(a), 704.  For instance, "[a] particular type of action is within the agency's non-reviewable discretion if the statute authorizing it is drawn in such broad terms that in a given case there is no law to apply."  See id. at 43 (internal quotation and citations omitted).  One such action includes "the removal of a reserve officer from a promotion list."  See Nation v. Dalton, 107 F.Supp. 2d at 44.  The relevant statute, 10 U.S.C. § 5905,[8] "places no limitation on the Secretary's authority to remove an officer from a promotion list prior to a promotion, and provides no standard by which to evaluate the Secretary's exercise of his removal authority."  See id. at 44 (citations omitted).

In this case, the removal statute at issue is 10 U.S.C. § 14310.  See footnote 8, supra.  As noted above, it places no limitation on the President's authority to remove an officer from a promotion list prior to promotion, and provides no standard by which to evaluate the President's exercise of removal authority.  Nation v. Dalton, 107 F. Supp. 2d at 44.  Thus, the Secretary's decision here to remove plaintiff from the FY2000 Lieutenant Colonel list is not justiciable.  See

---

[8] "Section 5905(a) was repealed effective October 1, 1996, and replaced by 10 U.S.C. § 14310(a), which states that: 'The President may remove the name of any officer from a promotion list at any time before the date on which the officer is promoted."  See Nation v. Dalton, 107 F.Supp. 2d at 44 n.8.

18

Richey v. United States, 322 F.3d 1317, 1327-28 (Fed. Cir. 2003) ( "No court is in a position to

resolve and pass upon the highly complicated questions and problems involved in the promotion

procedure."); Voge v. U.S., 844 F.2d 776, 781 (C.A. Fed. 1988) (court denies review of

non-selection for promotion and request for retroactive promotion); see also  Marbury v.

Madison, 5 U.S. 137, 162 (1803) ("The discretion of the executive is to be exercised until the

appointment has been made.").

Additionally, this District Court has held that the Secretary of Defense's decision to delay

a promotion under 10 USC 629(d)(4)[9]  (active duty statute counterpart to 10 USC 14310(c)[10] ) is

---

[9] 10 USC 629(d)(4), which concerns active duty officers states as follows:

> An appointment of an officer may not be delayed under this
> subsection for more than six months after the date on which the
> officer would otherwise have been appointed unless the Secretary
> concerned specifies a further period of delay. An officer's
> appointment may not be delayed more than 90 days after final
> action has been taken in any criminal case against such officer in a
> Federal or State court, more than 90 days after final action has been
> taken in any court-martial case against such officer, or more than
> 18 months after the date on which such officer would
> otherwise have been appointed, whichever is later.

[10] 10 USC 14311(d), which concerns reserve officers and the maximum length of delay in
promotion provides the following:

> The appointment of an officer to a higher grade may not be delayed
> under subsection (a) or (b) for more than six months after the date
> on which the officer would otherwise have been promoted unless
> the Secretary concerned specifies a further period of delay. An
> officer's appointment may not be delayed more than 90 days after
> final action has been taken in any criminal case against the officer
> in a Federal or State court of competent jurisdiction or more than
> 90 days after final action has been taken in any court-martial case
> against the officer. Except for court action, a promotion may not be
> delayed more than 18 months after the date on which the officer

non-reviewable because it lacks a standard by which to determine whether the Secretary's decision was arbitrary and capricious.  Lewis v. Rumsfeld, 154 F.Supp.2d. 56, 60 (D.D.C 2001).

Even if the six month and 18 month time restrictions applicable to promotion delay actions found in 10 U.S.C. § 14311(d) applied to plaintiff's promotion removal action, the absence of a promotion order or other public act of appointment, renders the plaintiff's appointment process, i.e. promotion to lieutenant colonel, incomplete.  The President's statutory authority to remove a reserve officer's name from the promotion list is 10 U.S.C. § 14310(a), which gives the President the authority to "remove the name of any officer from a promotion list at any time before the date on which the officer is promoted." See also Marbury v. Madison, 5 U.S. 137, 162 (1803) ("The discretion of the executive is to be exercised until the appointment has been made.").

The Dysart decision makes clear that when it comes to appointing an officer to the next higher grade, the President's authority is unfettered.  In holding the judiciary does not have a role in reviewing such decisions, the Federal Circuit determined this decision was nonreviewable even if subordinate officials had failed to comply with legal requirements.  Dysart , 369 F.3d at 1317.  Thus, even assuming error on the part of the Air Force or Department of Defense ("DOD") in the process of removing plaintiff's name from the promotion list, given that the President never appointed plaintiff to the next highest grade, this Court cannot review plaintiff's request to void the removal action based upon alleged procedural errors by the Air Force or DOD because doing so effectively negates the President's decision to not promote plaintiff.

For over 200 years, "the rule as to when an appointment takes place has been clear: 'when

_____

would otherwise have been promoted."

the last act to be done by the (appointing authority) was performed ...'" National Treasury Employees Union v. Reagan, 663 F.2d 239, 249 (D.C. Cir. 1981), quoting Marbury v. Madison, 5 U.S. 137, 156 (1803). Since plaintiff was never promoted to lieutenant colonel, the President had the authority to remove him from the promotion list. "Where a statute . . . commits decision making to the discretion of the President, judicial review of the President's decision is not available." Dysart v. United States, 369 F.3d at 1317 (quoting Dalton v. Specter, 511 U.S. 462, 477 (2004)). Because 10 U.S.C. § 14311(d) commits the decision of whether to remove a reserve officer's name from the promotion list to the discretion of the President, judicial review of the President's decision to remove plaintiff from the promotion list is not available. The President's decision to remove plaintiff from the removal list is not reviewable by this Court. See Dalton v. Specter, 511 U.S. 462, 477 (2004).

Regarding plaintiff's request to set aside his second non-selection for promotion, the AFBCMR denied his request because plaintiff's promotion record was considered by a properly convened selection board, which determined that plaintiff was not qualified for promotion. AR 6. In his prayer for relief, plaintiff requests to be promoted by operation of law to lieutenant colonel. Amended Compl. at 13. However, a request for retroactive promotion "falls squarely within the realm of nonjusticiable military personnel decisions." Kreis v. Secretary of the Air Force, 866 F.2d at 1511. Promotion actions are nonjusticiable, purely discretionary decisions outside the competency of this Court. Dysart, 369 F.3d at 1311; Richey v. United States, 322 F.3d at 1327-28 ( "No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure," quoting Porter, 163 F.3d 1304, 1316-17 (Fed Cir. 1998). Additionally, this Court is without authority to order plaintiff's

promotion because promotion nominations must be preceded by either recommendations from selection boards convened under 10 USC § 14101, or from Special Selection Boards ("SSBs") under 10 USC § 14502. Therefore, insofar as plaintiff seeks a retroactive promotion by judicial decree, this Court should dismiss that portion of his case under Fed. R. Civ. P. 12(b)(1) as nonjusticiable.

### E.    Plaintiff's APA Claim Fails Because the AFBCMR Did Not Act Arbitrarily, Capriciously Or Contrary To Law

Plaintiff claims that his LOR and OPR should be voided because he did not commit misconduct by refusing to take the anthrax shot and encouraging others to do the same. Further, plaintiff is challenging the removal action because it is based on the LOR and OPR, and because it was approved by the President more than 18 months after it was initiated. Lastly, he is also challenging the non-selection of promotion which occurred after the removal action, and his transfer to the Retired Reserves. However, as explained below, plaintiff did not satisfy his burden providing evidence of error or injustice to the Board. Therefore, the AFBCMR's denial of plaintiff's requested relief was not arbitrary, capricious, an abuse of discretion, or contrary to law.

Plaintiff claimed that his commander, Lt Col Padilla, had no legal authority to order him to take the anthrax shot because it was an experimental or investigational drug and therefore required informed consent of the recipient. AR 190. His evidence of alleged illegality was limited to the preliminary injunction issued by the D.C. District Court in Doe v. Rumsfeld, 297 F. Supp. 2d 119, 122-23 (D.D.C. 2003) to which plaintiff was not a party. In that case, the court issued a preliminary injunction in December 2003 on the Department of Defense's Anthrax

22

Vaccine Immunization Program ("AVIP") based on its determination that the FDA had not

formally approved the vaccine against inhalation anthrax. AR 190. As USAF/JAA indicated,

> It is important to recognize that the safety of the vaccine was not
> the focus of the injunction, rather the issue dealt solely with the
> procedural question of whether the FDA had prepared a formal
> opinion to support an earlier verbal opinion the DOD had received
> from FDA officials.

AR 190. When the FDA issued its order on December 19, 2005 which classified the anthrax

vaccine as "safe and effective and not misbranded" the district court's injunction dissolved by its

own terms because it remained in effect "unless and until FDA classifies AVA as a safe and

effective drug for its intended use." Doe v. Rumsfeld, 172 Fed. Appx. 327, 327-28 (D.C. Cir.

2006) (per curiam). There was no injunction in place on the AVIP at the time of plaintiff's

misconduct and during the removal action process.

Contrary to plaintiff's claim, Lt Col Padilla had legal authority to take the actions he did

against plaintiff. Military orders are "clothed with an inference of lawfulness." United States v.

New, 55 M.J. 96, 106 (2001). Federal and military courts have held orders to take the anthrax

vaccine to be legal, and upheld disciplinary action taken against personnel who refused to comply

with such orders. See Mazares v. Dep't of the Navy, 302 F.3d 1382, 1385 (Fed. Cir. 2002)

("The Navy did not exceed its authority or otherwise abuse its discretion by ordering [plaintiffs]

to undergo anthrax vaccination."); United States v. Washington, 57 M.J. 394, 398 (2002)

("When a commander gives an order that is reasonably necessary to accomplish the mission - -

including an order involving protective measures, such as defensive positions, wearing protective

armor, or taking a vaccine to counter a biological weapon-the service member is obligated to

obey or face punishment under Articles 90, 91, or 92, UCMJ."); O'Neil v. Sec. of the Navy, 76

F.Supp.2d 641, 645 (W.D. Pa. 2001) ( "the evidence established that the anthrax vaccination

program is a lawful response by defendants to the dangers with which the military personnel of

the United States may be confronted in the future . . . the vaccine is not an experimental drug." );

United States v. Kisala, 64 M.J. 50 (2006) (upheld conviction for refusal to obey order to take

anthrax vaccine of service member who claimed the order to take the vaccine was illegal because

when he received the order, the FDA had not issued a final rule approving the vaccine for use

against inhalation anthrax and distinguishing Doe v. Rumsfeld which failed to recognize the

presumed legality of the military order to receive the vaccine.).

        1.    The LOR and OPR

     Before the Board, plaintiff contended that the OPR and LOR "were unlawful reprisals

after he exposed falsehoods made concerning the anthrax vaccine (AVIP) . . ." AR 5. On

December 19, 1999, plaintiff "received an LOR for engaging in acts of a nature to cause

discontent and undermine military discipline within his squadron. Specifically, after the

members of the squadron were notified of the requirements to undergo the anthrax immunization

series, [plaintiff] sought out and spoke to members of his squadron advocating they refuse to

undergo the anthrax protocol." Id. Moreover, "he actively encouraged other pilots to persuade

additional members of his peer group to defy official Air Force policy and refuse to undergo the

anthrax immunization series." Id. In addition, the commander reproached [plaintiff] not for

refusing the anthrax shot, but for inciting disloyalty and mistrust within the squadron.

     The AFBCMR's jurisdiction to amend military records is limited to those instances in

which correction is "necessary to correct an error or remove an injustice." 10 U.S.C. §

1552(a)(1). "Injustice, when not also error, is treatment by the military authorities that shocks

the sense of justice." Sawyer v. United States, 18 Cl. Ct. 860, 868 (Cl Ct. 1989) (citation

omitted), rev'd on other grounds, 930 F.2d 1577 (Fed. Cir. 1991). See also Reale v. United

States, 1976 WL 23815 at *1 (Jan. 9, 1976 Ct. Cl.) ("Error means legal or factual error.").

The Board works under the assumption that OPRs are "accurate and objective." AFI 36-

2401, Correcting Officer and Enlisted Evaluation Reports, ¶ 1.1.3 (December 1, 1997).[11] "The

applicant asking for reevaluation must therefore provide strong evidence to overcome the report's

presumed validity." Id. This standard was correctly applied in ARPC/DPB's advisory opinion to

the Board. AR 65. Furthermore, when appealing an OPR, "[t]he most effective evidence

consists of statements from evaluators who signed the report or from other individuals in the

rating chain when the report was signed." AFI 36-2401, Attachment 1 ¶ A1.3. In this case,

Plaintiff failed to present any evidence from the rating chain in effect when the report was

written. AR 65. Further, when plaintiff had an opportunity to respond to the referral OPR in

2000, he failed to do so. AR 132.

In deciding plaintiff's case, the AFBCMR solicited written advisory opinions concerning

his claims. See footnote 2, supra, quoting 32 C.F.R. § 865.2(c) which provides for the

solicitation of outside opinions. As a result, the Board received written comments from

ARPC/DPB, see AR 64-91, and the USAF/JAA, see AR 130-35, 188-91. Both provided a

thorough analysis of plaintiff's claims and recommended that plaintiff's application should be

denied. See AR 64-91, 130-35, 188-91. The AFBCMR also received multiple filings from

plaintiff in support of his case, and in response to the other opinions filed with the AFBCMR.

---

[11]  The cited provisions of the 1997 version of AFI 36-2401 are the same as they appear in
their current version dated March 10, 2006, and can be accessed online at www.e-
publishing.af.mil/shared/media/epubs/AFI136-2401.pdf.

See AR 93-94, 95-129, 137-75, 193-200.  It is the applicant's burden before the AFBCMR to

provide "sufficient evidence of probably material error or injustice."  32 C.F.R. § 865.4(a).

After reviewing all of these materials, the AFBCMR (1) adopted the AFPC/DPB's

observation that OPRs are presumptively valid, (2) found an absence of rating chain support for

setting aside plaintiff's OPR, and (3) found no basis for a finding of error or injustice.  AR 9, 65,

1332.  Specifically, "while the [plaintiff] was entitled to his own viewpoint concerning the

efficacy of AVIP, he was not at liberty to actively persuade other squadron members to refuse to

participate."  AR 5.  The Board further found that the OPR was a direct reflection of plaintiff's

failure to meet the standards in leadership, professional qualities, judgment, and decisions.  AR

6.  "Plaintiff provided no evidence showing the LOR was incorrect or unjust, or that the referral

OPR was inaccurate.  AR 4, 6, 65.  "The OPR accurately reflected the [plaintiff's] negative

impact on mission readiness, good order, and discipline."  AR 6.

### 2.     The Removal Action

The removal action, like the LOR and referral OPR, was based on plaintiff's attempt to

cause dissension within the squadron.  AR 133.  The Secretary of the Air Force and the Deputy

Secretary of Defense concurred with the wing commander's recommendation to remove plaintiff,

before it was ultimately approved by the President.  AR 6, 66-68.  "The standard for removing an

officer's name from the promotion list is very broad.  AR 133.  An officer's wing commander or

equivalent may initiate a promotion removal when there is cause to believe that "the officer is not

mentally, physically, morally or professionally qualified to perform the duties of the higher

grade."  Id.; AFI 36-2504, Officer Promotion, Continuation and Selective Early Removal in the

Reserve of the Air Force, ¶¶ 7.2, 7.3 (September 1, 1999).[12]  In this case, "[e]very member of

[plaintiff's] chain of command, to include the Secretary of the Air Force and Deputy Secretary of

Defense concurred in the removal action."  AR 6, 133.   Moreover, the Board found "no evidence

indicating that [plaintiff] was singled out due to his personal views on the anthrax program."  AR

6.

Plaintiff's sole assertion of procedural error is that his removal from the FY2000

Lieutenant Colonel promotion list took place outside of the 18-month statutory limit for a

promotion delay under 10 U.S.C. § 14311, rendering the removal action by the President invalid.

See Amended Compl. at ¶¶ 31-32.  Plaintiff claims "he is entitled to be retroactively promoted

because the President did not sign the removal action within 18 months from the time when [he]

was notified of the commander's initiation of the removal action."  AR 133.   However, his

argument ignores the statutory regime Congress established for removal from the promotion list,

as opposed to the delay of promotion.  Id.

Removal is governed by a free-standing statute, 10 U.S.C. § 14310, which provides the

President unfettered discretion to remove an officer's name from a promotion list "at any time

before the date on which the officer is promoted."  In contrast, a mere delay action is governed by

10 U.S.C. § 14311.  The delay of promotion action is subject to an 18-month statutory

---

[12]  Several editions of AFI 36-2504 have been in effect since plaintiff's wing commander
initiated the promotion removal action against plaintiff on March 13, 2000.  The September 1,
1999 edition was in effect at the time the promotion removal was initiated.  It remained in effect
until February 11, 2002, when it was superceded.  The instruction was soon superceded again by
the March 28, 2002 edition, which was in effect when the President removed plaintiff from the
promotion list on April 17, 2002.  The current edition of the AFI 36-2504 dated January 9, 2003,
is available online at www.e-publishing.af.mil/shared/media/epubs/AFI26-2504.pdf.  The
standard for initiating a promotion removal action has not changed since plaintiff's promotion
removal was initiated.

time limit under 10 U.S.C. § 14311(d).[13]   Had the Air Force only delayed plaintiff's promotion, his current argument might have some force.   However, because plaintiff's promotion propriety action was processed as a promotion removal action under 10 U.S.C. § 14310 rather than as a promotion delay action, the 18-month time restriction set forth in the promotion delay statute, 10 U.S.C. ¶ 14311, is inapplicable.   AR 6, 67, 133.   A promotion delay action is separate and distinct from a promotion removal action, and they are governed by two separate statutes.   The promotion removal statute does not place a deadline on the President's decision-making.   See 10 U.S.C § 14310.   Pursuant to § 14310(a), the President may remove an officer's name from a promotion list at any time before the officer is promoted.   Here, since the President removed plaintiff's name from the promotion list before plaintiff was promoted, the President's action was not untimely.

The Board's actions were certainly not arbitrary, capricious, an abuse of discretion or contrary to law.   All of the administrative consequences that occurred were a direct result of plaintiff's actions and decisions.   AR 132.   Plaintiff's commander acted in accordance with established Department of Defense guidelines and within his command discretion.   The

---

[13]   According to 10 USC 14311(d), "[t]he appointment of an officer to a higher grade may not be delayed... for more than six months after the date on which the officer would otherwise have been promoted unless the Secretary concerned specifies a further period of delay."   Section 14311(d) also limits the duration of promotion delay actions to a maximum of 18 months.   "The appointment of an officer to a higher grade may not be delayed under subsection (a) or (b) for more than six months after the date on which the officer would otherwise have been promoted unless the Secretary concerned specifies a further period of delay. An officer's appointment may not be delayed more than 90 days after final action has been taken in any criminal case against the officer in a Federal or State court of competent jurisdiction or more than 90 days after final action has been taken in any court-martial case against the officer. Except for court action, a promotion may not be delayed more than 18 months after the date on which the officer would otherwise have been promoted."   See id.

commander was responsible for ensuring that all military personnel within his command received the anthrax immunization and he had no authority to allow members, including plaintiff, to voluntarily refuse to receive the shots because they disagreed with the program.  Id.  The commander's actions were taken not because plaintiff refused to take the shot, but because he incited disloyalty and mistrust within the squadron by advocating that others refuse the anthrax shots by sending e-mails to other pilots urging them to disregard the commander's directives and telling them the commander did not care about them.  Id.  Plaintiff caused discord in the unit by using his position of leadership within the squadron to influence others to defy the commander.  Id.

Lastly, the AFBCMR was correct with respect to plaintiff's request to set aside his automatic transfer to the Retired Reserves on April 1, 2003.  AR 6.  Since the transfer was statutorily mandated by 10 U.S.C. § 14506, the AFBCMR did not err in refusing to set the transfer aside.  AR 134; see footnote 3, supra.

In sum, the decision of the AFBCMR with respect to plaintiff's application was based on an extensive review of all relevant factors, including the voluminous filings by plaintiff, as well as the reasoned opinions of both the ARPC/DPP and the USAF/JAA.  The AFBCMR addressed all of plaintiff's claims, and while he may not agree with the Board's ultimate decision, plaintiff has offered no evidence that the decision was arbitrary, capricious, or in violation of law.  In fact, given the AFBCMR's finding that plaintiff failed to produce evidence of material error or injustice in his OPR or LOR, a decision to void the OPR and LOR would likely have been in violation of the limited powers granted to the AFBCMR.  See 10 U.S.C. § 1552(a)(1).  Accordingly, the Court should uphold the AFBCMR's decision denying plaintiff's application.

29

**F.      Plaintiff Cannot Be Promoted Because No Public Act Occurred To Complete His Promotion Before The President Removed Plaintiff From The Promotion List.**

In addition to the arguments above, plaintiff's claim that his removal from the promotion list was untimely also fails because the mere passage of time beyond a promotion date does not constitute the public act required by the Constitution to complete the appointment process. In Dysart v. United States, supra, 369 F.3d at 1311, the Federal Circuit articulated the three separate actions required to be appointed to office. "[T]he President first selects a nominee and sends the nomination to the Senate. The Senate acts on the nomination and determines whether or not to confirm the nominee. If the nominee is confirmed, the President appoints the officer and signs a commission or performs some other public act as evidence of the officer's appointment." Dysart, 369 F.3d at 1306.[14] The Dysart court noted that according to Marbury, "if an appointment was to be evidenced by any public act, other than the commission, the performance of such public act would create the officer." Dysart, 363 F.3d at 1311. Accordingly, following nomination by the President, Dysart provides that in the absence of a commission appointing a military officer, the President, or an official acting on his behalf, must make a public act of appointment for an officer to be promoted. Id. Both Marbury and Dysart require the valid public act of appointment to effectuate promotion to a higher grade.

Even assuming, arguendo, that the six-month initial Secretarial delay limit or the outer 18 month limit contained in 10 U.S.C. § 14311(d) applies to removal actions, the absence of a

---

[14]  "Appointments of reserve officers in commissioned grades of lieutenant colonel and commander below, except commissioned warrant officer, shall be made by the President alone." 10 U.S.C. § 14310(a). Since plaintiff, a reserve officer, had been selected for promotion to lieutenant colonel, Senate confirmation was not required to effectuate his appointment to the higher grade.

promotion order or other public act of appointment of plaintiff rendered plaintiff's promotion/appointment process incomplete.  Because no affirmative act was taken to promote plaintiff after the removal action was initiated, the President's action to remove him from the list was lawful and not untimely under the <u>Marbury</u> case as interpreted in <u>Dysart</u>.

## CONCLUSION

For the reasons set forth above, the Court should dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim, or alternatively, grant defendant summary judgment pursuant to Fed. R. Civ. P. 56.

December 19, 2007                    Respectfully submitted,


                        _____/s/_____
                        JEFFREY A. TAYLOR, D.C. Bar #498122
                        United States Attorney



                        _____/s/_____
                        RUDOLPH CONTRERAS, D.C. Bar #434122
                        Assistant United States Attorney



                        _____/s/_____
                        KAREN L. MELNIK, D.C. Bar # 436452
                        Assistant United States Attorney
                        555 4th Street, N.W.
                        Washington, DC 20530
                        (202) 307-0338
                        (202) 514-8780 (facsimile)

31

OF COUNSEL:

Major Thomas R. Uiselt
Air Force Legal Operations Agency
Air Force General Litigation Division
1501 Wilson Blvd, 7th Floor
Arlington, VA 22209