UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARC J. MILLICAN          )
                           )
    Plaintiff,          )
                           )       Civil Action No. 06cv1582 (GK)
    v.               )
                           )
UNITED STATES         )
                           )
    Defendant.       )

<u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff-Millican, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 56 and LcvR 7.1(h), cross-moves for summary judgment because there are no material facts in dispute and plaintiff is entitled to judgment as a matter of law. Submitted herewith is Millican's memorandum of points and authorities in support of his cross-motion. The Court is also directed to the following pleadings: opposing statement of material facts as to which there is no genuine issue; Plaintiff's Appendix (Volumes 1-2), and Administrative Record filed by defendant (undersigned counsel cites to actual handwritten page numbers rather than to the varying PDF File assigned pages). A proposed order is attached.

March 7, 2008                      Respectfully submitted,


                                 /s/  John A.Wickham, Esq.
                                 DC Bar No. 454863
                                 Counsel for Plaintiff Marc Millican
                                 32975 Saint Moritz Drive
                                 Evergreen CO 80439
                                 303 670-3285
                                 wickham1@wispertel.net

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARC J. MILLICAN                  )
                                  )
        Plaintiff,                )
                                  )          Civil Action No. 06cv1582 (GK)
        v.                        )
                                  )
                                  )
UNITED STATES                     )
                                  )
        Defendant.                )

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF CROSS-MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO
DEFENDANT'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

Millican hereby submits a memorandum of points and authorities in support of his cross-motion. Contained herein is his opposition to defendant's motion to dismiss. For purposes here, the proceedings of Doe v. Rumsfeld will be referred to as: Doe I, 297 F.Supp.2d 119 (D.D.C. 2003) (granting preliminary injunction against AVIP). Doe II, 341 F.Supp2d. 1 (D.D.C. 2004) (vacating FDA final order with remand; permanent injunction as to all service-members). Doe Appeal, 172 Fed.Appx. 327 (2006)(DoD appeal of 2004 inunction rendered moot by FDA's 2005 final order classifying AVA safe and effective; rejected DoD requests to reverse Doe and vacate injunction). Doe EAJA, 501 F.Supp2d. 186 (2007)(granted attorney fees; when implementing AVIP in 1998, DoD not substantially justified that 1985 FDA proposed order extended to safety and effectiveness of inhalation anthrax; Dec 2005 FDA Final Order was reversal of 1985 proposed order)(DoD did not appeal, Dkt. Entry 156; stipulated dismissal with prejudice, 25 Jan 2008).

Terms: Department of Defense Anthrax Vaccine Immunization Program (AVIP), Anthrax Vaccine Absorbed (AVA).[1] Air Force Instruction (AFI). Air Force Board for Correction of Military Records (AFBCMR). Lieutenant Colonel (LtCol). The Administrative Procedure Act ("APA"), 5 U.S.C. § 702, et seq.

_____

[1] The AVIP was to administer AVA against exposure to "inhalation anthrax" that is breathed (also known as aerosolized or weaponized anthrax). Exposure can also enter the body by skin contact (cutaneous). Doe II, at 3.

**STATEMENT OF FACTS**

The Court is respectfully directed to Millican's's separately filed opposing statement of material facts that contain his objections and additions to defendant's statement of facts.   The remainder of pertinent facts are contained within the body of Millican's's memorandum below.

**ARGUMENT**

**I.    Millican is Entitled to Summary Judgment** (Part 1)

A.  The Doe injunctions of 2003 and 2004, that enjoined the AVIP until the FDA classified AVA as safe and effective for its intended purpose against "inhalation anthrax," are presumed retroactive to the inception of the program in 1998.

Defendant implies an argument of non-retroactivity ("prospectivity") by stating "there was no injunction on the AVIP at the time of plaintiff's misconduct and during removal from the promotion list."  Def. Br. 23.  This responds to Millican's argument that the "injunctions issued in that case retroactively rendered illegal the order he received to take the anthrax vaccination."  Id 12.  The Air Force's retort that Doe is only prospective, is its latest stance before the AFBCMR in related cases involving disobedience offenses to the AVA:

> Lifting the injunction absent a statement indicating retroactivity does not indicate [it] was legally retroactive by default....had the injunction been retroactive the injunction order would have included a specific statement addressing retroactivity * * * [Air Force legal office] contends the retroactive principle should not be applied in this case.

Pl.Appx 3, 5 (BC-2004-00203, legal advisory opinion to Board).  This is repeated in another AFBCMR case.  Pl.Appx. 13 (BC-2004-00944)("The court did not discuss possible retroactive application of its conclusion that the AVIP was illegal...").  When the latter BCMR applicant challenged the Board's denial in federal court, the Air Force maintained its position that Doe is not retroactive. Rempfer, *et. al.,*v. Dep't Air Force, No 05-2350 (D.D.C.)(pending); dkt entry # 29 *Defendant's Opposition to Plaintiff's Supplemental Memorandum* at 4 (Doe "has no bearing on the issues as it does not clarify whether or not the 2004 decision was retroactive....").

Briefly, defendant's position is a wrong statement of the law— judicial decisions are presumed retroactive.  And when Doe is properly analyzed under the pertinent judicial test, the injunctions must be retroactively applied to Millican regardless a party Doe.  Secondly, the Doe

injunctions effectively found unlawful the 1999 military order compelling Millican's vaccination until the FDA in 2005 classified the AVA as safe and effective (with prospective application). In addition to relying on drug law requirements, the <u>Doe</u> injunctions relied on the constitutional right of service members to bodily integrity from medical experimentation. It follows that disciplining Millican for refusing the unlawful shots as experimental, and encouraging others to follow him, violated his free speech rights, or in the alternative, was excusable under the defense of necessity. Each of these issues will be addressed *seriatum*.

### 1. <u>Background</u>: retroactive versus prospective judicial decisions

Generally, judicial decisions are retroactive and legislative decisions are non-retroactive. Historically, rules of law announced in judicial decisions were applied retroactively— that is, to conduct or events that had occurred prior to the dates of those decisions. Today, the retroactive application of judicial decisions in civil cases remains the norm:

> All parties charged with applying that decision, whether agency or court, state or federal, must treat it as if it had always been the law. The agency must give retroactive effect to the ruling of a federal court because of the nature of that court. Just as an Article III court may not issue an advisory decision, it may not issue a decision for less than all seasons, for some citizens and not for others, as an administrator may decide.

<u>National Fuel Gas Supply v. FERC</u>, 59 F.3d 1281, 1289 (D.C.Cir. 1995), <u>citing</u> <u>Beam Distilling v. Georgia</u>, 501 U.S. 529, 549 (1991)(Scalia, J., joined by Marshall, J. and Blackmun, J. concurring in judgment); <u>See</u> Bradley Shannon, <u>Retroactive and Prospective Application of Judicial Decisions</u>, 26 Harv.J.L. & Pub. Policy 811, n. 150 (2003)("retroactivity is overwhelmingly the norm," <u>quoting</u> <u>Beam</u> (Scalia, J.)).

A problem often arises, though, when a court considers the application of a rule of law that seems "new" in some significant way. Recognizing this problem, courts and legal scholars have considered whether and to what extent "new" rules of law should be applied only prospectively, that is, only to events transpiring after the date of the precedent-setting decision.

The governing principle is that when there is a "substitution of new law for old that was reasonably clear" the new rule may justifiably be given prospective-only effect in order to "protect the settled expectations of those that had relied on the preexisting rule." <u>Verizon Telephone</u>

Companies v. F.C.C., 269 F.3d 1098, 1109 (D.C. Cir. 2001).  By contrast, retroactivity is

appropriate for "new applications of existing law, clarifications, and additions." Id., quoting

Williams Natural Gas v. FERC, 3 F.3d 1544, 1554 (D.C.Cir. 1993).  In the latter type, the "courts

start with a presumption in favor of retroactivity." Verizon. 1109.

   Even in the second type of case, retroactivity will be denied when "to apply the new rule to

past conduct or to prior events would work a manifest injustice." Id., 1109;  Quest Services v. FCC,

509 F.3d 531, (D.C.Cir. 2007)("the latter carry a presumption of retroactivity that we depart from

only when to do so would lead to a manifest injustice").[2]

   To establish a manifest injustice the D.C. Circuit looks to has been called "an escape route

from the general civil rule that a judicial mandate has retroactive effect." National Fuel at 1284.

This is a three-prong test under Chevron Oil v. Huson, 404 U.S. 97, 106-08. (1971):

> **First,** the decision to be applied non-retroactively must establish a new principle of law,
> either by overruling clear past precedent...or by deciding an issue of first impression whose
> resolution was not clearly foreshadowed.... **Second** ....weigh the merits and demerits in each
> case by looking to the prior history of the rule in question, its purpose and effect, and
> whether retrospective operation will further or retard its operation.  **Finally,** weigh the
> inequity imposed by retroactive application, for where a decision could produce substantial
> inequitable results...for avoiding the injustice or hardship by a holding of non-retroactivity.

Public Service Co., New Mexico v. FERC, 857 F.2d 833, 837 (D.Cir. 1988)[emphasis added].

### B. The Doe injunctions are new applications of existing law; and the traditional remedy to halt continuing constitutional violations of personal liberty.

   The Doe injunctions are new applications of existing law or a clarification.  As such, that

court had no need to address the issue, particularly when the defendant never sought the manifest-

injustice 'escape route' from the civil rule of retroactivity.  There was no sudden reversal from or

overruling of controlling precedent on issues or standards of justiciability, availability of APA

review, standing, basic drug law, nor a novel injunctive remedy to a constitutional violation, e.g.

---

[2] Accord. Bennet v. Jett, 956 F.2d 138, 142, (7th Cir. 1992)("Since there is a presumption
favoring retroactivity in civil cases, all three Chevron Oil factors must support prospective
application to limit the retroactive effect of the decision." citing  NLRB v. Lyon & Ford, 647
F.2d 745, 757 (7th Cir.), cert. denied, 454 U.S. 894 (1981); Mayer v. Moeykens, 494 F.2d 855,
857 (2d Cir. 1974)(case did not decide a novel principle, so it is retroactively applied without
consideration of other elements of retroactivity analysis), cert. denied, 417 U.S. 926 (1974).

Doe I at 127-128 (follows Circuit law of flexible approach to justiciability that does not embrace bright line categorical rules; equitable suits of military not barred). Accord, Bunker v. Wise, 550 F.2d 1155 (9th Cir. 1977) (retroactivity analysis unnecessary if operative case does not overrule clear past precedent or disrupt long accepted practice); United States v. Hart, 546 F.2d 798, 803 (9th Cir. 1976) (en banc) (retroactivity because "decision announced no new rule of law; it did not represent any sharp break in the web of the law").

In determining the AVA investigational status, the Doe courts also followed basic drug labeling requirements which mandated "no implied claims or suggestions of drug use may be made" on inadequate evidence of safety or effectiveness. Id at 133. The courts next followed basic administrative law for agency rule-making and APA review of final agency actions— it found that the FDA's 1985 proposed rule was never finalized, while the record was otherwise "devoid of a FDA decision as to AVA's investigational status" as to the safety and effectiveness against inhalation anthrax. Id. at 133-34, 135; Doe II at 4-5 (21 C.F.R. § 601.25 requires FDA to publish order as final agency action). Doe I next recognized Supreme Court precedent that a mere letter by the FDA (and which was vague) that was sent to DoD in 1997 concerning AVA status, was not a formal agency opinion entitled to any traditional deference. Id. 131-132; see Doe EAJA, at 188 (restating 2003 conclusion that scope of 1985 proposed order did not include inhalation anthrax because of insufficient data). As a result, the Doe I and II concluded that the original 1970 AVA license, and 1985 proposed rule, never extended to inhalation anthrax. Doe I at 134; Doe II at 15 (published final order 30 Dec 2003 by no means a logical outgrowth of 1985 proposed order since "vaccine's use was intended to be for protection against [skin] cutaneous anthrax" not inhalation exposure through biological attack).

The two related AFBCMR cases above conceded Doe was not "new" law. Pl.Appx 5 ("JA contends that Doe v. Rumsfeld is not an 'overruling decision' within the meaning of the general rule regarding retroactivity"); Id at 13 (applying Chevron factors, "...Doe v. Rumsfeld is not an 'overruling decision' ").

**(1) Stanley v. U.S. (1983):  service-members' freedom from drug experimentation**

Noteworthy is that the Doe I cited several times a related *Bivens* constitutional tort claim.  A former service-member brought a money damages claim as a victim of the Army's LSD experiments during the Vietnam War.  The claim was barred under Feres doctrine.  Doe I at 126-27 citing  United States v. Stanley, 483 U.S. 669, 683-684 (1983)(soldier without consent secretly administered LSD under Army chemical warfare program); citing Chappel v. Wallace, 462 U.S. 296, 305 (1983)(congress has not provided damages remedy for claims by military that constitutional rights have been violated by superior officers).  At these same cited page in Stanley the Supreme Court concluded that victims of experimental drugs were not without a remedy to find the program was illegal, and halt it:

> we have never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." [citing Chappell at 304].  As the citations immediately following that statement suggest, it referred to redress designed to halt or prevent the constitutional violation, rather than the award of money damages [citations omitted]  Such suits....distinguished in *Chappell*....sought traditional forms of relief, and "did not ask the Court to imply a new kind of cause of action.

Stanley 683.

Doe I later in its decision circles back to Stanley, finding that enjoining the AVIP without offering consent was a traditional form of relief because "the right to bodily integrity and importance of complying with legal requirements [of drug law] are among the highest public policy concerns one could articulate." Id 134; See Richard H. Fallon, Daniel J. Meltzer, New Law, Non-retroactivity, and Constitutional Remedies, 104 Harv. L. Rev. 1731, 1778 (1991) (injunction among traditional remedies for constitutional violations)[hereinafter " New Law, Non-retroactivity"].

A citizen's liberty right to bodily integrity from unlawful government intrusion is well established.  Planned Parenthood v. Casey, 505 U.S. 833, 835 (1992)(constitutional liberty right to personal autonomy and bodily integrity, "is akin to cases recognizing limits on governmental power to mandate medical treatment"); Schmerber v. California , 384 U. S. 757 (1966) (integrity of an individual's person is cherished value of our society); Union Pacific. v. Botsford , 141 U. S. 250 (1891) (no right held more sacred or more carefully guarded than right of every individual to be in possession and control of his own person, free from unlawful restraint or interference by others);

Stadt v. University of Rochester, 921 F.Supp. 1023, 1072 (W.D.N.Y. 1996)("right to be free from non-consensual experimentation on one's body...the right to bodily integrity...a right which has been recognized throughout this nation's history [citations omitted]").  A variation on this constitutional right to bodily integrity was the military's 1984 amendment to its Article 93 offense of "maltreatment" that added sexual harassment as non-consensual treatment of the person.[3]  It is arguably maltreatment to order soldiers to ingest medicine that is not approved by the FDA as safe and effective for the intended use because of inadequate scientific evidence.

Consequently, the Doe injunctions are not a departure from the Supreme Court's approach to address this particular constitutional issue.  Cf, United States v. Schleis, 582 F.2d 1166, 1173 (8th Cir. 1978) (en banc) ("we are convinced that Chadwick presents no question of retroactivity because, as we have previously held, we do not regard Chadwick as representing a departure from the Supreme Court's long-standing approach to under Fourth Amendment").

### (2)  DoD cannot reasonably rely on the 1985 FDA proposed order to preclude retroactivity of the Doe injunctions

For another reason why Doe I and II will not result in a manifest injustice— they could not upset any settled or reasonable expectations of DoD that the 1985 FDA proposed order extended to the safety and effectiveness of AVA for inhalation anthrax.  Doe EAJA at 189-90 (when AVIP in 1998 began it was not reasonable for DoD to interpret FDA's 1985 proposed order that AVA covered safety and effectiveness for inhalation anthrax); see AT&T v. F.C.C., 454 F.3d 329, 332 (D.C.Cir. 2006)(AT&T does not point to settled rule on which they reasonably relied); I.A.M. National Pension Fund v. Cooper Industries. 825 F.2d 415, 424 (D.C.Cir. 1987)("situation before us differs markedly from that presented in Chevron in which the party seeking non-retroactivity could not reasonably have been expected to have any inkling of the law to be applied retrospectively.").

For the same reasons under the Chevron, the Doe EAJA constitutes a determination that the FDA's Final order of December 2005 was not retroactive to the AVIP inception.  This was because

---

[3] 10 U.S.C. § 893 (Maltreatment); Manual for Courts-Martial, para 17, part IV (1984)["MCM"].

the final order in 2005 was "new law" that departed from the 1985 proposed rule by relying on a "reversal in analysis". Id 190 (2005 order "had to directly contradict the scientific conclusions of the proposed order....to support the position that the AVIP was safe and effective against inhalation anthrax.").

**C. Applying the injunctions retroactively furthers the purpose of drug law, 10 U.S.C. § 1107, Executive Order 13139, and vindicates constitutional rights, while deterring future unlawfulness given the military's long history of intentionally exposing service-members to drugs whose safety and effectiveness are not approved.**

The DOD's abysmal history of care for its own troops here, is captured in the "Findings and Conclusions" of the 1994 U.S. Senate Report that studied the effects of Gulf War Illnesses:

A.   For at least 50 years, DOD has intentionally exposed military personnel to potentially dangerous substances, often in secret.
B.   DOD has repeatedly failed to comply with required ethical standards when using human subjects in military research during war or threat of war.

S.Rep. No. 103-97, 103d Cong., 2nd Session (1994)("Is Military Research Hazardous To Veterans' Health? Lessons Spanning Half A Century).

With respect to the AVA, the 1994 Committee warned the military, at Notes 61-63:

Records of anthrax vaccinations are not suitable to evaluate safety...the vaccine's effectiveness against inhaled anthrax is unknown.....Therefore, the efficacy of the vaccine against biological warfare is unknown. … The vaccine should therefore be considered investigational when used as a protection against biological warfare."

With respect to Doe I, the court recited the legal background beginning with the 1985 FDA proposed rule.  The 1998 enactment of 10 U.S.C. § 1107 was in response to service-members' concerns about use of investigational new drugs during the 1991 Gulf War.  The statute prohibits investigational new drugs or those unapproved for their intend use without informed consent.  In 1999, the President signed Executive Order 13139 compelling DoD to obtain informed consent unless a waiver is granted.  Doe I at 125; Doe II 6.  This statutory remedy supplements the traditional injunctive remedy for constitutional violations implied in Stanley.

**(1) <u>Doe</u> II and <u>Doe</u> EAJA determined that the 2005 FDA final order did not reaffirm its 1985 proposed order, but was a reversal thereof and sharp departure that expanded the scope of AVA to now cover inhalation anthrax as safe and effective.**

Despite these past concerns tasking center stage in the mid 1990s, DoD ignored them when implementing AVIP in 1998. <u>Doe</u> I in December 2003 enjoined AVIP, but that did not deter DoD. DoD rushed its agent FDA eight days later on 30 December 2003, to publish a Final Order. Then DoD before the court argued this was adequate to lift the service-wide injunction (except for the named Doe plaintiffs). The court agreed. <u>Doe</u> II 8. This *status quo* was not to last.

The court in October 2004 retroactively vacated its final order— including the party limitation. <u>Doe</u> II 16-17 ("the posture of this case reverts back to where it was on December 22, 2003.....DoD may no longer subject military personnel to [AVIP]"); <u>Id</u> 18-19 (court's analysis to extend permanent injunction "to apply to all persons....not the just the six Doe plaintiff's"). The court concluded with its order: "Unless and until FDA classifies AVA as safe and effective for it intended purposes ** * the [AVIP] as applied to all persons is rendered illegal absent informed consent or Presidential waiver." <u>Id</u> 19-20. The court also implied retroactivity to unlawful acts that "may fairly be anticipated from the defendant's conduct in the past." <u>Doe</u> II at 17 (<u>citing</u> <u>NLRB v. Express Pub. Co.</u>, 312 U.S. 426, 435 (1941).

Despite the <u>Doe</u> court rulings, DoD continues before this Court to thumb its nose at the law— upside down arguments that civil cases are presumed non-retroactive, that the injunctions only applied to <u>Doe</u> plaintiffs, that the lack of public comment on the FDA final order was a bothersome technicality in drug-law 'etiquette' so that AVIP was retroactively lawful from 1998. However, <u>Doe</u> II rejected DoD's argument that the APA's notice and comment period was unnecessary protocol because the Final Order was "identical" to the 1985 proposal. <u>Id</u> 14. As set forth below, the court determined that the published order significantly expanded the scope of the 1971 AVA license to suddenly, and prospectively, expand the purposes of AVIP to biological warfare of inhalation exposure. Despite this departure from established drug and administrative law, DoD was insisting it could ratify its AVIP by re-writing the 1985 order in secret without public knowledge or involvement. DoD was also indifferent that in 1998 when the vaccine's intended use

and safety were not supported by scientific studies nor received FDA approval, that service-members were forced to get the shots under threat of criminal penalty.  This is reminiscent of the *modus operandi* in the secret drug experiments in Stanley.  See Doe EAJA 188 (vacated 2003 Final Order because "public was never on notice that AVA was being considered for use against inhalation anthrax....so not provided opportunity for meaningful opportunity for comment").  If not for the service-connected Feres bar granting immunity to senior DoD officials and their commanders implementing the AVIP, they might be under threat of personal liability for a constitutional tort.

The *vacatur* of Doe II relied on its earlier finding that the scope of the FDA's 1985 proposed order never intended to cover inhalation anthrax because of insufficient scientific data.  Abrupt revision including inhalation exposure under AVIP "is by no means a logical outgrowth of 1985 proposed order"  Doe II at 15, and 16  ("Airborne exposure to anthrax was not an indication under licensing contemplated by the 1985 Proposed Rule."); Doe EAJA 190 (given the explicit qualification as to AVA scope in 1985 proposed order, 2005 order was reversal contradicting scientific evidence).

Indicative that there is no manifest injustice to retroactively apply the injunctions, is the reply of Doe EAJA to plaintiff's argument.  They contended that DoD's actions were "unreasonable when they instituted the AVIP program without any final FDA order approving the usage of AVA."  Id 190.  The court agreed.  DoD had no reasonable basis in law or fact to begin the AVIP in 1998:

> Rather than appeal the Court's [2003] conclusions, they abruptly altered course and issued a final order merely eight days [later]...Such a response is indicative of the unreasonableness of the agency's initial stance.  Given the unreasonableness of the agencies' initial position before the lawsuit, and their sharp changes— issuing an order after 18 years that contradicted the proposed order— the court concludes [DoD] was not substantially justified.

Id. [emphasis added].  Moreover, this language must be read in light of the EAJA "substantial justification" test to evaluate both DoD's litigation and agency position (when it administered AVIP).  Here the court rejected DoD's argument that when it began AVIP in 1998, it had

"reasonably construed the 1985 FDA proposed order as encompassing approval of AVA for treating inhalation anthrax." Id 189. In other words, there was no reasonable basis in fact or law that AVIP vaccination in 1998 was safe and effective.

To come full circle, the court in 2003 had determined that despite serious legal impediments, the military chose to ignore the facts and law because they were "potentially inconvenient or burdensome." Doe I at 134. The court seemed to echo the concerns of the 1994 Senate committee report by stating, the "right to bodily integrity and importance of complying with legal requirements ...are among the highest public policy concerns one could articulate." Id 134. The DoD has demonstrated an unreasonable and defiant posture to ignore constitutional concerns of its members, drug and administrative law, executive order, and statute. Applying the injunctions retroactively would not retard the operation and purpose of these rights and laws. Rather, there is more danger of retarding their operation and purpose by applying it prospectively-only. The second prong of the Chevron analysis clearly weighs in favor of retroactive application.

### 4. Any inequity imposed by retroactive application is not a "compelling circumstance;" and otherwise eliminated with harmless error analyses case-by-case, while the DoD's unreasonable position anticipated or waived any administrative burden.

Since Chevron in 1971, doctrine has evolved within the Supreme Court, and the among the various Courts of Appeal, on how to apply the final "inequities" factor of its tripartite test. This includes changes within the U.S. Court of Appeal for the Armed Forces (C.A.A.F.). Within the D.C. Circuit a court may depart from the norm of retroactive application based upon a party's reliance interest, "but its authority to do so has been limited to the most compelling circumstances." National Fuel at 1288, citing Ryder v. United States, 515 U.S. 177, 184 (1995) ("whatever the continuing validity of Chevron Oil after Harper and Hyde, there is not the sort of grave disruption or inequity involved in awarding retrospective relief to this petitioner that would bring that doctrine into play").[4]  As already argued, the defendant here as no reasonable reliance interest.

---

[4] Reynoldsville Casket Co. v. Hyde, 514 U.S. 749 (1995); Harper v. Virginia Dep't of Taxation 509 U.S. 86 (1993).

Noteworthy is that the Supreme Court in Ryder criticized the military appeals court for improperly applying an expansive view of the Chevron factors to deny retroactivity on grounds it would produce substantial inequitable results.  Ryder noted that the military court's decision for prospectivity "advanced of virtual cornucopia of factors" including a flood of new *habeas* petitions and many other cases.  Id 184, n. 4.   But this was not the sort of "grave disruption or inequity" to deny retroactivity nor a remedial hearing whether the constitutional violation was harmless in Ryder's particular case.  Id at 188 (reversed and remanded).

In the remedial calculus, there is a stronger equitable interest in relief when a service-member's permanent punishment— from refusal to obey an vaccine order— constitutes ongoing government lawlessness, or operate as a continuing government restraint or coercion.  An analogy to criminal law is to retroactively apply a decision to reverse a conviction as a remedy to ongoing violation of rights.  See Fallon, Meltzer, New Law, Non-retroactivity, at 1789-90 ("stronger interest in relief from continuing coercion, for instance, in reversing an unconstitutional conviction").

There is also the important role of the judiciary to represent "the people's continuing interest in the protection of long-term values, of which popular majorities might sometimes lose sight of." Id 1788.  Here, the judicial 'check' is to represent the service-members' continuing equitable interests against unapproved or investigational drugs, under § 1107, and Executive Order.

A sensible remedial calculus should include harmless error analysis, such as before the service correction boards or discharge upgrade boards.[5]  There can be no grave or compelling disruption from a flood of cases.  The Navy has already engaged in harmless error review by interpreting Doe retroactively.  A case applied equitable principles to void the unfavorable discharge of a Naval officer separated in 2000 for refusing to obey the AVA order.  Pl.Appx 16-27 (NDRB Dkt. # ND05-00318).  He was issued a punitive reprimand for refusal to obey a mandatory anthrax vaccine order on 18 July 1999.   The punishment was followed by an involuntary General Discharge for commission of a serious offense.  Id 24-25.

---

[5] 10 U.S.C. § 1552 (correction boards) § 1553 (discharge upgrade boards).

Although each services' DRB is an individualized adjudication approved by each Secretary, each board must follow military-wide uniform equitable standards. Here, the Naval officer's punishment and discharge were a continuing violation, because

> In the years between the Applicant's discharge...the [Doe court] held that the [AVIP], as applied to all persons, is rendered illegal absent informed consent or a presidential waiver .....This Board concluded unanimously that the Applicant's case falls squarely within the above equity provision....A sailor may rightfully refuse the vaccine without fear of action under the UCMJ or administrative discharge. **Such policies represent a substantial enhancement of the Applicant's rights and there is substantial doubt as to whether the Applicant would have been discharged for his conduct given the current voluntary status of the vaccination**....The Board voted unanimously to change the discharge.

Pl.Appx 26-37 [emphasis added]. See Discharge Review Standards, 32 C.F.R. § 70.9(e), and 38 U.S.C. 5303(e)(1).

Millican 's situation meets the harmless error threshold of an ongoing violation— the permanent punishment and "shame" from the reprimand, the removal from the LtCol promotion list, and premature end to a pilot career. Millican v. U.S., No 05-1330C, slip.op at 20 (Fed.Cl. Aug. 24, 2006)(records correction could " 'lift some of the shame associated with' Air Force allegation that he caused discontent nor disloyalty within its ranks," quoting Kidwell v. Dep't Army, 56 F.3d 279, 285 (D.C.Cir. 1995), and Tootle v. Sec'y of Navy, 446 F.3d 167, 175 (D.C.Cir.2006). See Calloway v. Brownlee, 366 F.Supp. 2d 43, n. 8 (D.D.C. 2005) (voiding adverse performance report alone issued at end of soldiers career with an otherwise outstanding record "is a clear stigma associated with leaving the Armed Forces."). Moreover, his basis to refuse the vaccine, and website postings, were his own congressional testimony, and Senate Reports concluding AVIP was not approved as safe and effective. Amd.Compl. ¶¶ 8, 10, 12-13. Millican, as a commercial airline pilot, also must meet very high FAA and airline medical standards.

Because the AVIP in 1999 was illegal, the offense of fomenting "disloyalty" by encouraging others to join his own vaccine refusal, evaporates into innocuous conduct. As argued below, this life-long punishment is a continuing violation of past exercise of free speech and association rights, and was justifiable speech under the defense of necessity.

-13-

**D. The AVIP in 1999 was unlawful because the FDA's 2005 final order that the AVA is safe and effective for inhalation anthrax, is non-retroactive.**

To dispute the unlawfulness of the Millican's vaccine order, the defendant's trots out <u>United States v. Kinsala</u>, 64 M.J. 50, 54-55 (2006)(vaccine order under AVIP was lawful because AVA was never investigational new drug to implicate § 1107 since 1970 license not suspended or revoked, remained effective).   <u>Kinsala</u> for its own purposes, found the <u>Doe</u> court proceedings and service-wide injunction were an irrelevant detour into civil remedies.  <u>Id</u> 53.

But <u>Kinsala</u> is also distinguishable for three reasons.  First, <u>Kinsala</u>'s starting point confuses *dictum* as holding in the <u>Doe</u> Appeal, when the latter did not reverse or vacate <u>Doe</u> I, or II. And secondly, <u>Kinsala</u> is distinguishable when <u>Doe</u> EAJA in 2007 on remand reaffirmed its prior decisions by finding DoD's argument was "unreasonable in fact and law" that the AVA 1970 license extended to inhalation anthrax.   Thirdly, <u>Kinsala</u> did not follow the <u>Chevron Oil</u> escape route, and yet effectively concluded the <u>Doe</u> injunctions were interim, prospective remedies.

1.  <u>Kinsala</u> sidestepped *res judicata* of <u>Doe</u> II, then relied on *dictum* from an unreported order to erroneously reopen and decide what it believed was "a dispute" whether the 1970 AVA license extended to inhalation anthrax.  The decision in <u>Doe</u> Appeal contained no detailed memorandum but a short order not selected for publication.  It never reached the appellant-DoD's request to reverse and vacate the injunction and underlying opinions.  Appellate Brief, 2005 WL 1169095 at 33 (requesting judgment of district court should be revered and injunction vacated).

In classic *dictum* without disclosing any reasoning, analysis or explanation, the appellate court in <u>Doe</u> Appeal poses that the "parties still dispute whether AVA's original 1970 license takes it outside the definition of a drug unapproved for it applied use..." <u>Id</u> 328.  The court adds "resolving that issue would have no practical effect on the now-dissolved injunction."  <u>Id</u>.  Instead, the court passed the buck to the district court to consider DoD's request to vacate.  But on remand, DoD "chose not to pursue *vacatur*." [6]  This left undisturbed as final <u>Doe</u> I and II opinions.  Those

---

[6] Dkt Entry 150 (26 Oct. 07) (defendant's opposition to plaintiff's motion for attorney fees, at 6).

proceedings already resolved that the 1970 original license did not include that AVA was safe and effective for inhalation anthrax, and thus investigational drug within § 1107.[7]

The term *dictum* is defined as gratuitous remarks in observation, or solution suggested to a question but not essential to its judgment, and without full consideration of the point and not professed to be a deliberate determination.  Blacks Law Dictionary 409 (7th Ed 1979); See also Pierre Leval, Judging Under the Constitution: Dicta about Dicta, 81 N.Y.U.L.Rev. 1249, 1256 (2006)(*dictum* is a superfluous to judgment, and has no effect on decisions of the case before it).[8] Judge Leval states that what is becoming problematic is when courts looking for a quick solution are tempted by "the seductive lure" of *dicta* and "fail to distinguish between holding and *dictum*."  Id 1253, 1263.  This leads to lawmaking lacking "constitutional legitimacy."  Id 1259.

The appellate court in Doe Appeal simply acknowledged the injunction had dissolved, the case moot and dismissed the appeal, while adding gratuitous *dictum* for the lower court to consider on remand.[9]  The court in Kinsala was seduced by the *dictum* as a holding or controlling authority to mistakenly think Doe I and II never resolved factual and legal questions on the scope of 1970 AVA license.  On this faulty premise, Kinsala purports to decide these same questions with a hasty dive into the civil regulatory scheme of drug law— brushing aside *res judicata*, and collateral estoppel. This was despite earlier the court finding the Doe inquiry into the "civil remedies" as irrelevant.

Most telling that Kinsala confused *dictum* as holding, is that it freely accepted with without analysis of Doe, the arguments of DoD-defendant that were flatly rejected and decided in Doe I and

---

[7] Doe I at 134, 135; Doe II at 15-16 FDA 2005 Final Order covering inhalation anthrax was not identical to nor logical outgrowth of 1985 proposed order; airborne exposure not an indication under licensing contemplated in 1985; injunction remains in effect on the basis the vaccine is either a drug unapproved for intended use or investigational within § 1107); Id at n. 9 ("defendant's counsel conceded as much to questions by the court..."); Doe EAJA 189-90 (given the explicit qualification as to AVA scope in 1985 proposed order, 2005 FDA Order was reversal contradicting scientific evidence; not reasonable for DoD to interpret FDA's 1985 proposed order that the vaccine covered safety and effectiveness for inhalation anthrax).

[8] Mr. Leval is a judge of U.S. Court of Appeals for second Circuit.

[9] Doe EAJA 188 (appeals court "held...that the permanent injunction dissolved...dismissed the appeal as moot, and remanded...for further proceedings").

II. Kinsala 54-55 (Vaccine in 1970 indicates it was safe and effective with licensing history reflecting approval, "reaffirmed as recently as [FDA Final Order] December 19, 2005 * * * based on the high degree of deference we give to the FDA determination...we conclude....FDA classification was not erroneous [emphasis added]").  The court adopted almost verbatim language from DoD's *appellate* brief in Doe Appeal.  App.Br. 2005 WL 1169095 at 17, 19 ("license has never been revoked and thus remains in effect * ** valid until suspended or revoked"); Kinsala at 54 ("Vaccine's license has never been suspended or revoked").  Kinsala then skips over without mentioning the 1985 Proposed Order to conclude that voluntary consent under § 1107 was never implicated because the Vaccine was not a investigational new drug. Id 55.

2 and 3.    The second and third reason why Kinsala is distinguishable can be addressed together.  Kinsala essentially applies the Doe mandate prospectively and of limited duration.  This is because Kinsala is not suggesting that while the Doe injunctions halted AVIP, that military commanders could still issue lawful orders to take the shots without voluntary consent.  Moreover, DoD defendant did not appeal the 2003 decision that shut down AVIP, but complied with the judicial mandate with a FDA final order on 30 December 2003.  But Kinsala  applies the 2005 FDA final order retroactively to 1970.  Id 55 (licensing history since 1970 "reaffirmed" in 2005).

The Kinsala's limited prospectivity of Doe fails because it did not "follow the only escape route from the general rule that in civil cases that the judicial mandate has retroactive effect." National Fuel Gas at 1284, 1290 (after court's prior *vacatur* of final order, commission properly concluded that Chevron analysis did not overcome presumption to apply *vacatur* retroactively), quoting American Gas Ass'n v. FERC, 888 F.2d 136 (D.C.Cir.1989), and prior related case, Associated Gas Distributors v. FERC, 824 F.2d 981 (D.C.Cir. 1987).  In AGD the court found the commission-defendant's final order lacked adequate factual and legal support in the record, then vacated the order with a remand to cure the defects. Cf, Doe II at 13.[10]    The commission after AGR quickly re-promulgated an interim order but applied it "prospective-only." AGA at 1283-84.  This

_____

[10]  Doe II ("...the administrative record in this case is one of the most confusing, jumbled records this Court has ever seen.  Indeed the only thing that is clear is that confusion abounds.")

was challenged on review again.  The court then held the agency could not interpret the prior stay

and *vacatur* prospectively:

> The Commission does not mention the retroactivity issue in [its new rule] * * * In order to overcome the presumption that our *vacatur* of the [agency rule] is to be applied retroactively, the Commission must consider the three factors identified by [under <u>Chevron</u>].

<u>AGA</u> at 150.

The problem with <u>Kinsala</u> is that <u>Doe</u> I and II are not "new law" under <u>Chevron</u> to invoke

non-retroactivity analysis.  Secondly, <u>Doe</u> determined that the FDA's issued final order of 30

December 2003 was in effect "new law" by changing the agency's position from the 1985 Proposed

Order that AVA in 1970 never covered the safety and effectiveness against inhalation anthrax. <u>Id</u> II

at 7, 15.[11]   Final rules that are not "a logical outgrowth" of the proposed rule– such as requiring new

notice and comment— are not retroactive.  <u>Shell Oil v. EPA</u>, 950 F.2d 741, 751-52 (D.C.Cir. 1991)

(final rule that was neither implicit in nor a logical outgrowth of proposed regulation), <u>distinguishing</u>

<u>Chemical Waste Co., v. EPA</u>, 869 F.2d 1526, 1534-35 (D.C.Circuit 1989) (retroactive application of

final rule "an entirely reasonable construction of the [proposed] rule," and in any event agency

provided adequate notice and comment on the issue).

Thirdly, as set forth above DoD on remand did not pursue *vacatur.*  Nor has DoD otherwise

objected to the jurisdiction of that district court as the forum to resolve the facts and law whether the

FDA's AVA 1970 license extended to inhalation anthrax.  If any doubt remained after remand, <u>Doe</u>

EAJA reaffirmed its prior opinion that the 2005 order applies prospectively because the vacated

December 2003 final order "deviated too greatly from the [1985] proposed order" — it was a

"reversal" from the agency's initial stance before litigation.  <u>Id</u> 188, 190.  Confirming non-

retroactivity is the <u>Doe</u> EAJA determination that when AVIP in 1998 began, it was not reasonable in

fact or law for DoD to believe AVA covered safety and effectiveness for inhalation anthrax.  The

---

[11] <u>Doe</u> II (now for first time FDA Final rule contains "points of disagreement with the panel report" and asserts agency "does not agree with the panel report."). <u>Doe</u> II found that the Final Order relied on four, extensive post-1985 scientific studies, comprising over half of the 4209 pages in the record. <u>Id</u> 13-14 (studies dated 1996, 1998, 2001, 2002).

EAJA determination in effect shut down the <u>Chevron</u> escape route by showing the 2005 FDA order was new law, and DoD's inability to show any legitimate reliance interest.

**E.  The AVA orders issued in 1999 to Millican and his unit members were unlawful because they "conflicted with statutory and constitutional rights of the persons receiving the order."  <u>U.S. v. Moore</u> 58 M.J. 466, 468 (2003), <u>citing</u> <u>MCM</u> ¶ 14.c(2)**

The court in <u>Kinsala</u> only stated that military orders are presumed lawful if issued by a competent authority, and for a valid military purpose.  <u>Id</u> 52.  That court then believed that <u>Doe</u> was concerned with civil remedies and not such presumptions inherent in military orders.  But <u>Doe</u> implies the 'legal conflict' provisions of the MCM.  <u>Doe</u> resolved this because the AVIP was prospectively declared safe and effective in 2005, thus making prior vaccine orders in conflict with the service-members' statutory right to consent under § 1107, and constitutional right to bodily integrity.  And the latter by extension arose another conflict— the orders required committing the military crime of maltreatment to the person.  In addition, DoD until 2005 cannot point to a military purpose of protecting members' health because— as set forth in <u>Doe</u> EAJA– it was not reasonable for DoD to presume "in fact and law" AVA effectiveness and safety.

Article III federal courts have the authority and competence to find military orders unlawful. <u>Bond. v. United States</u>, 47 Fed.Cl. 641, 649-50 (2000)(legality of military duty orders is justiciable issue when regulations provide objective standards and tests to measure compliance).  LtCol. Bond's particular assignment orders were illegal because his commander "failed to comply with a mandatory regulatory classification scheme."  <u>Id</u> 662-63.

**1.  Millican's own refusal to undergo the vaccines, and advising others to follow him, were the fundamental reason for the reprimand and promotion list removal**

Defendant tries to detour the Court from the issue of the unlawful vaccine orders. Defendant suggests this is harmless error arguing Millican was "not" reprimanded nor removed the promotion list for refusing the vaccine or encouraging others, but for "inciting disloyalty and mistrust within the squadron."  Def. Br. 6, 29; <u>and</u> Def. SOF ¶¶ 7, 11.  This misrepresents the record and the significance of the unlawful vaccination orders.  Millican's refusal to undergo the series of shots,

-18-

and AVIP illegality, are integral to and cannot be severed from, the reprimand and removal. Moreover, in the President's removal decision the 'opener' was Millican's refusal to take the shot.

> First, the reprimand-charged conduct of 'disloyalty' immediately precedes the following:

>> Specifically...you sought out and spoke with members...advocating that they refuse to undergo the [shots]....you actively encouraged other pilots to persuade additional members ...to defy official Air Force policy and refuse [the shots]...

AR 53.  Because this was the primary basis to prompt the LOR, it was the only issue cited as the reason for the reprimand by the AFBCMR decision.  AR 6.

> After the promotion list removal action commenced, the first legal review in 2000 stated "the reason for the recommendation is Major Millican refused to undergo the [shot] series and then became vocal advocate against the shots.....").  AR 88 ¶ 3.  In 2002, the Deputy Secretary of Defense himself added *only* the AVIP issue and Millican's own vaccine refusal.  A 7 (Deputy Sec'y "indicating applicant himself had refused the vaccine and advised members... to refuse their shots.").  The personal refusal was then inserted so that the President's decision headlines with it.  AR 62 ("In 1999, Major Millican...refused to undergo an anthrax immunization.  He advised members [of the unit] to refuse their anthrax [shots]....").

## 2.  Additional defenses to disloyal speech

> The unlawful vaccine orders issued to Millican and his unit members raise several recognized defenses to the alleged disloyal speech.  First, is that Millican's free speech and association rights to encourage or persuade others to uphold the law, and to prevent a crime.  As set forth long ago, In Re Quarles and Butler, Petitioners, 158 U.S. 532, 535 (1895):

>> It is the duty and the right * * * of every citizen, to assist in prosecuting, and in securing the punishment of, any breach of the peace of the United States. It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the posse comitatus in upholding the laws of his country.

Moreover, because Major Millican was in a leadership role, neglect to oppose unlawful activities (or orders) would be dereliction of duty, under Art 92, UCMJ; 10 U.S.C. § 892 (through negligence or culpable inefficiency, fails to perform one's expected duties).

The policy on restricting free speech and association rights of government employees is because "uninhibited speech may produce intolerable disharmony inefficiency or dissension." Brousseau v. U.S., 640 F.2d 1235, 1246 (Ct.Cl. 1981)(reviewing case law). But service-members may not be punished when they exercise such rights to prevent violation of federal law or constitutional rights, and to prevent a crime–unlawful assault to bodily integrity. Cf. Wysong v. United States, 9 USCMA 249, 250, 26 CMR 29 (1958)(accused disobeying order not to talk or speak with any unit members in the investigation; not lawful); United States v. Aycock 35 CMR 130, 132-34, 15 USCMA 158 (1964)(order prohibiting accused from contacting witnesses against him was unlawful and unenforceable, relying civilian court decisions that accused has right to prepare defense). Furthermore, it is an arguable legal obligation to protect fellow service-members from unlawful injury. This point is made from another context. Cf. U.S. v. McDaniels, 50 M.J. 407, 408 (1999) (valid military purpose to protect civilians from injury at the hands of military personnel); Padgett v. U.S 48 M.J. at 277-78 (military has a legitimate interest in protecting civilians from injury by service-members).

Millican's actions to encourage others to refuse an unlawful vaccine that risked bodily injury, raised the defense of necessity. Because Millican relies on disobeying an unlawful order, his situation is distinguishable from Washington v. United States, 57 M.J. 394, 398 (2002)(court rejecting the implied defense of necessity or duress to refuse anthrax to avoid bodily injury). Defendant's brief quotes a long passage but omits the following:

> The foregoing discussion is based on the premise that— not challenged by appellant in this case— that the order was lawful. A servicemember...may challenge the lawfulness of an order on a variety of grounds, e.g., that the order directed the commission of a crime.....that the order did not relate to a military duty...that it conflicted with a person's statutory or constitutional rights * * * However, appellant chose not to challenge the lawfulness of the order he received to participate in the [AVIP].

Id at 399.

In <u>Washington</u> the court relied on civilian criminal law to state that the necessity defense "should be available in the military justice system." <u>Id</u> 396-97 (citing law reviews and cases recognizing it as "choice of evils defense"). <u>See</u> Captain Eugene Milhizer, <u>Necessity and the Military Justice System: A Proposed Special Defense</u>, 121 Mil.L.Rev. 1, 95, 99, n. 32 (1988) (early federal cases recognize the necessity defense, citing infamous admiralty case were mutiny was justified when sailors disobeyed orders to set sail when they believed the ship unseaworthy, <u>U.S., v. Nye</u>, 2 Curt.C.C. 225 (Mass.1855)). And recently, <u>U.S. v. Schoon</u>, 971 F.2d 193 (9th Cir.1991) (to invoke the necessity defense the defendants colorably must show a choice of evils, acted to prevent imminent harm, reasonably anticipated a relationship between their conduct and the harm averted).

## II.    **Millican is Entitled to Summary Judgment** (Part 2)

Millican will address the second issue in this case: whether his removal from the promotion list and failure to effect his promotion, violated the promotion delay and removal statutes. And, whether remedies are available. Millican also responds to arguments raised in defendant's motions to dismiss and for summary judgment. Def.Br. 17-21, 30-31 (lack of jurisdiction; failure to state claim), 26-29 (promotion removal not governed by promotion delay statute).

### **Standard of Review : multiple agency interpretations of statutes.**

Millican disagrees with defendant that the review standard is the "unusually deferential" application of the arbitrary and capricious standard of the APA. Def. Br. 20. The central question underlying this issue involves the interplay between the promotion list removal statute, § 14310, and promotion delay statute, § 14311, Title 10. Specifically, whether the timing of Millican's list removal is precluded by the promotion delay statute. This in turn focuses on whether the Air Force's procedural implementation of those statutes in AFI 36-2504, is a permissible construction. If Millican's list removal rested on an impermissible and unenforceable regulatory provision, the final question is the appropriate remedy.

As set forth below, the correct standard of review to begin answering these questions is not "unusually deferential."  Nor is it the 'expertise-deference' test under <u>Chevron USA v. National Resources Defense Council</u>, 487 U.S. 837 (1984).  Rather, it is a *de novo* standard of review exercised by the court's reasoned analysis.  Defendant collapses this standard into only one of extreme deference.

<u>Statutory background</u>

1.  **10 U.S.C § 14308(b)**(*Promotions: how made)*.  The selected officer's name is placed on a single list called the "promotion list" in order of seniority.  "Except" for promotion delays "as provided in section 14311, 14312...promotions *shall* be made in the order in which the name appears on the list." <u>Id</u> § 14308(b)(2)[emphasis added].  The military accomplishes this by issuing self-executing orders that schedule everyone with automatic effective dates based upon where each officer's name appears on that list.  Major Millican's May 12, 2000, order stated:

> By order of the Secretary...and direction of the President, you are promoted...to the grade shown below, per 10 USC Chapter 1405.  Your promotion will be void if discharged or transferred to the [retired reserve] before the effective date...[22 June 2000].

AR 57.  <u>See</u>  <u>Barnes v. U.S.</u>, 57 Fed.Cl. 204, 205 (2003)(officers shall be promoted from list by seniority in the order as it occurs on effective date, except as provided under delay statute).

The only other possible way to avoid automatic promotion is by Presidential removal of the officer's name from the order of seniority before the effective date occurs:  "[t]he President may remove the name of an officer from a promotion list at any time *before the date on which the officer is promoted*." § 14310(a)[emphasis added].  The latter phrase can only derive meaning within the context of § 14308, Chapter 1405, where the date of promotion is set by self-executing orders to whomever is next in seniority.  If the President takes final action on a pending removal action *before* this effective date, there is no delay so § 14311 does come into play.  However, if the removal action is incomplete on the effective date then only the statutory delay exception is available.  Otherwise, the promotion shall occur "in the manner" prescribed by § 14308.

-22-

2. **10 U.S.C. § 14311.** Under the delay statute, promotions of officers already on a list may be delayed under two categories. For purposes here, the categories will be referred to as: during an 'investigatory delay,' or under the catch-all category, a 'for-cause' delay from lack of qualifications. Specifically, the first falls under subsection (a), as a delay during "investigations" (criminal or administrative) that may result in discipline; or secondly, delay falls under subsection (b) the catch-all provision— "if there is cause to believe the officer is mentally, physically, morally, or professionally unqualified to perform the duties of grade to which selected." See also Barnes, 473 F.3d 1356, 1362 (Fed.Cir. 2007)(second delay category referred to as "catch-all provisions"). The initial limit on the amount of delay in both categories is six months, unless the Secretary approves a delay up to 18 months.[12]

Defendant's position on the delay and removal statutes

Defendant's litigation counsel argues that removing an officer's name from a promotion list "is governed by a free-standing statute." Def. Br. 27. This apparently means the statute operates independently, unconcerned with the delay statute's due process, including the maximum delay.

To support defendant's argument that the two statutes operate like ships passing in the night, defendant focuses on a phrase within in the first sentence of the removal statute: The President may remove the name from the list 'at any time" before the promotion date. Def. Br. 27. In 1999, Millican was selected for promotion under self-executing orders for promotion in June 2000. His local commander in March 2000 recommended his name be removed from the list. However, his name was not removed until in April 2002, or 22 months after his promotion was effective. But according to defendant there is no time limit because removal may occur at any time.

---

[12] §§ 14310, and 14311 apply to reservists not on active duty, their names on "reserve" promotion lists. To grant equality with active duty procedures, in 1996 these were enacted to mirror the active duty counterparts. 10 U.S.C. § 629 (removal from active duty list) § 624 (promotion delays). Pub.L. 103-337, § 1611 (effective 1996)

But this reading proves problematic. As in Millican's case, removal as a final agency action will rarely occur "before" the date on which promotion orders self-execute. Accordingly, Air Force regulation provides that when a recommendation to remove is initiated, this initiates an "automatic delay" of the impending promotion. But instead recognizing the delay "exception" under section 14308(b), regulation provides that delay continues indefinitely until whenever the President removes the officer's name. This promotion delay is not viewed as the statutory delay, but a delay as the exclusive creation of regulation where removal may occur "at any time." Therefore, defendant argues that this renders "inapplicable" the 18-month limit imposed by the delay statute. Def. Br. 28. However, this necessarily means that a pending removal action can continue indefinitely. There is no law to compel the President (nor any subordinate official) to act at all. Whereas the service under § 14308 may otherwise be compelled to remove a name before the effective promotion date, or invoke he delay exception. The AFI provisions are fully discussed *infra*.

**A.  <u>Chevron</u> deference is inapplicable: multiple agencies share interpretation of the statutes**

Whether the expertise-deference applies is the second half of the <u>Chevron</u> "two-step inquiry." <u>See generally</u> *Note,* <u>Two Faces of Chevron</u>, 120 Harv.L.Rev. 1562, 1565 (2007). Within this Circuit, when an agency shares responsibility for the administration of a statute with other agencies, the court owes the agency's statutory interpretation no <u>Chevron</u> expertise-deference. <u>Rapaport v. Dep't of Treasury</u>, 59 F.3d 212, 216-17 (D.C.Cir. 1995)("to hold otherwise would lay the groundwork for a regulatory regime in which either the same statute is interpreted differently by several agencies or  the one agency that reaches the courthouse first is allowed to fix the meaning of the text for all"); <u>CF Industries, Inc. v. FERC</u>, 925 F.2d 476, 478 (D.C.Cir. 1991) (when more than one agency is charged with interpreting statute "we will analyze the case as if deference were inappropriate [under <u>Chevron</u>]"). However, there would be an argument to afford deference if multiple agencies agreed on an  interpretation, or as to which of them has exclusive jurisdiction over the statute. <u>Id</u> at n.1.

The Army, Navy, and Air Force, all share implementation of the statutes for promotion removal and delays. But the latter regulatory interpretation disagree. The Army and Navy are

uniform and agree that these two statutes operate together while the Air Force argues they do not.

Rolader v. United States, 42 Fed.Cl. 782 (1999). Under Rolader, involving an Air Force promotion

delay and removal, the court commented on the latter's departure:

> It is worth noting at this point that the other services have not construed [the delay statute] to permit a removal recommendation to indefinitely extend the time which delays may continue. They construe the delay and removal statutes as operating in tandem, so that the 18 month outer limit on delays precludes removal of a name after that point.

Id, 785-86.[13]

For purposes of this statutory analysis, the Rolader added the following conclusion after

reviewing the Air Force's automatic delay provisions:

> Although not necessary to the result, the court notes that it has serious misgivings about the enforceability of the automatic delay provision of [AFI predecessor]. The effect of that regulation is to allow a relatively subordinate officer to initiate a delay that continues indefinitely. This seems inappropriate when one considers that a six-month delay extension requires the approval of the Secretary.

Id 786-87.

Another court acknowledged that the Navy interpreted these two statutes to function

together. Barnes, 57 Fed.Cl. at 207 (under Navy Regulations, officer may be removed from

promotion list only during a statutory delay).

Three agencies share responsibility for the these statutes, but have provided two

irreconcilable interpretations. It is impossible to afford any deference to the Air Force's regulatory

construction. CF Industries at n.1 (if agencies do not agree, it would be impossible to defer). So the

Court proceeds *de novo* with its own reasoned analysis. Rapaport at 216-17 (where there is no such

deference to the agency's interpretation because it shares responsibility, "we proceed *de novo*")

In Two Faces of Chevron, the commentator surveyed recent law in Circuit Courts of

Appeal. Id 1577. The *Note* discussed a recent departure from Chevron in the D.C.Circuit in

---

[13] The court granted relief on other grounds. Id 786-87 (recommendation to remove was not properly initiated, so that promotion delay did not occur and officer was promoted by operation of law upon scheduled effective date).

Alabama Education Ass'n v. Chao, 455 F.3d 386, 396-97 (D.C.Cir. 2006).  Discussing Alabama Education, the court stated that the agency's interpretation from a "purely grammatical standpoint, is by no means an impermissible one" and this would end the inquiry under Chevron. But the court went beyond to independently analyze whether this was supported by "reasoned analysis," determining it was not.  Note at 1574-75.  The Note also found that the 3rd Circuit applied similar analysis. Id 1577 (Patel v. Ashcroft, 294 F.3d 465, 467 (3rd Cir. 2002)(when courts are not following Chevron framework to implicate agency's expertise court on statutory interpretation, "they will decide the issue *de novo* without deferring to an administrative agency that may be involved.").

### B. Chevron step one inquiry: Congress's intent is silent or removal statute ambiguous

The question is whether the removal statute is free from the time limits imposed by the delay statutes.  The step-one inquiry is "if the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Cal. Metro Mobile Comm'n v. FCC, 365 F.3d 38, 43 (D.C.Cir.2004).  However, that is not the case here.

The removal statute itself is ambiguous or silent on the precise question at issue, or as defendant would argue, that statutory page must be read alone by tearing it from Chapter 1405.  For example, the statute does say that an officer may be removed from a promotion list "at any time" but also states this must occur "before" the officer's promotion date.  That date is not defined within the removal statute itself, but § 14308 specifies that the scheduling of dates is from a seniority list.  Does this indicate that Congress in the removal statute was unconcerned about delays when removal occurs before this scheduled date?   But to give full effect to § 14308, does a removal pending on that date require the delay exception?  But if the recommendation does not involve an ongoing investigation, does the pending removal fall within the catch-all category of the delay statute?  And finally, the removal statute at subsection (b) adds that an officer whose name is removed "continues to be eligible" for promotion by the next selection board convened for his peer group.  But this provision becomes mere surplusage if a removal recommendation can be delayed indefinitely.  Does

-26-

this also imply that an Air Force removal recommendation is immune from any APA challenge to compel finality for unlawful delay? The two irreconcilable interpretations among the three service shows that a majority disagree that § 14310 is a "free-standing statute."

Step two of the <u>Chevron</u> inquiry would normally proceed to whether "the agency's answer is based on a permissible construction of the statute." The agency EPA in <u>Chevron</u> was solely responsible over the statute. Finding the statute ambiguous and the EPA's "bubble concept" a reasonable interpretation, the Chevron Court deferred to the agency's expertise and upheld the interpretation. <u>Id</u> 842. But as explained above, no step-two deference is owed so that the Air Force's regulations here do not have controlling weight.

**(1)  <u>Legislative history</u>: the statutes should be read together within the subtitle**

There are two areas where congressional intent is suggested. First is from the 1994 repeal of the prior Reserve promotion delay and removal statutes that had denied equality with their active duty counterparts. The predecessor statutes allowed reservists' promotions to be delayed indefinitely under the vague "in the public interest" test. <u>Nation v. Dalton, Sec'y of Navy</u>, 107 F.Supp.2d 37, 43, n. 6 (D.D.C.2000)(Naval officer's promotion delay in 1995 governed not under § 14311 but under prior 'indefinite delay' provision § 5902(d) "in the public interest"). As discussed above in <u>Rolader</u> and <u>Barnes</u>, the Navy and Army interpreted the Reservists new removal and delay statutes to eliminate indefinite delays of promotion removals because the statutes operate in tandem.

Secondly. Only the delay statute permits each Secretary to prescribe implementing regulations, while the removal statute lacks such language. Thirdly, the removal statute when read within Chapter 1405 means Congress was unconcerned with the delay statute if removal occurred before the automatic promotion date under § 14308. Together, these two factors suggest that any ambiguities over promotions delays can be resolved only by referring to the services' implementing regulations for statutory delays. To provide a reasonable reading, the words of the removal statute derive contextual meaning within the statutory structure of the whole subtitle.

The give full effect to the removal and delay statutes, they must be read together as part of a statutory scheme on the same subject, here Chapter 1405 (promotions of reserve officers).  This follows the established canons of statutory construction.  An otherwise narrow focus on the removal statute read in isolation and torn from the structure and policy of Chapter 1405 as a whole is a "formula for disaster" that may nullify another statute on the same subject.  Smith v. Brown, 35 F.3d 1516, 1522-23 (Fed.Cir.1994).  By giving full reference to certain laws that fit most logically and comfortably into in the context of the whole body of law, Smith relied on Supreme Court decisions on how to interpret both clauses within one statute, and statutes on the same subject:

> The court will not merely look to a particular clause. . .but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give it such a construction as will carry into execution the will of the legislature.

Smith at 1523.

### C. The Air Force's automatic and indefinite delay provisions for promotion list removal,  are invalid.  AFI 36-2504. ¶ 7.5.2.1, ¶ 7.8.4.

The Air Force uses verbatim the 'catch-all' provision from the delay statute to determine when commanders initiate an adverse promotion action, called a "promotion propriety action" [PPA].  These all involve delays of effective dates, called "DOR" (Date of Rank).  Pl.Appx 28 (AFI ¶ 7.2, "commanders initiate [PPA] when there is cause to believe that the officer is not, mentally, physically, morally or professionally qualified to perform the duties of the higher grade.").  Defendant reaffirms that this is the "standard for removing an officer's name" from the list. Def.Br. 26.  Each PPA relies on an objective, evidentiary standard:  "must contain a clear statement of the reasons for the action and evidence documenting the reason." Id ¶ 7.4.1.

The introductory ¶ 7.5, titled "Involuntary Delay," contains therein the various types of investigatory-delays.  That introductory paragraph states, "a delay also occurs if an action begins to remove an officer from a promotion list." Pl.Appx 29.  However, the provision for list removals dispenses with the requirement to request a delay for six months, nor requires Secretarial-extensions up to the outer limit of 18 months.  Instead, when a commander's recommendation is initiated to

remove an officer from the list "it automatically delays the promotion until the [Secretary] makes a decision on that recommendation" — either returned without action or forwarded to the President. Pl.Appx 31, ¶ 7.8.4; and see P.Appx. 29, ¶ 7.5.2.1 ("Extension of the delay is automatic upon initiation of a recommendation ...to remove an officer from the list."). As defendant argues, the limits of § 14311 do not apply; a removal recommendation delays a promotion infinitely. This means the President's decision here, and in any other case, can never be "untimely." Def. Br. 28.

    1.   The AFI borrows from the delay statute so that a removal recommendation must involuntarily delay the effective promotion DOR. This implicitly acknowledges that the removal statute is not read isolation but with § 14308. This is because a seniority list-promotion "shall be made" except when delayed. But the AFI removal provision ignores from § 14308 that the exception to a DOR promotion is governed "as provided in section 14311."

    2.   The AFI borrows from the delay statute's catch-all delay category within the meaning of § 14311(b). The recommendation to remove Millican's name was his commander's belief that the referred-OPR and Reprimand were cause to believe officer was morally or professionally unqualified. Moreover, the catch-all delay language was twice quoted verbatim when the actual recommendation underwent the commander's "legal reviews" in 2000:

> [21 May 2000] A commander may initiate a [PPA] when there is cause to believe an officer is. . .morally or professionally unqualified to perform the duties of the higher grade....the actions and non-actions by Major Millican as detailed in the package support this action.
> * * *
> [16 June 2000] Commanders initiate a [PPA] when there is cause to believe an officer is. . .morally or professionally unqualified to perform the duties of the higher grade....A preponderance of the evidence proves that Major Millican is unfit to assume the grade of lieutenant colonel.

A.R.86 at ¶ 4; A.R. 89 at ¶ 3c. The legal review also acknowledges that Millican's DOR promotion was delayed. Id 88 ¶ 3b. The commander's recommendation itself states the DOR promotion "was delayed until the Secretary of the Air Force makes a decision." A.R. 56 ¶ 3.

    As discussed above, the AFI's duplicitous approach is to admit Millican's promotion date was delayed, but then pretend that this § 14308 exception is not governed by § 14311. Now again

here, the facts clearly show that the removal recommendation was an informal or *de facto* promotion delay within the catch-all meaning for lack of qualifications. Yet the Air Force turns a blind eye. But the catch-all provision of the delay statute does not require a "formal finding" on lack of qualifications before a delay imposed, but allows review by the chain of command. <u>Barnes</u>, 473 F.3d at 1362 (memorandum implied the catch-all provision that prior non-judicial punishment was cause to believe he was not qualified to be promoted, and served as basis to recommend removal from list). In Millican's case before chain of command review, legal reviews determined from the evidence there was proof to support a "cause to believe" he lacked qualifications to be promoted.

3. Finally, the AFI provisions permitting automatic delays offers no reply to the question posed in <u>Rolader</u>. There, the court expressed "serious misgivings about the enforceability"of an indefinite delay imposed by a relatively subordinate officer when statutory delays for six months require approval by the service Secretary. <u>Id</u> at 787. The court was pointing to situations like Millican where the recommendation of commander LtCol Padilla— not the Air Force Secretary— delayed a DOR promotion indefinitely. A.R. 85 ¶ 2.[14] But no formal delay was initiate under § 14311(c). And neither the SAF nor his delegated Assistant Secretary extended the delay when the 6 months expired on 22 December 2000. When 18 months had passed on December 2001, there was still no delay in effect. § 14311(d)(no delay beyond six months "unless the Secretary concerned specifies a further period of delay" up to 18 months).

The Air Force relies on a cut-and-paste approach to grant itself *carte blanch* to remove an officer's name from a promotion list without any time constraints. The structure of the Air Force's own regulations that freely mingle provisions from the delay and removal statutes, belie its mantra that the latter is "free-standing." To arrive at the AFI's automatic and unlimited delay provision, the Air Force tramples cannons of construction, plain meaning, legislative history, and officers'

---

[14]LtCol Padilla's removal recommendation was forwarded the same day to his superior BG Black who served it on Millican.

procedural due process.  The interpretation appears driven to escape the administrative inconvenience and annoyance of requesting delays and extensions under a 18-month clock.

A reasoned analysis under *de novo* standard of review finds that the permissible construction of the delay and removal statutes is an accord with that of the Army and Navy.  Both interpret these statutory provisions as interactive, operating in tandem, e.g, CF Industries at 478 ("because of these considerations... We think that the two agencies have the better reading of he statute.").

### E. Appropriate Remedies

1.  The Court should determine that the Doe injunctions are retroactive, the FDA 2005 final order prospective, and accordingly the vaccine orders issued to Millican were unlawful under his circumstances.  Accordingly, the AFI's "cause to believe" must fail without the primary "reasons and evidence" under ¶ 7.4.1, that he was unqualified for the promotion. Cf.,  Barnes, 473 F.3d at 1359, 1362 (removal from promotion list was proper because "cause" for disqualification was uncontested non-judicial punishment).

The remedy for the unlawful vaccine order is to set aside the referred-OPR and LOR.  The remedy for lack of  "cause" to disqualify for promotion are either the following:  (1) Millican was promoted by operation of AFI ¶ 7.5.2.2. ("if the reason for the delay no longer exists, promote the officer with same DOR as if delay did not occur);  or alternatively (2) remand to BCMR and direct reconsideration by Special Selection Board; or alternatively (3) removal for the list does not constitute a valid *first* non-selection, and consequently the second non-selection invalid.  Therefore, his involuntary retirement after two non-selections is unlawful.  He must be reinstated to active reserve status, with remand to the AFCBR for other relief as appropriate.[15] Cf, Barnes 473 F.3d at 1363  (reversing lower court because t removal from list did not involve procedural error, so first non-selection valid, and officer was properly discharged following second non-selection).

---

[15]  Reinstatement to reserve status is solely injunctive relief without a money-mandating statute.

2.    Declare that the AFI two provisions for automatic and unlimited delay, are invalid. AFI 36-2504 ¶ 7.8.4 (delay automatic and unlimited); ¶ 7.5.2.1 (automatic extensions of delay). Because the Air Force failed to follow proper statutory procedures for delay, extension, and 18 month limit, then promotion removal occurred during a period of unlawful delay.   If this is the only relief granted by the court, the remedy (3) above applies (i.e., removal not first non-selection, second non-selection invalid; unlawful involuntary retirement)

### Argument:  the Court is not precluded from awarding these remedies

First, defendant is mistaken that under Dysart, the courts may not award any remedies for substantive and procedural defects in unlawful promotion list removal and delay. Barnes v. U.S., 66 Fed. Cl. 497, 504 (2005)(Dysart does not nullify remedying "deficient removal from a promotion list" and removal voided); rev'd on other grounds; Barnes 473 F.3d at 1361-63 (agreeing with trial court that removal decision is reviewable for substantive and procedural defects to determine if removal should constitute first non-selection).[16]

Moreover, Millican's claims for unlawful list removal and promotion delay are reviewable in this district court because it follows the AFBCMR's denial.  Nation v. Dalton, 107 F.Supp.2d 37, 44-46 (D.D.C. 2000)(list removal claim would be reviewable if plaintiff was appealing denial of BCMR records-correction claim; court assuming *arguendo* claim was directly reviewable, entertained challenge to basis for list removal).  Defendant cites another promotion delay case. Def.Br. 19-20 (Doe v. Rumsfeld, 54 F.Supp.2d 56, 60 (D.D.C.2001)(ongoing promotion delay claim not ripe)).  This case is also distinguishable.  Like in Nation, the officer was not challenging a BCMR denial.  Secondly, the officer did not dispute that the Navy's ongoing delay met all due process and 18 month limit had not yet expired.  Id 59.

---

[16] Dysart v. U.S., 369 F.3d 1303 (Fed.Cir. 2004).

1.  Alternative remedies to court-ordered retroactive promotion.

Although Nation held that retroactive promotion by a court is non-justiciable, there are alternative remedies the court can direct on remand.  Initially, Millican like the plaintiffs in Nation and Barnes, challenge the substantive basis for removal from the promotion list.  But Millican attacks the underlying disciplinary actions based upon the unlawful vaccine order he refused and related conduct.  He also relies on the AFI-provided objective test whether "cause" exists to disqualify him.  Compare, Nation, at 46 (removal action established plaintiff's misconduct "adequately supported the decision removing her from the 1995 promotion list because it bore on the quality of her performance as an officer" and thus not arbitrary under the APA).

Next, the regulation provides the Secretary with a supplemental "promote" mandate under AFI ¶ 7.5.2.2, when the reason for the delay no longer exists.  If the Court invalidates the promotion list removal as lacking cause, then § 14311(b) requires returning him to the list, albeit still delayed. It follows that with the reason to delay no longer existing, the Secretary must promote Millican "with the same DOR as if the delay did not occur" under its ¶ 7.5.2.2.

Even if ¶ 7.5.2.2. does not apply, Millican seeks in lieu of retroactive promotion, a reconsideration by Special Selection Board once the derogatory reprimand and evaluation are voided. Amd.Compl. at 14. See Millican slip.op at 25-26, n.13 (Fed.Cl. 2006)(agrees Millican may raise valid claim to district court that BCMR failed to refer him to SSB); A.R. 134 (2004 Air Force legal advisory opinion to BCMR, "if the Board determines remedial action is necessary, we recommend applicant's record be referred to SSB...whether he should be promoted").[17]

---

[17] AFI 36-2501, *Officer Promotions* (2004)( ¶ 6.2, "The AFBCMR of a federal court can direct an officer for consideration by a SSB").

2.  <u>Remedy for removal from promotion list during period of unlawful delay</u>.

As already discussed, the Federal Circuit in 2007 held under <u>Barnes</u>, that a court is not precluded from remedying the defective list removal that occurs after the 18-month limit expired. <u>Id</u> 473 F.3d at 1363.  The earlier <u>Nation</u> court believed the only remedy available was a court order compelling the agency to act, <u>citing</u> <u>Gottlieb v. Pena</u>, 41 F.3d 730, 734 (D.C.Cir. 1994)(statutory time period for final Coast Guard BCMR decisions was "directory not "mandatory").  But the problem *sub judice* is the AFI contains no time limit to enforce.

Moreover in <u>Nation</u>, the predecessor reserve promotion delay statute was at issue.  It did not contain any 18-month maximum, nor spell out consequences for exceeding the deadline.  And the Navy had improperly invoked the indefinite delay provision "in the public interest."  The <u>Barnes</u> remedy for unlawful promotion delay does address the current delay statute, and appears the appropriate application of the <u>Gottlieb</u> test.

In <u>Gottlieb</u> the appeals court would not impose its own coercive sanction because the statute did not did not specify "a consequence for noncompliance with [the deadline]." <u>Id</u> 734.  Moreover, congressional intent was clear that "some flexibility in timing was required." <u>Id</u> 735.  But noncompliance with the strict 18-month deadline does result in a consequence under § 14308(b)(2): "except as provided in the [delay statute]....promotions shall be made in the order the officer's name appears on the list."  This of course, does not deprive the President of his reserved promotion authority under § 14308(b)(1).  But as in <u>Barnes</u>, the left a permissible, modest remedy— a removal during an unlawful delay cannot constitute a first promotion non-selection, thus voiding the second non-selection, and the resulting discharge.  Finally, the only congressional intent was eliminating flexibility for reservists when it repealed the prior indefinite delay provision "in the public interest."

CONCLUSION

For the foregoing reasons, plaintiff respectfully requests the Court deny defendant's motions to dismiss, or for summary judgment, and grant plaintiff's cross-motion for summary judgment.


/s/   John A. Wickham
DC Bar 454863
32975 Saint Moritz Drive
Evergreen CO 80439
303 670-3825
Counsel for Marc Millican