RECORD OF PROCEEDINGS
AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS

IN THE MATTER OF:                DOCKET NUMBER: BC-2004-00203
                                 INDEX CODE: 110.02

                                 COUNSEL: NONE

                                 HEARING DESIRED: YES

_____

APPLICANT REQUESTS THAT:

    a. His general (under honorable conditions) discharge be upgraded to honorable.

    b. His officer performance report (OPR), for the period 24 January 1999 through 23 January 2000, be expunged.

    c. He receive back pay and longevity to include 24 unit training assemblies (UTA's) and 48 flying training periods (FTP's) annually for the last five years.

    d. He be reinstated into the Individual Ready Reserve (IRR).

_____

APPLICANT CONTENDS THAT:

On 19 September 1999, after speaking with his squadron commander regarding the Anthrax Vaccination Immunization Program (AVIP), he decided to separate from the Kansas Air National Guard (KSANG). On 20 September 1999 he submitted his separation request.  His request was denied prior to him receiving an official order to take the anthrax vaccine.  He contends he was threatened with Article 15 action, a discharge review board (DRB) with under other than honorable conditions (UOTHC) discharge implications prior to actually refusing the order to take the vaccine.  Consequently, he believes he was coerced into resignation.  On 4 October 1999, he was given an official order to take the anthrax vaccine.  He refused to comply with the order as he felt the anthrax vaccination was "experimental" or "investigational" making the order unlawful.  Additionally, as the vaccination was considered "experimental" he cites a requirement that mandates informed consent of human subjects in Title 50 United States Code (U.S.C.), Section 1520a.

On 15 October 1999, he received notification he was being involuntarily discharged for misconduct and was provided counsel. With the threat of an UOTHC discharge by the DRB, and on advice of counsel, he decided to waive his right to a Board on the condition he receive an honorable discharge.  He signed his discharge papers with the assurance of his wing commander he would receive an honorable discharge.  He cites an earlier AFBCMR case wherein an ANG member voluntarily resigned but the Board

found the evidence presented indicated he had been coerced into a resignation.  He contends his case is no different.

In support of his appeal, the applicant has provided copies of his initial resignation request, several documents wherein KSANG officers recommend he receive an honorable discharge, pertinent documents surrounding the legality of the anthrax vaccine, applicable documents exemplifying his Air Force career, and copies of relevant Air Force Times and Associated Press articles.

Applicant's complete submission, with attachments, is at Exhibit A.

---

STATEMENT OF FACTS:

The applicant, a former member of the KSANG, submitted a request for separation on 20 September 1999.  His request was disapproved.  On 4 October 1999, a lawful order to comply with AVIP was issued and the applicant refused to comply. He received a letter of reprimand as a result.  On 20 October 1999, applicant acknowledged receipt of a letter notifying him of his commander's intent to involuntarily discharge him.  On 2 November 1999, a recommendation for discharge was forwarded to the KSANG State HQ. On 15 February 2000, applicant submitted a personal letter of resignation in lieu of Discharge Review Board action (DRB) wherein he requested an honorable discharge.  On 16 February 2000, with a 184th Bomb Wing concurring endorsement, his resignation request was forwarded to KS Adjutant General for Air. On 11 April 2000, he was issued a referral OPR.  His rebuttal to the referral OPR, dated 25 May 2000, stated he refused the order to participate in AVIP because he considered it an illegal order as the anthrax vaccine was considered "experimental."  On 14 December 2000, the Secretary of the Air Force (SAF) accepted his resignation in lieu of an administrative DRB and he was subsequently discharged with withdrawal of federal recognition effective 6 January 2001.  At the time of discharge he was serving as a B1 Bomber pilot in the grade of major with over 13 years of active duty and ANG experience.  His characterization of service was listed as general (under honorable conditions) and his reenlistment eligibility was listed as "Ineligible."

Since applicant's discharge, several military members brought a civil action against the Department of Defense (DoD) for compelling military members to undergo anthrax inoculation without their consent.  They maintain the anthrax used in the vaccination is an experimental drug unlicensed for its present use and that the AVIP violates federal law (informed consent). The court found the central question to be whether or not the anthrax vaccine was an "investigational" drug or a drug unapproved for its use against inhalation anthrax.  On 22 December 2003, after hearing arguments, and absent a ruling from the FDA, the judge enjoined DoD from further inoculating service members without their consent and in the absence of a presidential waiver ordering such inoculation in the interest of

national security.  On 5 January 2004, the FDA published a final rule regarding the anthrax vaccine and stated the drug was safe and effective on all forms of anthrax.  On 7 January 2004, the judge lifted the injunction, allowing DoD to continue mandatory anthrax vaccinations.

On 27 October 2004, the judge vacated the FDA's final rule and remanded it back to the FDA for reconsideration.  Additionally, the judge found that if and/or when the FDA properly classifies the vaccine as a safe and effective drug for its intended use, an injunction shall remain in effect prohibiting defendants' use of the vaccine on the basis that the vaccine is either a drug unapproved for its intended use or an investigational new drug within the meaning of 10 U.S.C. Section 1107.  Accordingly, the court ordered the involuntary anthrax vaccination program, as applied to all persons, rendered illegal absent informed consent or a Presidential waiver.

On 23 December 2004, the government gave notice of appeal to the United States Court of Appeals for the District of Columbia Circuit regarding the court's 27 October 2004 ruling.  No portion of the decision, which is final and binding on the parties, has been stayed pending the appeal.

---

AIR FORCE EVALUATION:

ANG/DPPI recommends denial.  DPPI notes the applicant's assertion that the injunction rendered all immunizations prior to the injunction illegal and unlawful.  DPPI states the applicant provided no evidence to support his assertion.  Applicant bases his comments on the fact that he was ordered to take the vaccination without his informed consent and that the FDA had not approved the drug as safe and effective for its intended purpose leading to a federal injunction declaring the order to vaccinate as unlawful or illegal.  Since the FDA has ruled that the anthrax vaccination is safe the injunction has been lifted.  Regarding the applicant's claim that the injunction should have been retroactive, DPPI states the lifting of the injunction absent a statement indicating retroactivity does not indicate the injunction was legally retroactive by default.  DPPI states had the injunction been retroactive the injunction order would have included a specific statement addressing retroactivity.

DPPI's complete evaluation, with attachments, is at Exhibit C.

---

APPLICANT'S REVIEW OF AIR FORCE EVALUATION:

Applicant notes most of his rebuttal will stem from the recent ruling by a federal judge on the illegality of AVIP.  He dismisses the advisory's contention that his application was filed after the three-year time limit by stating his discharge

was finalized on 6 March 2001, his DD Form 214, *Application for Correction of Military Record*, was dated 22 February 2004.

Applicant notes the federal judge who issued the first injunction order has recently remanded the FDA's final rule back to the FDA and has ordered a permanent injunction enjoining the DoD from ordering military personnel to participate in the AVIP without informed consent or a waiver by the President. He notes this is the second time a federal judge has declared the anthrax vaccine to be "investigational" and used for unapproved purposes. He acknowledges his commanders acted in good faith in 1999 when they ordered him to accept the vaccine. However, because the licensing of the anthrax vaccine is now unlawful, it should be deemed to have been unlawful in 1999. Consequently, by refusing to take the vaccination, he was disobeying an illegal order. He defers to the new injunction order for most of his argument against the DPPI advisory and notes the ANG advisory was written prior to the current injunction. Regarding his assertion his resignation was coerced, he states he was threatened with military disciplinary action prior to being ordered to take the vaccinations.

The DPPI advisory contends the federal ruling cannot be retroactive absent a statement to that effect. Applicant states the second ruling is retroactive, as the license for the anthrax vaccination is considered illegal now and using common sense and the Relation Back Doctrine, would have been considered illegal in 1999.

Applicant's complete response, with attachments, is at Exhibit E.

---

ADDITIONAL AIR FORCE EVALUATION:

HQ USAF/JA states the applicable law in this case does not compel the conclusion urged by the applicant. The law is well settled that military orders are "clothed with an inference of lawfulness", and "An order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate." This issue of lawfulness was applicable to the 1999 vaccination order the applicant refused, and is buttressed by the variety of pre-injunction authorities that concluded the AVIP was legal. Nevertheless, the applicant argues that, in light of the recent rulings in *Doe v. Rumsfeld*, and despite other case law supporting legality, AVIP must be considered illegal in 1999 and his refusal to obey the order to be vaccinated must be set aside. He contends this result is compelled by "common sense" and the "Relation Back Doctrine" making the real question in this case to be whether or not *Doe v. Rumsfeld* should be given retroactive application in his case.

"Relation Back" is a legal principle, applied in certain circumstances, "that an act done today is considered to have been done at an earlier time." On the other hand, "retroactive"

refers to whether a law "impose[s] a new duty, or attach[es] a new disability in respect to…transactions or considerations already past." With regard to retroactivity, the original opinion in *Doe v. Rumsfeld* granted only an injunction against further operation of the AVIP unless certain conditions were met. The court did not discuss possible retroactive application of its conclusion that the AVIP was illegal on the grounds anthrax was considered an investigational new drug and a drug being used for an unapproved purpose, without informed consent or Presidential waiver. The Supreme Court has applied a three-factor test in determining the extent to which a court's decision should be given retroactive effect: (1) whether the decision established a new principle of law; (2) whether retroactive application would further or retard the operation of the new law; (3) whether retroactive application would produce substantial inequitable results.

The Supreme Court has counseled caution when applying a court's rule retroactively: "Retroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." The Supreme Court's reluctance to endorse the theory of retroactive application, except for matters involving constitutional magnitude, is based on the importance of preserving finality in judicial proceedings. Therefore, JA contends that *Doe v. Rumsfeld* is not an "overruling decision" within the meaning of the general rule regarding retroactivity. While its conclusion regarding the legality of AVIP is contrary to the result in earlier decisions by other courts the decision in *Doe v. Rumsfeld* does not purport to, and indeed could not overrule any such decisions. Attempting to apply the *Doe v. Rumsfeld* decision retroactively would be inappropriate given the many different reasons that military members were discharged for failing to participate in AVIP. Not all members in this situation were similarly situated, claiming that the anthrax inoculation was experimental. Each case must be viewed on its own merits, taking into account the factual circumstances surrounding the member's discharge from the military. Consequently, JA contends the retroactive principle should not be applied in this case.

JAA also notes that the applicant knowingly and intentionally offered to resign in lieu of undergoing and administrative discharge. In waiving his right to an administrative discharge board, the applicant relinquished his opportunity to make an argument that the AVIP was illegal and the order to be inoculated was invalid. He should now be precluded from arguing that the holding in an unrelated case should be applied to his benefit. JA cautions that, in light of the pending appeal, applying *Doe v. Rumsfeld* as though it were a final decision is premature and JA recommends the AFBCMR not treat it as controlling at this time. In the event the *Doe v. Rumsfeld* decision is upheld by an appellate court, the applicant can request reconsideration at that time and the impact of the decision reassessed.

USAF/JAA's complete evaluation is at Exhibit F.

_____

APPLICANT'S REVIEW OF ADDITIONAL AIR FORCE EVALUATION:

Applicant notes the USAF/JAA advisory was prepared by the same person who prepared the DOD's prosecution position in early 2000 for a UCMJ case defending the legality of the AVIP against the first allegations of experimentation. Applicant notes he is only a pilot from a major airline and not a lawyer, yet he must be saying something the DoD does not want to hear to require such a strong response. What he is saying is that AVIP is illegal.

He has never questioned the veracity of the statement that military orders are clothed with an inference of lawfulness." Likewise, he has never questioned his commander's intent for ordering him to take the shots. He concedes his commanders were doing nothing but following orders as well. He notes commanders who did debate the illegal nature of the vaccine were run out of the military. However, the special status of the military and the specialized court system does not take away a soldier's constitutional rights. Soldiers questioning the validity of the order were not allowed to address the legality of the AVIP based on its experimental nature and were therefore denied their rights under the US Constitution.

The presumption that military orders are "clothed with an inference if lawfulness" is not sacrosanct. The fact that the federal court ruled twice that the FDA's actions were illegal based on a "summary judgment', a ruling not commonly or lightly used, indicates the court saw through the FDA's failure to properly regulate the vaccine. The court ruling was specific and the use of a summary judgment equates to patently illegality under the UCMJ is unambiguous. He states he was involuntarily discharged for disobeying an illegal mandate.

He contends the legal hyperbole concerning the Relation Back Doctrine and retroactivity is simple: the AVIP was, and always has been, illegal. He states the federal judge, at no time, did not conclude the program wasn't illegal in the past. The applicant states the JAA advisory's attempts to discredit the Relation Back Doctrine and retroactivity in this case has done just the opposite in that their statements support the fact "that an act done today is considered to have been done at an earlier time." The applicant states JAA provided two pages of legalese when addressing the effectiveness of the vaccine against inhalation anthrax. Applicant contends the evidence is overwhelmingly against the efficacy of the vaccine and further, the evidence shows it has never been proven effective against inhalation anthrax. He states common sense should be applied to his argument as if the vaccine mandate is illegal, the order to take the vaccine should also be considered illegal.

Applicant believes the DoDs vigorous defense of AVIP is due to the advisory's statement that "DoD went to considerable effort and expense, over many years, to vaccinate thousands of personnel…" Applicant contends the effort expended by DoD to convince each commander and soldier that the program was safe and effective is responsible for the hidden expense of the AVIP counted in billions of dollars spent on training now discharged or disciplined pilots and servicemen. Legal or not, he believes DoD thinks it impossible to back away from failed program because of the cost and time put into selling it: legal or not.

In defense of his resignation from the ANG he states he was going to be discharged anyway. Anything he did to defend his position, including an administrative DRB, would have proven fruitless. His counsel advised him to resign, as his conclusion was that the applicant would not receive an impartial board or a fair hearing, as they believed the findings of the Board were already known. Therefore he resigned with the promise of an honorable discharge from his commander.

He believes the JAA advisory was filled with "legal-speak' designed to "sell the vaccine" to the Board to keep the status quo. He contends while he resigned, he was actually thrown out of the ANG. He respectfully request the BCMR look into all the data in this case and make a prompt and informed decision.

Applicant's complete response is at Exhibit G.

---

THE BOARD CONCLUDES THAT:

1. The applicant has exhausted all remedies provided by existing law or regulations.

2. The application was not timely filed; however, it is in the interest of justice to excuse the failure to timely file.

3. Insufficient relevant evidence has been presented to demonstrate the existence of error or injustice. Applicant contends he was discharged from the Air National Guard for failure to participate in the Anthrax Vaccination Immunization Program (AVIP). Without making any judgements on the basis or process of his discharge at this time we note the applicant's request centers on the correctness of his failure to comply with an order to take the anthrax shots, and in support he cites a recent court decision *Doe v. Rumsfeld*. In this regard, the Board notes the Chief, Administrative Law Division, states that *Doe v. Rumsfeld* is still being litigated. The Board should take no corrective action on this application until the litigation has been finalized. Should the litigant's prevail in *Doe* against the Secretary of Defense, the Board would be willing to reconsider the applicant's requests. We find no compelling basis at this time to recommend granting the relief sought in this application. We agree with the rationale in the JAA advisory and adopt it as our own.

4. The applicant's case is adequately documented and it has not been shown that a personal appearance with or without counsel will materially add to our understanding of the issue(s) involved. Therefore, the request for a hearing is not favorably considered.

_____

THE BOARD DETERMINES THAT:

The applicant be notified that the evidence presented did not demonstrate the existence of material error or injustice; that the application was denied without a personal appearance; and that the application will only be reconsidered upon the submission of newly discovered relevant evidence not considered with this application.

_____

The following members of the Board considered AFBCMR Docket Number BC-2004-00203 in Executive Session on 31 March 2005, under the provisions of AFI 36-2603:

    Mr. Thomas S. Markiewicz, Panel Chair
    Mr. Michael K. Gallogly, Member
    Mr. James W. Russell, III, Member

The following documentary evidence was considered:

    Exhibit A.  DD Form 149, dated 18 Feb 04, w/atchs.
    Exhibit B.  Letter, ANG/DPP, dated 20 Oct 04, w/atchs.
    Exhibit C.  Letter, SAF/MRBR, dated 29 Oct 04.
    Exhibit D.  Letter, APPLICANT, dated 22 Nov 04, w/atchs.
    Exhibit E.  Letter, HQ USAF/JAA, dated 10 Feb 05.
    Exhibit F.  Letter, APPLICANT, dated 7 Mar 05.


                    THOMAS S. MARKIEWICZ
                    Chair

8

RECORD OF PROCEEDINGS
AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS

IN THE MATTER OF:                    DOCKET NUMBER:  BC-2004-00944
                                     INDEX CODE:  110.02

                                     COUNSEL:  NONE

                                     HEARING DESIRED: YES

_____

**APPLICANT REQUESTS THAT:**

a. His Officer Performance Report (OPR) for the period 9 July 1998 to 14 December 1998 be corrected to more fully represent his accomplishments during the time period indicated.

b. He be reinstated to the Connecticut Air National Guard (CTANG) flying program with back pay, allowances, longevity, lost "command pilot" rating, and a rank commensurate with his position upon return.

_____

**APPLICANT CONTENDS THAT:**

a. The CTANG violated the letter and spirit of the law without grounds by withholding records documenting his dismissal and initially obscuring Tiger Team Alpha's existence. Tiger Team Alpha was an ad hoc investigative panel tasked by applicant's Wing commander to identify, compile, and present findings regarding the Anthrax Vaccine Immunization Program (AVIP).

b. A federal court recently ruled that the AVIP violated United States law because the vaccine was considered investigational and it's license was never finalized.

c. The CTANG Commander did not have the legal authority to dismiss him, did not convene a discharge board, and did not convey concerns about the illegality of the AVIP.

d. The CTANG Wing Commander defrauded the State of Connecticut with falsities and constructed an unprofessional and maligning environment, forcing his resignation.

e. Coercion preceded his transfer from the CTANG and perpetuated the fraud with an unconstitutional retaliatory infringement of fundamental rights and due process rights.

f. Tiger Team Alpha's warning was hastily dismissed but later corroborated by congressional reports as well as by the CT Attorney General and the Federal Judicial Review.

g. He endeavored, through previous attempts in good faith, to return to the 103rd Fighter Wing (FW) to no avail. A previous pledge of reinstatement by his commander was not honored.

In support of his appeal, the applicant has provided personal statements, copies of OPR's including the OPR in question, pertinent background information, letters of recommendation and support, government data, Tiger Team inputs, and a partial transcript of an Inspector General (IG) investigation.

Applicant's complete submission, with attachments, is at Exhibit A.

---

STATEMENT OF FACTS:

The applicant began his military career on 27 May 1987 as a second lieutenant (2Lt/02) and graduated from undergraduate pilot training (UPT) as a first lieutenant (1Lt/03) in July 1989. He served as a fighter pilot through several active duty assignments and on 7 April 1994, he became an A-10 pilot with the CTANG in the grade of captain (Capt/03). On 28 May 1996, he left the CTANG for an active duty tour at Holloman AFB, NM to fly F-117 Stealth Fighters. On 9 July 1998, he rejoined the CTANG as Chief, Weapons Training. In September 1998, the wing commander announced the policy that all officers would begin receiving anthrax injections regardless of mobility status. In October 1998, the applicant was chosen by the wing commander to participate as part of a panel, referred to as "Tiger Team Alpha", to investigate the anthrax policy and try to capture the attitude of the unit. Tiger Team Alpha provided the wing commander with a report wherein the team presented data that questioned the efficacy of the anthrax inoculation and the legality of the AVIP. The wing commander condensed the teams' findings into a memorandum and forwarded it to NGB/CC. He asked for HQ-level guidance on how to proceed with the AVIP noting he was not equipped to address the issues and answer the questions posed by the team's findings. The unit began anthrax inoculations during November and December 1998. In January 1999, the applicant and seven other pilots refused to accept the anthrax injections and were at some point after their refusal removed from flying duties. All eight pilots eventually left the CTANG either by transfer or retirement. Applicant requested a transfer to the Air Force Reserve (AFRES) and, on 26 March 1999, he was accepted by the AFRES. He was promoted to major (04) with a date of rank (DOR) of 1 October 1999. He currently has over 17 years of combined active and Reserve service and is serving in the grade of major with the AFRES as a Flight Safety Officer.

In February 2004, applicant filed a complaint to the DOD/IG's Defense Hotline, who in turn forwarded his complaint to the Directorate for Military Reprisal Investigations for preliminary analysis. Their analysis showed his complaint of Whistleblower reprisal did not meet the unfavorable personnel action or timely reporting requirements as outlined under Title 10, United States

Code (U.S.C.) Section 1034 and DODD 7050.6, Military Whistleblower Protection. They found his 1999 resignation from the CTANG a voluntary action as all military members had the choice of complying with AVIP or resigning their positions. They stated they would not take any further action on his request.

Since applicant's transfer to the Reserve, several military members brought a civil action against the Department of Defense (DoD) for compelling military members to undergo anthrax inoculation without their consent. They maintained the anthrax used in the vaccination was an experimental drug unlicensed for its present use and that the AVIP violated federal law (informed consent). The court found the central question to be whether or not the anthrax vaccine was an "investigational" drug or a drug unapproved for its use against inhalation anthrax. On 22 December 2003, after hearing arguments, and absent a ruling from the FDA, the judge enjoined DoD from further inoculating service members without their consent and in the absence of a presidential waiver ordering such inoculation in the interest of national security. On 5 January 2004, the FDA published a Final Rule regarding the anthrax vaccine and stated the drug was safe and effective on all forms of anthrax. On 7 January 2004, the judge lifted the injunction, allowing DoD to continue mandatory anthrax vaccinations.

On 27 October 2004, the judge vacated the FDA's final rule and remanded it back to the FDA for reconsideration. Additionally, the judge found that if and/or when the FDA properly classifies the vaccine as a safe and effective drug for its intended use, an injunction shall remain in effect prohibiting defendants' use of the vaccine on the basis that the vaccine is either a drug unapproved for its intended use or an investigational new drug within the meaning of 10 U.S.C. Section 1107. Accordingly, he ordered the involuntary anthrax vaccination program, as applied to all persons, rendered illegal absent informed consent or a Presidential waiver.

On 23 December 2004, the government gave notice of appeal to the United States Court of Appeals for the District of Columbia Circuit regarding the court's 27 October 2004 ruling. No portion of the decision, which is final and binding on the parties, has been stayed pending the appeal.

---

AIR FORCE EVALUATION:

ANG/DPPI recommends denial. DPPI notes the applicant's contention the order to participate in the AVIP was not a lawful order, based on a federal judge's 22 December 2003 injunction upon the DoD to cease immunizing DoD employees. The injunction was pending the Food and Drug Administration's (FDA's) Final Report, which would determine the safety of the AVIP. On 7 January 2004, the injunction was lifted as the FDA's Final Report found the immunization program to be safe and effective. The applicant's contention that Senate Resolution 278, dated

25 November 2003, is a mandate or is directive in nature is without merit. The Senate Resolution is nothing more than a recommendation to the Secretary of Defense to reconsider the anthrax and smallpox immunization programs. Applicants continuing assertion that the injunction made the AVIP illegal and unlawful both now and in the past is an arbitrary statement based on current legal action being taken by six other military members who were discharged for not participating in the AVIP program in the past. Regarding the retroactivity argument, DPPI states the lifting of the injunction absent a statement indicating retroactivity does not indicate the injunction was legally retroactive by default. DPPI states had the injunction been retroactive the injunction order would have included a specific statement addressing retroactivity.

DPPI's complete evaluation, with attachments, is at Exhibit B.

_____

APPLICANT'S REVIEW OF AIR FORCE EVALUATION:

Applicant notes the federal judge who issued the first injunction order has recently remanded the FDA's Final Rule back to the FDA and has ordered a permanent injunction enjoining the DoD from ordering military personnel to participate in the AVIP without informed consent or a waiver by the President. He notes this is the second time a federal judge has declared the anthrax vaccine to be "investigational" and used for unapproved purposes. He defers largely to the new injunction order for most of his argument against the DPPI advisory and notes the advisory was written prior to the new injunction. Applicant states his disagreement with several aspects of NGB's opinion and contends NGB plainly ignored the evidence he submitted in his original application and in subsequent filings. Regarding NGB's contention he "claimed" he was "pressured to resign and leave the CTANG", he states it is a fact borne out not only by IG testimony but also by pertinent documents that were part of his application. At a minimum, he was wrongly discharged after warning his commander about an illegal order (per the latest federal court ruling) by blowing the whistle on the AVIP program. He states the retaliatory nature of this situation continues to this day as the CTANG still refuses to reinstate him to their flying program. He respectfully requests expeditious adjudication of his case in accordance with the spirit of DOD Directive 7050.6, The Military Whistleblower Protection Act.

Applicant's complete submission, with attachments, is at Exhibit D.

_____

ADDITIONAL AIR FORCE EVALUATION:

HQ USAF/JAA states the applicable law in this case does not compel the conclusion urged by the applicant. The law is well settled that military orders are "clothed with an inference of

lawfulness", and "An order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate." This issue of lawfulness was applicable to the 1999 vaccination order the applicant refused, and is buttressed by the variety of pre-injunction authorities that concluded the AVIP was legal. Nevertheless, the applicant argues that, in light of the recent rulings in *Doe v. Rumsfeld*, and despite other case law supporting legality, AVIP must be considered illegal in 1999 and his refusal to obey the order to be vaccinated must be set aside. He contends this result is compelled by "common sense" and the "Relation Back Doctrine" making the real question in this case to be whether or not *Doe v. Rumsfeld* should be given retroactive application in his case.

"Relation Back" is a legal principle, applied in certain circumstances, "that an act done today is considered to have been done at an earlier time." On the other hand, "retroactive" refers to whether a law "impose[s] a new duty, or attach[es] a new disability in respect to…transactions or considerations already past." With regard to retroactivity, the original opinion in *Doe v. Rumsfeld* granted only an injunction against further operation of the AVIP unless certain conditions were met. The court did not discuss possible retroactive application of its conclusion that the AVIP was illegal on the grounds anthrax was considered an investigational new drug and a drug being used for an unapproved purpose, without informed consent or Presidential waiver. The Supreme Court has applied a three-factor test in determining the extent to which a court's decision should be given retroactive effect: (1) whether the decision established a new principle of law; (2) whether retroactive application would further or retard the operation of the new law; (3) whether retroactive application would produce substantial inequitable results.

The Supreme Court has counseled caution when applying a court's rule retroactively: "Retroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." The Supreme Court's reluctance to endorse the theory of retroactive application, except for matters involving constitutional magnitude, is based on the importance of preserving finality in judicial proceedings. Therefore, JAA contends that *Doe v. Rumsfeld* is not an "overruling decision" within the meaning of the general rule regarding retroactivity. While its conclusion regarding the legality of AVIP is contrary to the result in earlier decisions by other courts the decision in *Doe v. Rumsfeld* does not purport to, and indeed could not overrule any such decisions. Attempting to apply the *Doe v. Rumsfeld* decision retroactively would be inappropriate given the many different reasons that military members were discharged for failing to participate in AVIP. Not all members in this situation were similarly situated, claiming that the anthrax inoculation was experimental. Each case must be viewed on its own merits, taking into account the factual circumstances

surrounding the member's discharge from the military. Consequently, JAA contends the retroactive principle should not be applied in this case.

JAA also notes that the applicant knowingly and intentionally offered to resign in lieu of undergoing and administrative discharge. In waiving his right to an administrative discharge board, the applicant relinquished his opportunity to make an argument that the AVIP was illegal and the order to be inoculated was invalid. He should now be precluded from arguing that the holding in an unrelated case should be applied to his benefit. JA cautions that, in light of the pending appeal, applying *Doe v. Rumsfeld* as though it were a final decision is premature and JA recommends the AFBCMR not treat it as controlling at this time. In the event the *Doe v. Rumsfeld* decision is upheld by an appellate court, the applicant can request reconsideration at that time and the impact of the decision reassessed.

USAF/JAA's complete evaluation is at Exhibit E.

_____

APPLICANT'S REVIEW OF ADDITIONAL AIR FORCE EVALUATION:

The applicant provided a 25-page rebuttal that for the most part presents a similar argument as that included in his application.

Applicant's complete submission, with attachments, is at Exhibit F.

_____

THE BOARD CONCLUDES THAT:

1. The applicant has exhausted all remedies provided by existing law or regulations.

2. The application was timely filed.

3. Insufficient relevant evidence has been presented to demonstrate the existence of error or injustice. It should be noted, regarding his request to be reinstated in the Connecticut Air National Guard, that this Board lacks the authority to grant such relief. In regard to his request to change his OPR, an OPR is considered accurate as written and without rating chain support the Board is not inclined to change the report. Furthermore, applicant contends he was coerced into transferring from the Air National Guard to the Air Force Reserve for failure to participate in the Anthrax Vaccination Immunization Program (AVIP). The applicant's requests center primarily on his unwillingness to comply with the order and in support cites a recent court decision *Doe v. Rumsfeld*. In this regard, the Board notes the Chief, Administrative Law Division, states that *Doe v. Rumsfeld* is still being litigated. Therefore, it would not be prudent for the Board to take any other action on this application until the litigation has been finalized. Should the

plaintiffs prevail against the Secretary of Defense, the Board would be willing to reconsider the applicant's requests. Therefore, we find no compelling basis at this time to recommend granting the relief sought in this application.

4. The applicant's case is adequately documented and it has not been shown that a personal appearance with or without counsel will materially add to our understanding of the issue(s) involved. Therefore, the request for a hearing is not favorably considered.

---

THE BOARD DETERMINES THAT:

The applicant be notified that the evidence presented did not demonstrate the existence of material error or injustice; that the application was denied without a personal appearance; and that the application will only be reconsidered upon the submission of newly discovered relevant evidence not considered with this application.

---

The following members of the Board considered AFBCMR Docket Number BC-2004-00944 in Executive Session on 31 March 2005, under the provisions of AFI 36-2603:

    Mr. Thomas S. Markiewicz, Chair
    Mr. Michael K. Gallogly, Member
    Mr. James W. Russell, III, Member

The following documentary evidence was considered:

    Exhibit A.  DD Form 149, dated 19 Mar 04, w/atchs.
    Exhibit B.  Letter, ANG/DPPI, dated 18 Oct 04, w/atchs.
    Exhibit C.  Letter, SAF/MRBR, dated 29 Oct 04.
    Exhibit D.  Letter, APPLICANT, dated 22 Nov 04, w/atchs.
    Exhibit E.  Letter, HQ USAF/JAA, dated 10 Feb 05.
    Exhibit F.  Letter, APPLICANT, dated 7 Mar 05, w/atchs.


                    THOMAS S. MARKIEWICZ
                    Chair

This is a version of http://boards.law.af.mil/cgi-bin/quickview.cgi?filename=NAVY/DRB/Navy%202005/ND0500318.rtf as it looked when our crawler examined the site on 1/11/2008. The page you see below is the version in our index that was used to rank this page in the results to your recent query. This is not necessarily the most recent version of the page - to see the most recent version of this page, visit the page on the web.

*Live.com is not affiliated with the content nor parties responsible for the page displayed below.*

Docket No. ND05-00318

9


The remaining portion of this document is divided into 4 Parts: Part I - Applicant's Issues and Documentation, Part II - Summary of Service, Part III - Rationale for Decision and Pertinent Regulation/Law, Part IV - Information for the Applicant.




DEPARTMENT OF THE NAVY

NAVAL DISCHARGE REVIEW BOARD (NDRB)

DISCHARGE REVIEW

DECISIONAL DOCUMENT




FOR OFFICIAL USE ONLY


 ex-ENS, USNR

Docket No. ND05-00318                                                    16

Applicant's Request


The application for discharge review was received on 20041214.  The Applicant requests the characterization of service received at the time of discharge be changed to honorable.  The Applicant requests a documentary record discharge review.  The Applicant did not designate a representative on the DD Form 293.  Subsequent to the application, the Applicant obtained representation by the American Legion.


Decision


A documentary discharge review was conducted in Washington, D.C. on 20050811.  After a thorough review of the records, supporting documents, facts, and circumstances unique to this case, an inequity in the characterization of the Applicant's service was discovered by the NDRB. The Board's vote was unanimous that the character and reason for the discharge shall change.  The discharge shall change to:  HONORABLE/ SECRETARIAL AUTHORITY, Separation Code ``JFF'', authority: SECNAVINST 1920.6B.


PART I - APPLICANT'S ISSUES AND DOCUMENTATION


Issues, as stated


Applicant's issues, as stated on the application:

``Applicant was given an administrative discharge for refusing to obey
an illegal order to submit to the Anthrax Vaccination Implementation
Program.  The United States District court recently ruled that the order
is, and always has been, illegal and has issued a permanent injunction
against the Department of Defense prohibiting them from ordering
personel to submit to this vaccine without their consent.  Applicant
respectfully requests that his discharge be upgraded to honorable.''


Additional issues submitted by Applicant's counsel/representative
(AMERICAN LEGION):


``Equity Issue:  Based on our review of evidentiary record and on behalf
of this former member, we opine that while this Applicant's
characterization of service was proper and equitable at the time of his
separation it is no longer just under current federal law and therefore
warrants the Boards relief.


Equity Issue:  We further aver on this former member's behalf that his
reason for discharge, misconduct, is no longer justified and therefore
again warrants the Boards relief with amendment to Secretarial
Authority.

_____


In accordance with Title 32, CFR, Section 724.116 and SECNAVINST
5420.174D, Part I, Paragraph 1.20, The American Legion submits to the
Naval Discharge Review Board (NDRB or Board) the above issues and
following statement in supplement to the Applicant's petition.


The Board's attention is invited to an administrative error in Block 25
of DD Form 214, which should also include SECNAVINST 1920.6B.


Service Record:  The SR is incomplete.  In particular, the discharge

package is missing.  Review of the available records reflect that this
former member served honorably and without incident until awarded NJP on
990811 for VUCMJ, Article 92: disobeying a lawful order on 000718 by
failing to submit to mandatory anthrax immunizations.  He received 30
days restriction and a punitive letter of reprimand.  His NJP was not
appealed.  On 990922, he provided a detailed 3-page statement regarding
his letter of reprimand and the justifications for his actions, which is
of record.  He was discharged General (Under Honorable Conditions) due
to misconduct as authorized by SECNAVINST 1920.6B and BUPERS Order 0950
of 000403 on 000430.


Applicant's Contentions:  Essentially, as noted on DD Form 293, this
Applicant is requesting that his discharge be upgraded because the
United States District court recently ruled that the order is, and
always has been, illegal and has issued a permanent injunction against
the Department of Defense prohibiting them from ordering personnel to
submit to the vaccine with out consent.


Supporting Evidence:  This Applicant has submitted a copy of the United
States District Court for the District of Columbia decision, John Doe
#1, et al, Plaintiffs, v. Donald J. Rumsfeld, et at Defendants, dated
041027, that he references in his issue in addition to copies of his
service record for consideration.  We opine that the conclusions and
order of that decision warrant emphasis and follows verbatim.


     ``HN28  This Court has an obligation to ensure that FDA follow the
law in order to carry our its vital *51 role in protecting the public's
health and safety.  By refusing to give the American public an
opportunity to submit meaningful comments on the anthrax vaccine's
classification, the agency violated the Administrative Procedure Act.
While the policy of submitting comments on an agency's proposed order
may be unusual, it is the course the agency chose to take and this Court
shall ensure that the agency follows through on its commitment to the
public.


     HN29  Congress has prohibited the administration of investigational
drugs to service members without their consent.  This Court will not
permit the government to circumvent this requirement.  The men and women
of the armed forces deserve the assurance that the vaccines our   19

government compels them to take into their bodies have been tested by
the greatest scrutiny of all - public scrutiny.  This is the process the
FDA in its expert judgment has outlined, and is the course this Court
shall compel FDA to follow.''


     Accordingly, it is by the Court hereby


     ORDERED the Plaintiff's Motion for Summary Judgment is GRANTED. The
FDA's Final Rule and Order is vacated and shall be remained to the
agency for reconsideration in accordance with *52 this Memorandum
Opinion and Order.  Unless and until FDA properly classifies AVA as safe
and effective drug for its intended use, an injunction shall remain in
effect prohibiting defendants' use of AVA on the basis that the vaccine
is either a drug unapproved for its intended use or an investigational
new drug within the meaning of 10 U.S.C.  1107.  Accordingly, the
involuntary anthrax vaccination program, as applied to all persons, is
rendered illegal absent informed consent or a Presidential wavier; and
it is further


     ORDERED that, in light of the finding with regard to Plaintiff's
Motion for Summary Judgment, Defendant's Motion for Summary Judge is
DENIED.''


Basis for Issues:  SECNAVINST 5420.174D, Part V, Paragraph 503, which
follows, in part, verbatim.


     ``A discharge shall be deemed to be equitable unless:


     a. In the course of a discharge review, it is determined the
policies and procedures under which the applicant was discharged differ
in material respects from policies and procedures currently applicable
on a service-wide basis to discharges of the type under consideration
provided that:

20

(1) Current policies or procedures represent a substantial enhancement of the rights afforded a respondent in such proceedings; and

(2) There is substantial doubt that the applicant would have received the same discharge if relevant current policies and procedures had been available to the applicant at the time of the discharge proceedings under consideration.''

The American Legion's express purpose in providing this statement and any other submittals or evidence filed is to assist this Applicant in the clarification and resolution of the impropriety or inequity raised. To that end, we rest assured that the NDRB's final decision will reflect sound equitable principles consistent in law, regulation, policy and discretion as promulgated by Title 10, USC, Section 1553 and set forth in Title 32, CFR, Part 724 and SECNAVINST 5420.174D.

This case is now respectfully submitted for deliberation and disposition.''

Documentation

In addition to the service record, the following additional documentation, submitted by the Applicant, was considered:

John Doe #1, et. al, v. Donald H. Rumsfeld, et al., No. 03-707, 2004 U. S. Dist. LEXIS 21668 (D.C.Dist.Ct. October 27, 2004) (9 pages)

Applicant's DD Form 214 (Member - 4)

Applicant's Law School Transcript, Northern Illinois University College of Law, dated January 3, 2005

21

Service Record Documents (39 pages)

Applicant's Law School Transcript, Northern Illinois University College of Law, dated June 20, 2005


PART II - SUMMARY OF SERVICE


Prior Service (component, dates of service, type of discharge):


       Inactive: USNR         971030 - 980907 COG (To report OCS)

       Active:   USNR (OC)      980908 - 981210 HON (To Accept Comm.)


Period of Service Under Review:


Date of Commission:  981211     Date of Discharge:   000430


Length of Service (years, months, days):


       Active:   01  04  20

       Inactive:  None


Age at Entry:  23                        Years Contracted:  8


Education Level:  16

Highest Grade:  ENS

Final Officer Performance Evaluation Averages (number of marks):  All officer performance reports were available to the Board for review.

Military Decorations:  None

Unit/Campaign/Service Awards:  Navy Pistol Sharpshooter Ribbon

Days of Unauthorized Absence:  None

Character, Narrative Reason, and Authority of Discharge (at time of issuance):

GENERAL (UNDER HONORABLE CONDITIONS)/MISCONDUCT, authority:  SECNAVINST 1920.6B.

Chronological Listing of Significant Service Events:

990718: Applicant acknowledged understanding of SECNAVINST 6230.4 dated 980429, ``What Every Service Member Needs to Know About the Anthrax Vaccine'' brochure and other related Anthrax vaccination information and that as a servicemember, understand the obligation to receive all mandatory vaccinations, including the Anthrax vaccine and that refusal of such vaccinations subjects myself to disciplinary action. [Documentation submitted by Applicant].

990806: Applicant notified of nonjudical punishment for violation of

UCMJ, Article 92 - Failure to obey Order or Regulation and advised of his rights.  [Documentation submitted by Applicant].


990809: Applicant advised of rights and having consulted with counsel, elected to accept nonjudicial punishment and not demand trial by court-martial.  Applicant indicated he would plead guilty of the offense and requested a personal appearance.  [Documentation submitted by Applicant].


990811: NJP for violation of UCMJ, Article 92:

Specification:  Having knowledge of a lawful order issued by Commander D_ E. R_, USN, Officer-in-Charge, Mil Dept, to submit to mandatory immunization(s) (ANTHRAX), an order which it was his duty to obey, did on or about 1300, 18 July 1999, fail to obey the same.

        Award:  Punitive Letter of Reprimand, restriction to the limits of Naval Submarine Base Pt. Loma for 30 days.


990903: Punitive Letter of Reprimand issued to Applicant.


990907: Applicant decided not to appeal the 11 August 1999 nonjudicial punishment.


990922: Applicant's Statement concerning the Punitive Letter of Reprimand.


991004: Commander, Military Sealift Command Pacific, reported to the Chief of Naval Personnel, via the Commander, Navy Region Southwest, of Applicant's nonjudicial punishment on 11 August 1999 for violation of UCMJ Article 92 and the award of a punitive letter of reprimand and restriction to limits for 30 days.  The Commander's comments:  ``I recommend that Ensign B_ G. B_ (Applicant) not be retained on active duty until the expiration of his obligated active service and that he be required to show cause for retention in the U.S. Navy.  Additionally, I

recommend Ensign B_ (Applicant) be detached from his current command, USNS NIAGARA FALLS (T-AFS 3).  Due to this misconduct on his part, I further recommend any promotion of Ensign B_ (Applicant) be delayed''.

991018: Commander, Navy Region Southwest, forwarded Commander, Military Sealift Command Pacific, letter of 991004 to Chief of Naval Personnel recommending a board of inquiry to evaluate whether cause exists to retain Applicant in the Navy.

991208: Chief of Naval Personnel advised Applicant that the Show Cause Authority reviewed the case and determined there is sufficient evident of record to separate you from the Naval Service.  Administrative action has been initiated based on misconduct due to the commission of a military or civilian offense, which, if prosecuted under the UCMJ, could be punished by confinement of six months or more; specifically , violation of the UCMJ, Article 92, violation of a lawful order as evidenced by NJP of 990811 and by substandard performance of duty, failure to demonstrate acceptable qualities of leadership required of an officer in your grade and failure to conform to prescribed standards of military deportment.  [Documentation submitted by Applicant].

000114: Applicant acknowledged his rights, elected not to tender a resignation, and did not desire to submit a statement.  [Documentation submitted by Applicant].

000125: Commander, Military Sealift Command Pacific, forwarded to CNP Applicant's acknowledgement of rights and recommended separation from the Naval service with characterization of discharge as General (Under Honorable Conditions).  [Documentation submitted by Applicant].

000403: DCNP issued separation order.

000430: DD Form 214:  Applicant discharged with a character of service as general (under honorable conditions) due to misconduct by reason of commission of serious offense.                          25

PART III - RATIONALE FOR DECISION AND PERTINENT REGULATION/LAW


Discussion


The Applicant was discharged on 20000430 with a general (under honorable conditions) for misconduct due to commission of a military or civilian offense, which, if prosecuted under the UCMJ, could be punished by confinement of six months or more (A and B).  After a thorough review of the records, supporting documents, facts, and circumstances unique to this case, the Board found that the discharge was inequitable (C).


Under applicable regulations, a discharge shall be deemed equitable unless it is determined that policies and procedures under which the Applicant was discharged differ in material respects from policies and procedures currently applicable on a service-wide basis provided that the current policies and procedures represent a substantial enhancement of rights afforded to the Applicant and there is substantial doubt that the Applicant would have received the same discharge if relevant current policies and procedures had been available to the Applicant at the time of the discharge proceedings.  The Applicant was discharged on 20000430 for misconduct due to commission of a military or civilian offense, which, if prosecuted under the UCMJ, could be punished by confinement of six months or more.  Specifically, the Applicant refused a direct order to take the Anthrax vaccination.  In the years between the Applicant's discharge and his application to this Board, the United States District Court for the District of Columbia has issued an injunction prohibiting the Department of Defense's use of the Anthrax vaccine on the basis that the vaccine is unapproved for its intended use or an investigational new drug within the meaning of applicable statutes.  Accordingly, the Court held that the involuntary anthrax vaccination program, as applied to all persons, is rendered illegal absent informed consent or a presidential waiver.  Subsequent to that ruling, the Court modified its order and permitted the voluntary administration of the anthrax vaccination pursuant to the terms of a lawful emergency use authorization under the Federal Food, Drug, and Cosmetic Act.

The Board concluded unanimously that the Applicant's case falls squarely within the above equity provision.  Current policies and procedures have reduced the Department of Defense Anthrax vaccination program to voluntary status.  A sailor may rightfully refuse the vaccine without fear of action under the UCMJ or administrative discharge.  Such policies represent a substantial enhancement of the Applicant's rights and there is substantial doubt as to whether the Applicant would have been discharged for his conduct given the current voluntary status of the vaccination.  As such, the elements of the above test are satisfied as both to characterization and narrative reason for separation.  The Board voted unanimously to change the discharge to Honorable/Secretarial Authority.  Relief granted.

The following if provided for the edification of the Applicant.  The NDRB has no authority to provided additional relief in this case.  The Applicant may, however, petition the Board for Correction of Naval Records (BCNR), 2 Navy Annex, Washington, DC 20370-5100, concerning a change in the characterization of naval service, if he desires further review of his case.

Pertinent Regulation/Law (at time of discharge)

A.  Secretary of the Navy Instruction 1920.6B (ADMINISTRATIVE SEPARATION OF OFFICERS), effective 13 December 1999 until Present.

B.  In Appendix 12 of the Manual for Courts-Martial, confinement for a period of six months or more is authorized for a violation of the Uniform Code of Military Justice, Article 92, failure to obey order or regulation, if adjudged at a Special or General Court Martial.

C.  Secretary of the Navy Instruction 5420.174D of 22 December 2004, Naval Discharge Review Board (NDRB) Procedures and Standards, Part V, Para 503, Equity.