UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARC J. MILLICAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-1582 (GK) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT AND RESPONSE TO
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff argues at length in his opposition that the case *Doe v. Rumsfeld*, 341 F. Supp.2d 1 (D.D.C. 2004) (Sullivan, J.) "retroactively rendered illegal the order he received to take the anthrax vaccination." (Dkt. 23 at 1-20.)  But this case does not turn on whether the Defense Department could have required Millican or any other service member to take the anthrax vaccine.  Rather, the administrative actions taken against Millican were predicated on his efforts to convince other members of his squadron not to consent to being vaccinated.  Even if the Defense Department could not require service members to be inoculated, it was improper for Millican – as a Major in the Air Force – to try to persuade junior service members not to consent to taking the vaccine.  If Millican believed that the anthrax vaccine was unsafe, he should have directly challenged the anthrax program as the plaintiffs in *Doe* did.

The *Doe* decision in 2004 also does not retroactively cause Millican's actions in 1999 to "evaporate[] into innocuous conduct." (*Id.* at 13.)  Millican's surreptitious efforts to persuade members of his squadron to refuse to participate in a Defense Department program meant to protect them from a potentially fatal bacterial disease justified the letter of reprimand, the

referral officer performance report, and Millican's removal from the promotion list for lieutenant colonel. The Air Force Board for Correction of Military Records ("Board") did not act arbitrarily or capriciously in upholding these administrative actions.

Moreover, this Court does not have jurisdiction to order Millican's promotion to lieutenant colonel. The decision whether to promote an officer is committed to the discretion of the President of the United States and is not subject to judicial review.

## ARGUMENT

I.    **THE AIR FORCE TOOK ADMINISTRATIVE ACTION AGAINST MILLICAN FOR ENCOURAGING OTHER SOLDIERS TO REFUSE TO PARTICIPATE IN A DEFENSE DEPARTMENT PROGRAM**

The Board concluded that the Air Force took administrative action against Millican based on his "attempts to dissuade other members of the squadron from participating in the" anthrax program. (AR 8.) The Board determined that this conduct, "in and of itself, was sufficient to warrant each of the administrative actions that were taken" against him. (*Id.*) Millican does not challenge this conclusion. Instead, he contends that the Air Force actually based the administrative actions on his refusal to personally take the anthrax vaccine. (Dkt. 23 at 18.) The record in this case dose not support Millican's contentions.

### A.  Letter of Reprimand (December 1999)

Millican's contention that the Air Force reprimanded him based on his refusal to take the anthrax vaccine ignores the plain language of the Letter of Reprimand. The letter does not mention his refusal take the vaccine. (AR 50.) Rather, the letter focuses exclusively on Millican's encouragement of other members of the squadron not to take the vaccine. (*Id.*) The Letter of Reprimand from Lt. Colonel Padilla to Millican explicitly states that:

> It has come to my attention that you have engaged in acts of a nature to cause discontent and undermine military discipline within this squadron. Specifically, after the members of this squadron were notified of the requirement to undergo the anthrax immunization series, you sought out and spoke with members of this squadron advocating that they refuse to undergo the anthrax protocol. Further, you actively encouraged other pilots to persuade additional members of your peer group (e.g., the pilot section) to defy official Air Force policy and refuse to undergo the anthrax immunization series. In furtherance of your apparent intent to raise discontent and disloyalty, you sent electronic mail to members of this squadron advising them that I do not care about them and encouraging them to disregard my advice and directives. . . . Your actions appear designed to disrupt the effectiveness of not just this squadron, but the Wing as a whole. For these actions, you are hereby reprimanded.

(*Id.*)

Based on the clear language of the letter, the Board reasonably found that "the commander reproached [Millican] not for refusing the anthrax shot, but for inciting disloyalty and mistrust within the squadron." (*Id.* at 5.) Millican has not shown that anything written in the Letter of Reprimand is untrue or unjust. His failure to identify a false statement in the letter conclusively rebuts his contention that the letter should be "corrected."

### B.    Officer Performance Report (March 2000)

Millican also asserts that the Referral Officer Performance Report was based on his refusal to take the anthrax vaccine. (Dkt. 23 at 18-19.) However, the Report plainly states that it is predicated on Millican's attempt "to foment discord within [his] unit and undermine the credibility of squadron leadership[.]" (AR 53.) Specifically, the Report states that Millican "[d]isplayed questionable judgment during [the] initial phases of the Anthrax Immunization program" when he (1) "[i]nappropriately used [his] leadership position in an attempt to influence other unit members to resist [the] program," and (2) when he "[a]ctively sought to foment discord and attempted to instill a culture of distrust for squadron leadership." (*Id.* at 55.)

3

Neither of these statements is based on Millican's refusal personally to take the anthrax vaccine. (*Id.*)  Moreover, Millican has failed to identify any portion of the Report that is erroneous or unjust.  His inability to identify anything false in the Report undercuts his assertion that the Board arbitrarily or capriciously refused to "correct" it.

### C.  Removal from the Promotion List (March 2000)

Millican asserts that the Air Force removed him from the promotion list for lieutenant colonel because he did not take the anthrax vaccine.  (Dkt. 23 at 18-19.)  However, the March 2000 Memorandum signed by Colonel Black explained to Millican that the "specific reason for [the removal] is your inappropriate actions . . . to foment discord within the [squadron] and to purposefully undermine the credibility of squadron leadership."  (AR 56.)  Colonel Black further stated that Millican "attempted to disrupt the orderly operation of this unit and Wing by encouraging other unit members to disregard my directives."  (*Id.*)  Contrary to Millican's assertion, the March 2000 Memorandum does not mention his refusal to take the anthrax vaccine.  (*Id.*)

The 2002 Memorandum to the President – which permanently removed Millican from the promotion list – is also predicated on Millican's efforts to convince other members of his squadron not to take the vaccine.  (AR 59.)  In particular, the 2002 Memorandum states that Millican "advised members of the squadron to refuse their anthrax inoculations" and that "he told members of the squadron, via e-mail, that the Squadron Commander did not care about them and that they should disregard his advice and directives."  (*Id.*)  The 2002 Memorandum does acknowledge that Millican refused to take the anthrax vaccine, but there is nothing in the Memorandum that indicates the decision to remove Millican's name from the promotion list was

based on this fact. (*Id.*) To the contrary, the Memorandum specifically references the Letter of Reprimand and the Officer Performance Report – both of which were based exclusively on Millican's efforts to convince other members of his squadron not to take the anthrax vaccine. (*Id.* at 50, 53.) The plain language of the Memorandum supports the Board's conclusion that, "[a]s with the [letter] and the [report], the promotion propriety action was based on [Millican's] attempt to cause dissension within the squadron[,] [which is] inconsistent with the standard of conduct and professionalism required for a lieutenant colonel." (*Id.* at 6.) Millican has failed to demonstrate that the Board's conclusion in this regard was either arbitrary or capricious.

## II.   MILLICAN'S CONDUCT HAS NOT BEEN RENDERED "INNOCUOUS" BY THE DISTRICT COURT'S DECISION IN *DOE v. RUMSFELD*

In *Doe v. Rumsfeld*, 341 F. Supp.2d 1 (D.D.C. 2004), six service members challenged the anthrax program because they believed that the vaccine had not been "licensed for the purpose of combating inhalation anthrax." *Doe*, 341 F. Supp.2d at 3. Although the FDA and Defense Department believed that the vaccine had been approved for this purpose, the court determined that it had not.[1] *Id.* at 16. The court did not find that the anthrax vaccine was unsafe. Nor did the court prohibit the Defense Department from administering the vaccine to members of the armed forces. *Id.* However, the court entered an injunction prohibiting the Defense Department from administering the vaccine to any service member without his or her informed consent until the FDA approved the vaccine for inhalation anthrax. *Id.* at 19. The FDA promptly approved the vaccine as safe and effective against inhalation anthrax, which "dissolved" the injunction.

---

[1] Every other court to consider the issue has held that the anthrax program was permissible. *See, e.g.*, *Marzales v. Dep't of the Navy*, 302 F.3d 1382 (Fed. Cir. 2002); *O'Neil v. Sec'y of the Navy*, 76 F. Supp.2d 641 (W.D. Pa. 1999).

*Doe v. Rumsfeld*, 172 Fed. Appx. 327 (D.C. Cir. 2006) (finding the appeal moot based on the FDA's classification of the vaccine as safe and effective).

Millican contends that his efforts to convince members of his squadron not to take the anthrax vaccine in 1999 has been rendered "innocuous" because of *Doe*. (Dkt. 23 at 13.) But *Doe* is inapposite because it involved a separate and distinct issue from the one presented here. The issue in *Doe* was whether the Defense Department could *require* service members to take the anthrax vaccine. Here, in contrast, the issue is whether it was appropriate for Millican – as a Major in the Air Force – to try to persuade service members not to take the vaccine. As Defendant demonstrates below, the Board correctly concluded that even if the Air Force could not require service members to take the vaccine, it was improper for Millican to attempt to persuade service members to decline to take it.

The military is a "specialized society separate from civilian society" that mandates strict obedience and compliance. *Parker v. Levy*, 417 U.S. 733, 743 (1974). For more than a century courts have recognized that: This specialized society "is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier." *In re Grimley* 137 U.S. 147, 153 (1890). The military does not, and need not, tolerate debate or protest. *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). In this highly regulated "society," officers hold a "particular position of responsibility." *Parker*, 417 U.S. at 743.

By trying to convince other members of his squadron not to take the anthrax vaccine – a vaccine being administered for the specific purpose of protecting soldiers from a potentially fatal bacterial disease – Millican fell far short of fulfilling his duty as a Major in the Air Force. The

decision in *Doe* does not mitigate the seriousness of Millican's conduct.

Moreover, the decision in *Doe* – which post-dates Millican's actions by four years – does not retroactively excuse his subversive behavior. Millican may not rely on a court case from 2004 to justify his conduct in 1999. For example, in *Loomis v. United States*, 68 Fed. Cl. 503, 505-07 (Fed. Cl. 2005), an Army officer who had been discharged in 1997 for conduct unbecoming an officer based on his engaging in homosexual conduct sought correction of his military records. The plaintiff relied, in part, on *Lawrence v. Texas*, 539 U.S. 558 (2003) (holding that criminal punishment for sodomy is unconstitutional). *Id.* at 513. In rejecting the plaintiff's argument, the court held that regardless of whether the military rule regarding homosexual conduct is invalidated in the future, the plaintiff had engaged in conduct unbecoming an officer by attempting to persuade a junior soldier to breach the rule in 1996 and 1997. *Id.* at 514.

Similarly, in *United States v. Bilby*, 39 M.J. 467 (C.M.A. 1994), a Captain in the Air Force was court-martialed for conduct unbecoming an officer based on his distribution of child pornography. *Bilby*, 39 M.J. at 467-68. The officer alleged that his guilty plea should be overturned because the underlying statute was subsequently found unlawful by the U.S. Court of Appeals for the Ninth Circuit. *Id.* at 468. In rejecting this argument, the court found that:

> We do not believe that it seriously can be doubted that a military officer's act of soliciting another person to violate a Federal statute is disgraceful and dishonorable conduct, without regard for the nature of the statute (that is, what it prohibits) or **for the lawfulness of the statute (that is, whether it ultimately is upheld as constitutional).**

*Id.* at 470 (emphasis added) (internal citations omitted). In this case, as in *Bilby* and *Loomis*, Millican may not rely on a court decision issued four years after he tried to persuade members of

7

his squadron not to take the anthrax vaccine to justify his conduct.

Moreover, even if the Court considers *Doe* relevant here, that decision is entirely consistent with the administrative action taken by the Air Force against Millican.  The *Doe* court did not find that the anthrax vaccine was unsafe or ineffective.  Rather, the *Doe* court merely required the Defense Department to obtain "informed consent" before administering the vaccine to service members.  *Id.* at 16.  The *Doe* court's ruling that the Defense Department was required to obtain the consent of service members is fully consistent with the Air Force's conclusion that it was improper for Millican to attempt to convince members of his squadron to refuse to take the vaccine.

Millican also argues that the injunction in *Doe* is "retroactive."  (Dkt. 23 at 2-10.) However, injunctions, virtually by definition, are *prospective* rulings.  *Cf. Missouri v. Jenkins*, 491 U.S. 274, 278-79 (1989); *Legal Assistance for Vietnamese Asylum Seekers v. Department of State*, 104 F.3d 1349, 1352 (D.C. Cir. 1997).  Injunctions either require a party affirmatively to do something or, as in *Doe*, prohibit a party from taking some action.  *Id.*  The injunction in *Doe* prohibited the Defense Department – in 2004 – from administering the anthrax vaccine to a service member without his or her consent.  *Doe*, 341 F. Supp.2d at 16 (The Defense Department "**may no longer** subject military personnel to involuntary anthrax vaccinations absent informed consent") (emphasis added).  The *Doe* court did not make any finding that supports Millican's contention that his conduct in 1999 and 2000 was proper.  Millican's argument about retroactivity also ignores the fact that a district judge's conclusions in a case are not binding on

any other district judge.[2]  *See, e.g.*, *Rann v. Chao*, 209 F. Supp.2d 75, 80 (D.D.C. 2002).

### III.  MILLICAN'S CONDUCT WAS NOT PROTECTED SPEECH UNDER THE FIRST AMENDMENT AND IT WAS NOT JUSTIFIED BY THE DEFENSE OF NECESSITY

Millican contends that the First Amendment protected his right to tell other members of his squadron not to take the anthrax vaccine.  (Dkt. 23 at 19.)  However, it is well-settled that "[w]hile the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections."  *Parker*, 417 U.S. at 758; *Culver v. Air Force*, 389 F. Supp.2d 331, 333-34 (D.D.C. 1975).  "Speech that is protected in the civil population may nonetheless undermine the effectiveness of response to command[;] if it does, it is constitutionally unprotected."  *Id.*; *see also United States v. Sollmann*, 59 M.J. 831, 834 (U.S.A.F. Ct. Crim. App. 2004) ("Military law is replete with examples of conduct protected by the First Amendment when performed by a civilian in the United States, which are criminal offenses for service members.")

In *Parker*, for example, a military physician told certain soldiers that they should "refuse to go to Vietnam."  *Parker*, 417 U.S. at 736-37.  The Supreme Court found "[t]his conduct, that of a commissioned officer publicly urging enlisted personnel to refuse to obey orders which might send them into combat, [] unprotected by the First Amendment."  *Id.*; *see also Culver*, 389

---

[2]  Although Millican does not expressly make the argument, he is effectively trying to use the doctrine of offensive collateral estoppel against the United States.  Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation."  *United States v. Mendoza*, 464 U.S. 154, 158-59 (1984).  However, offensive non-mutual collateral estoppel is not permitted against the United States.  *Id.* at 162.

F. Supp.2d at 334 (holding that a service member's participation in a demonstration against military policy was not protected).

In this case, the Defense Department sought to innoculate service members with a vaccine to protect them from a potentially fatal bacterial disease. The Defense Department (as well as the FDA) believed that the vaccine would reduce the likelihood that the service members would develop symptoms of anthrax if they were exposed to it as a result of a biological attack. Millican attempted to contravene this policy by persuading members of his squadron not to take the vaccine. This conduct was plainly intended to undermine the effectiveness of a specific Defense Department program. It is, therefore, not protected by the First Amendment. *Id.*

Millican's conduct was also not justified by the "defense of necessity." (Dkt. 23 at 20.) "To advance a necessity defense, [Millican] must have been faced with a choice of evils and chosen the lesser evil, acted to prevent imminent harm, reasonably anticipated a direct causal relationship between [his] conduct and the harm to be averted, and have had no legal alternatives to violating the law." *Office of Foreign Assets Control v. Voices in the Wilderness*, 329 F. Supp.2d 71, 82 (D.D.C. 2004). Millican does not meet this test. He was not faced with choosing the lesser of two evils, there was no imminent harm that he sought to avoid, and he plainly had legal alternatives that he could have pursued. *Id.*; *see also United States v. Barton*, 1988 WL 13174, * 5 (D.D.C. Feb. 11, 1988) (rejecting necessity defense in a case where individuals protested without a permit because "demonstrating without a permit was not compelled by the circumstances.") If Millican wanted to challenge the anthrax program, he should have done so directly (like the plaintiffs in *Doe*). His surreptitious efforts to undermine the program were simply not "necessary." *Id.*

IV.    **MILLICAN IS NOT ENTITLED TO A RETROACTIVE PROMOTION OR ANY OTHER RELIEF**

Millican wants to be promoted to the rank of Lieutenant Colonel. However, this Court does not have jurisdiction to promote Millican because a request for a retroactive promotion is "nonjusticiable." *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989); *Nation v. Dalton*, 107 F. Supp.2d 37, 41 (D.D.C. 2001). As the Court noted in *Kreis*, "[t]o grant such relief would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation." *Kreis*, 866 F.2d at 1511.

Millican nevertheless contends that his removal from the lieutenant colonel promotion list violated the "promotion delay and removal statutes." (Dkt. 23 at 21.) He argues that the promotion list is a "self-executing order[.]" (*Id.* at 22.) However, in order to be effective, a promotion requires the appointment of the President. *Lewis v. United States*, 458 F.3d 1372, 1379 (Fed Cir. 2006); *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed Cir. 2004). The President's decision not to appoint Millican to Lieutenant Colonel is dispositive. *Id.*

However, even if the Court considers Millican's statutory argument, he is still not entitled to be promoted. Millican contends that the Air Force may not delay a promotion longer than 18 months. *See* 10 U.S.C. § 14311 ("a promotion may not be delayed more than 18 months"). But the statutory provision cited by Millican relates to "delay[s] of promotion." *Id.* (enabling the Air Force to delay a promotion during a pending investigation or proceeding). In this case, the Air Force did not seek to "delay" Millican's promotion; it sought to deny him the promotion altogether by "remov[ing]" his name "from a list of officers recommended for promotion." *See* 10 U.S.C. § 14310. Removal actions are governed by a separate statutory provision – 10 U.S.C. § 14310 – that does not contain a specific time limit. *Id.* ("The President

11

may remove the name of any officer from a promotion list *at any time* before the date on which

the officer is promoted.")

Millican asserts that the 18-month deadline applicable in delay actions should be

incorporated into removal actions.  (Dkt. 23 at 23-30.)  However, the plain text of these statutory

provisions does not support this result.  As explained in the advisory opinion to the Board:

> Obviously, Congress could have required promotion removals to be completed
> within 18 months, but chose not to.  The rationale for their decision is evident.
> Congress recognized that a promotion should be delayed while a disciplinary
> investigation is being conducted, a board of officers has been convened, or a
> criminal proceeding is pending against the officer.  The delay gives the
> commander sufficient time to resolve uncertainties as to the appropriateness of
> promoting the officer.  However to prevent the delay from becoming indefinite,
> Congress imposed an 18-month limit on the delay period.
>
> A promotion removal action, however, requires a different decision making
> process.  At this point, the commander has already determined that by a
> preponderance of the evidence (often through the information obtained during the
> promotion delay), the officer is unfit to assume the higher grade and is
> recommending to the President through the chain of command that the promotion
> be canceled.  While a promotion removal action may involve delaying a
> promotion, the statutory purpose for the removal is distinct from the delay.  A
> delay is meant to determine if the officer should be promoted, pending the
> outcome of existing inquiries.  In contrast, in a removal action, a commander has
> already made the decision that the officer is not fit to assume the higher grade.

(AR 188-89.)  The memorandum issued to Millican made clear that Lt. Colonel Padilla intended

to remove Millican from the promotion list, and not merely to delay his promotion.  (*Id.* at 56.)

Thus, there was no specific time period in which the President had to act on that

recommendation.

Moreover, even if Millican is correct and a removal action must be completed in 18

months, his claim still fails.  The relief in cases of unlawful delay by an agency is an "order

compelling agency action."  *Nation*, 107 F. Supp.2d at 45.  Here, however, the removal of

Millican from the promotion list renders this remedy moot.  *Id.* ("The Secretary's removal of

plaintiff from the promotion list . . . renders this remedy moot.")

## CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion to dismiss or,

in the alternative, for summary judgment and deny Millican's motion for summary judgment.

Respectfully submitted,

_____

JEFFREY A. TAYLOR , D.C. Bar # 498610
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/ Harry B. Roback
_____

HARRY B. ROBACK, D.C. Bar # 485145
Assistant United States Attorney
United States Attorneys Office
555 4th Street, N.W.
Washington, D.C. 20530
Tel: 202-616-5309
harry.roback@usdoj.gov

OF COUNSEL:
Major Thomas R. Uiselt
Air Force Legal Operations Agency
Air Force General Litigation Division
1501 Wilson Blvd, 7th Floor
Arlington, VA 22209