UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
————————————————————————
MARC J. Millican,              :
                               :
          Plaintiff,           :
                               :
     v.                        :     Civil Action No. 06-1582 (GK)
                               :
UNITED STATES,                 :
                               :
          Defendant.           :
————————————————————————       :
```

## MEMORANDUM OPINION

Plaintiff Major Marc J. Millican brings this action against Defendant United States under the Administrative Procedure Act ("APA"). 5 U.S.C. § 700 et seq. Plaintiff challenges the decision of the Air Force Board for Correction of Military Records ("AFBCMR" or the "Board") denying Plaintiff's request to correct his file, and to void both his removal from the Lieutenant Colonel Air Force Reserve Promotion List (the "Promotion List") and his involuntary transfer to the Retired Reserve as a Major. This matter is now before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [Dkt. No. 18] and Plaintiff's Cross-Motion for Summary Judgment [Dkt. No. 23]. Upon consideration of the motions, oppositions, replies and the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss is **denied in part and granted in part**, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's Cross-Motion for Summary Judgment is **denied**.

## I. BACKGROUND

### A. Factual History[1]

In February 1999, when the relevant events began, Plaintiff Major Marc J. Millican ("Major Millican") was serving in the Air Force Reserve as a C-5 pilot in the 312th Airlift Squadron (the "Squadron" or the "312th") headquartered at Travis Air Force Base, California. Def.'s Statement of Facts at ¶ 2. On February 22, Major Millican's Squadron leader, Lieutenant Colonel Frank J. Padilla ("Lt. Col. Padilla"), sent all members of the 312th and their families a letter directing Squadron members to receive an anthrax vaccine before going on any airlift missions and in no case later than July 1, 1999. Administrative Record ("AR") [Dkt. No. 17] at 24-25.

Lt. Col. Padilla's letter was sent pursuant to the Anthrax Vaccination Immunization Program ("AVIP") initiated by the Department of Defense ("DOD") in 1998. Def.'s Statement of Facts at ¶ 3. Lt. Col. Padilla's letter acknowledged public controversy regarding the adverse physiological side effects of the vaccine, but stated that the vaccine had "virtually no known long-term side effects." AR at 24-25. Additionally, Lt. Col. Padilla encouraged

---

[1] As explained below, Defendant advances purely legal arguments in its Motion to Dismiss. Therefore, unless otherwise noted and in order to resolve Parties' Cross-Motions for Summary Judgment, the facts set forth herein are drawn from the Parties' Statements of Material Facts Not in Dispute submitted pursuant to Local Rule 7(h) and from the Administrative Record ("AR") [Dkt. No. 17].

Squadron members to educate themselves about the vaccine by conducting internet research. Id.

In the Squadron's May 1999 newsletter, Lt. Col. Padilla stated that Squadron members should "talk to people [they] know and trust" in deciding whether to receive the vaccine. Id. at 28. He also stated that if a member chose not to receive the vaccine, "we will respect your decision." Id. However, Lt. Col. Padilla pointed out that "[n]o pay or points are allowed after" May 31, 1999 without receipt of the anthrax vaccine and noted that "I don't want to see any of you go . . . not for this reason." Id.

In June 1999, Major Millican was considered for promotion to Lieutenant Colonel and received the highest rating of "definitely promote" from the 349th Wing commander, Colonel Gerard A. Black ("Col. Black"). Id. at 13. Accordingly, in July, Major Millican was selected for promotion to Lieutenant Colonel by the Fiscal Year 2000 Reserve of the Air Force Lieutenant Colonel Board, to become effective on June 22, 2000. Id. at 3, 13.

On July 26, 1999, Lt. Col. Padilla sent Major Millican a memorandum informing him that Squadron members who had not begun the anthrax vaccine regimen were no longer eligible to perform drills known as Unit Training Assemblies ("UTAs").[2] Id. at 45. Lt.

---

[2] Although neither the Administrative Record nor the parties' papers fully explain the concept of a UTA, it appears that UTAs are training drills of which officers must perform a certain number each year to maintain good standing for retirement benefits. AR at 45.

Col. Padilla's memorandum warned that further failure to receive the anthrax vaccine by August 20, 1999 could jeopardize Major Millican's status for retirement purposes, as subsequent UTA periods would not be excused. Id. Major Millican refused to receive the vaccine and was reassigned to the Standby Reserve on November 15, 1999. Id. at 46, 48-49.

During this time, Major Millican also urged other members of the 312th to refuse the anthrax vaccine. Def.'s Statement of Facts at ¶ 6. On December 19, 1999, Lt. Col. Padilla sent Major Millican a Letter of Reprimand ("LOR"), which he would later place in Major Millican's Unfavorable Information File. Id. at ¶ 7; AR at 50-51, 131. In the LOR, Lt. Col. Padilla stated that Major Millican had:

> engaged in acts of a nature to cause discontent and undermine military discipline within this squadron. Specifically, after the members of this squadron were notified of the requirement to undergo the anthrax immunization series, you sought out and spoke with members of this squadron advocating that they refuse to undergo the anthrax protocol. Further, you actively encouraged other pilots to persuade additional members of your peer group (e.g. the pilot section) to defy official Air Force policy and refuse to undergo the anthrax immunization series. . . . [Y]ou sent electronic mail to members of this squadron advising them that I do not care about them and encouraging them to disregard my advice and directives. On 2 September 1999 . . . you were disrespectful to me . . . [and] you also issued an implied threat against me.

AR at 50. Padilla considered Major Millican's "actions in encouraging discontent within the unit as a very serious breach in

judgment and leadership." <u>Id.</u>

In a memorandum dated March 13, 2000, Lt. Col. Padilla informed Major Millican that his Officer Performance Report ("OPR") cited his actions "to foment discord with this unit and undermine the credibility of the squadron leadership." Def.'s Statement of Facts at ¶ 9; AR at 53. The OPR gave Major Millican a rating of "Does Not Meet Standards" in the categories of (1) leadership, (2) professional qualities, and (3) judgment and decisions. Def.'s Statement of Facts at ¶ 9; AR at 54.

On the same date, March 13, 2000, Colonel Black sent Major Millican a letter explaining that he was recommending removing Major Millican's name from the Lieutenant Colonel Promotion List. Def.'s Statement of Facts at ¶ 11; AR at 56. Colonel Black referred to Major Millican's actions "to purposefully undermine the credibility of squadron leadership" and "to disrupt the orderly operation of this unit and Wing by encouraging other unit members to disregard my directives." AR at 56. Colonel Black also noted that Major Millican "demonstrated a total lack of regard for Air Force policies and procedures by failing to acknowledge no less than three official written communications requiring your response." <u>Id.</u> Finally, Colonel Black stated, "your promotion is delayed until the Secretary of the Air Force makes a decision on this recommendation" and instructed, "[y]ou are not to assume a higher grade even if your name appears on a promotion order." <u>Id.</u>

On May 12, 2000, Major Millican received notice from Colonel Linda A. Martin ("Col. Martin") that "by order of the Secretary of the Air Force and direction of the President, you are promoted as a reserve of the Air Force to the grade [of Lieutenant Colonel]," effective June 22, 2000. Id. at 57. Pursuant to Colonel Black's March 13 letter, Major Millican did not assume the rank of Lieutenant Colonel.

Nearly twenty-one months later, on January 7, 2002, the Department of Defense submitted to then-President George W. Bush a recommendation to remove Major Millican from the Fiscal Year 2000 Reserve of the Air Force Lieutenant Colonel Promotion List. The recommendation explained that Major Millican "refused to undergo an anthrax immunization," "advised members of the squadron to refuse their anthrax inoculations," and "told members of the squadron, via e-mail, that the Squadron Commander did not care about them and that they should disregard his advice and directives." AR at 59. President Bush approved the recommendation on April 17, 2002. Def.'s Statement of Facts at ¶ 13; AR at 59.

Under 10 U.S.C. § 14506, a Major in the Air Force Reserve who has twice failed to be promoted to the next higher rank must be removed from the reserve active-status list. Major Millican's removal from the Promotion List by President Bush was considered a first-time statutory non-selection for promotion. 10 U.S.C. § 14501(b)(3)(A); Def.'s Statement of Facts at ¶ 13.

In a memorandum dated October 2, 2002, Major Millican was informed that an Air Force Selection Board had again declined to select him for promotion. Def.'s Statement of Facts at ¶ 14; AR at 60. This decision was considered a second non-selection for promotion and triggered the mandatory separation requirement of 10 U.S.C. § 14506. Def.'s Statement of Facts at ¶ 14; AR at 60. Major Millican was therefore transferred to the Retired Reserves on April 1, 2003. Def.'s Statement of Facts at ¶ 15; AR at 60-61, 131.

**B.  Procedural History**

In July of 2003, Major Millican filed a petition for correction of military records with the AFBCMR. Def.'s Statement of Facts at ¶ 16. Specifically, Major Millican requested that the AFBCMR set aside the December 19, 1999 Letter of Reprimand and the Officer Performance Report sent to Major Millican on March 13, 2000. AR at 11. Major Millican further asked the AFBCMR to set aside his April 17, 2002 removal from the Promotion List as well as his second deferral of promotion in October 2002. Id. Finally, Major Millican requested that the AFBCMR set aside his April 1, 2003 transfer to the Retired Reserve, reinstate his application for promotion to Lieutenant Colonel, and retire him as a Lieutenant Colonel. Id.

Pursuant to 32 C.F.R. § 865.2(c), the AFBCMR solicited several advisory opinions before making its decision. On or about September 5, 2003, the Air Reserve Personnel Center, Selection Board

Secretariat ("ARPC/DPB") issued an advisory opinion to the AFBCMR recommending disapproval of Major Millican's request. Def.'s Statement of Facts at ¶ 17. On or about January 14, 2004, the Administrative Law Division of the Office of the Judge Advocate General of the Air Force ("USAF/JAA") also issued an advisory opinion to the AFBCMR recommending disapproval of Major Millican's request because he failed to "demonstrate the existence of any error or present facts and circumstances supporting an injustice." Id. at ¶ 19. Finally, on or about May 15, 2004, USAF/JAA issued a second advisory opinion to the AFBCMR, again recommending disapproval of Major Millican's request for the reasons previously stated. Id. at ¶ 22.

On or about August 4, 2004, the AFBCMR denied Major Millican's request for relief. Id. at ¶ 24; AR at 9. On December 19, 2005, Plaintiff filed a Complaint in the United States Court of Federal Claims seeking review of the AFBCMR's decision. See Transfer Order [Dkt. No. 1]. On August 24, 2006, the Court of Federal Claims granted Plaintiff's Unopposed Motion to Transfer to the U.S. District Court for the District of Columbia, and the case was randomly assigned to this Judge. Id.

On October 30, 2006, this Court granted Plaintiff's Unopposed Motion to Stay Proceedings pending the outcome of the related case, Doe v. Rumsfeld, 501 F. Supp. 2d 186 (D.D.C. 2007), which was on remand from our Court of Appeals. Doe v. Rumsfeld, 172 F.App'x. 327

(D.C. Cir. 2006); see Pl.'s Unopposed Mot. to Stay Proceedings [Dkt. No. 6]. This case was reopened on November 15, 2007.

Defendant filed its Motion to Dismiss, or in the Alternative, for Summary Judgment [Dkt. No. 18] ("Defendant's Motion to Dismiss") on December 19, 2007. Plaintiff filed his opposition and Cross-Motion for Summary Judgment [Dkt. No. 23] on March 8, 2008. Defendant filed an opposition and reply [Dkt. No. 26] on April 18, 2008. Finally, Plaintiff filed a reply [Dkt. No. 29] on May 16, 2008.[3]

## II. STANDARD OF REVIEW

Defendant asks the Court to dismiss Plaintiff's claims under Rule 12(b)(1). Under that Rule, Plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction. See Shuler v. U.S., 531 F.3d 930, 932 (D.C. Cir. 2008). In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all of the factual allegations set forth in the Complaint; however, such allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Wilbur v. CIA, 273 F. Supp. 2d 119, 122 (D.D.C. 2003) (citations and quotations omitted). The Court may rest its decision on its own resolution of disputed facts. Id.

---

[3] The Court regrets that so much time has passed between the Motions becoming ripe and the issuance of this decision.

Both parties also seek summary judgment. Summary judgment will be granted when there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c). Since this case involves a challenge to a final administrative agency decision, the Court's review on summary judgment is limited to the administrative record. Holy Land Found. for Relief and Dev. v. Ashcroft, 333 F.3d 156, 160 (D.C. Cir. 2003) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)); Richards v. Immigration & Naturalization Serv., 554 F.2d 1173, 1177 (D.C. Cir. 1977)) ("Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record.").

The decision of a military records corrections board must be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 702, 706; see Chappell v. Wallace, 462 U.S. 296, 303 (1983); Frizell v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997). "The arbitrary and capricious standard [of the APA] is a narrow standard of review." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). Moreover, it is well established in our Circuit that "[t]his court's review is . . . highly deferential" and "we are not to substitute [our] judgment for that of the agency but must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Bloch v. Powell, 348 F.3d 1060, 1070 (D.C. Cir. 2003) (internal

quotations omitted); see also United States v. Paddack, 825 F.2d 504, 514 (D.C. Cir. 1987).

Further, the decisions of a military board of correction are to be afforded an "'unusually deferential' version of the 'arbitrary or capricious standard.'" Appleby v. Geren, 330 F.App'x 196, 198 (D.C. Cir. 2009) (quoting Kreis v. Secretary of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). "[I]n reconciling the needs of military management with Congress's mandate for judicial review," "[p]erhaps only the most egregious decisions may be prevented under such a deferential standard of review." Kreis, 866 F.2d at 1515.

## III. ANALYSIS

In cross-motions, the parties seek either dismissal or judgment as a matter of law. Defendant seeks dismissal on two grounds. First, Defendant argues that the Complaint should be dismissed for lack of jurisdiction. Second, Defendant contends that Plaintiff's request for an order for retroactive promotion should be dismissed for lack of jurisdiction as well as failure to state a claim upon which relief can be granted. Alternatively, Defendant seeks summary judgment on the ground that the AFBCMR's decision was not arbitrary or capricious. Plaintiff seeks summary judgment on the ground that the AFBCMR's decision was arbitrary and capricious because: (1) a subsequent judicial ruling by another judge of this District Court that the anthrax vaccine was experimental renders his conduct non-punishable; (2) Plaintiff's conduct was protected

speech; and (3) Plaintiff's removal from the Promotion List was time-barred.

### A. This Court Has Jurisdiction to Review the AFBCMR's Decision to Affirm Plaintiff's Removal From the Promotion List

Defendant argues that the Complaint should be dismissed because this Court lacks jurisdiction to review the President's decision to remove Major Millican from the Promotion List and Major Millican's subsequent non-selection for promotion. Def.'s Mot. to Dismiss 17. Defendant states that promotion decisions are committed to agency discretion by law and are therefore nonjusticiable by a District Court. See id. at 17-22.

The Secretary of Defense has empowered the AFBCMR to amend military records. See Rempfer v. U.S. Dep't of Air Force Bd. for Corr. of Military Records, 538 F. Supp. 2d 200, 204 (D.D.C. 2008) (citing 10 U.S.C. § 1552). Hence, the AFBCMR constitutes an "agency" under the APA. See Levant v. Roche, 384 F. Supp. 2d 262, 267 (D.D.C. 2005). Under the APA, challenged agency actions carry a "presumption of judicial review." Kreis, 866 F.2d at 1513 (citing Abbott Laboratories v. Gardner, 387 U.S. 136, 140 (1967)). This presumption is overcome when an "agency action is committed to agency discretion by law." Id. at 513 (citing 5 U.S.C. § 701(a)(2)). An agency action is unreviewable by the courts if the statute authorizing it is "drawn in such broad terms that in a given case there is no law to apply." Id.

Defendant argues that 10 U.S.C. § 14310(a) is the relevant statute and governs removal of officers from promotion lists. Def.'s Mot. to Dismiss 18. Under 10 U.S.C. § 14310(a), "[t]he President may remove the name of any officer from a promotion list at any time before the date on which the officer is promoted." Defendant argues that 10 U.S.C. § 14310(a) satisfies the exception to presumptive judicial review because it is "drawn in such broad terms that in a given case there is no law to apply." Def.'s Mot. to Dismiss 18.

Determining whether 10 U.S.C. § 14310(a) renders Plaintiff's claim nonjusticiable is unnecessary. The agency action Plaintiff challenges is not, as Defendant claims, the President's removal of his name from the Promotion List under 10 U.S.C. § 14310(a). Rather, Plaintiff is challenging the denial by the Board of a corrections request to void his removal from the Promotion List. Am. Compl. 13. Therefore, the relevant statute to consider is 10 U.S.C. § 1552(a), which governs the correction of military records.

Under 10 U.S.C. § 1552(a), the Secretary of a military department or authorized board "may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." Courts in this jurisdiction have repeatedly held that the procedures applicable to AFBCMR actions are subject to judicial review. See Barnes v. U.S., 473 F.3d 1356, 1361 (Fed. Cir. 2007) ("a challenge

to the particular procedure followed in rendering a military decision may present a justiciable controversy") (internal quotations omitted); <u>Dysart v. U.S.</u>, 369 F.3d 1303, 1315 (Fed. Cir. 2004) ("The Corrections Board statute, 10 U.S.C. § 1552, provides for correction of military records . . . and for judicial review of the Board's decision"); <u>Chambers v. Green</u>, 544 F. Supp. 2d 10, 13 (D.D.C. 2008) ("Decisions of military records board can be set aside if they are arbitrary, capricious, or not based on substantial evidence.") (internal quotations omitted); <u>Levant</u>, 384 F. Supp. 2d at 267 ("[T]his Court does have jurisdiction to evaluate the reasonableness of the AFBCMR's decision not to take corrective action"). While the merits of promotion decisions may be nonjusticiable, "courts can evaluate whether the military follows the procedures mandated by statute or by its own regulations when making promotion decisions." <u>Barnes v. U.S.</u>, 473 F.3d at 1361 (citing <u>Dysart</u>, 369 F.3d at 1315).

Consequently, the Court concludes that Plaintiff's claims are justiciable under the APA.

## B. This Court Lacks Jurisdiction to Award a Retroactive Promotion

Plaintiff asks, among other forms of relief, this Court to award him the promotion to Lieutenant Colonel he claims was wrongfully denied. Pl.'s Cross-Mot. for Summ. J. 30-33. Defendant argues that "[p]romotion actions are nonjusticiable" and "this Court is without authority to order plaintiff's promotion." Def.'s

Mot. to Dismiss 21-22.

Our Court of Appeals has explained that a "request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions." Kreis, 866 F.2d at 1511. Allowing a court to order a promotion would require the judiciary to "second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the nation." Nation v. Dalton, 107 F. Supp. 2d 37, 41 (D.D.C. 2000). The courts have recognized that the judiciary is not competent to make such decisions, and that Congress vested the Secretary alone with the power to promote officers. See Orloff v. Willoughby, 345 U.S. 83, 93-94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."); Kreis, 866 F.2d at 1511.

Accordingly, Kreis distinguished between claims that "require the district court merely to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain action with respect to . . . [a] military record" and claims that seek retroactive promotion. 866 F.2d at 1511; see also Barnes, 473 F.3d at 1361 ("It is well-established that although the merits of military promotion decisions are nonjusticiable, a challenge to the particular procedure followed in rendering a military decision may present a

justiciable controversy.") (internal quotations omitted).

As in <u>Kreis</u>, Major Millican both has challenged the reasonableness of the Defendant's decision and has sought retroactive promotion. <u>See</u> Pl.'s Cross-Mot. for Summ. J. 30-33; <u>Kreis</u>, 866 F.2d at 1511. Therefore, as in <u>Kreis</u>, Plaintiff's request for retroactive promotion must be denied as nonjusticiable. <u>Kreis</u>, 866 F.2d at 1516.

Because the Court lacks jurisdiction over Plaintiff's claim for retroactive promotion, it need not reach Defendant's contention that under Federal Rule of Civil Procedure 12(b)(6), this claim should also be dismissed for lack of failure to state a claim.

**C.    The AFBCMR Decision Was Not Arbitrary, Capricious, or Contrary to Law**

In challenging the AFBCMR's decision, Plaintiff advances three arguments for overcoming the "unusually deferential version of the arbitary or capricious standard." <u>Appleby</u>, 330 F.App'x at 198 (internal quotations omitted). First, Plaintiff contends that a subsequent judicial decision that the anthrax vaccine was experimental renders his refusal to receive the vaccine non-punishable. Pl.'s Cross-Mot. for Summ. J. 2-19. Second, Plaintiff argues that his conduct in encouraging Squadron members not to take the vaccine was protected speech. <u>Id.</u> at 19-21. Third, Plaintiff argues that his removal from the Promotion List by the President was time-barred. <u>Id.</u> at 21-31. Plaintiff maintains that, for these reasons, the AFBCMR must be ordered to remove negative material in

his file, set aside his removal from the Promotion List and subsequent deferral of promotion, and reverse his transfer to the Retired Reserve. Id. at 31-33.

### 1. **Doe #1 v. Rumsfeld Does Not Require the AFBCMR to Correct Plaintiff's Record**

Plaintiff argues at some length that under Doe #1 v. Rumsfeld, 297 F. Supp. 2d 119 (D.D.C. 2003), his personal refusal to take the anthrax vaccine is not a basis for discipline as a matter of law. Therefore, in Plaintiff's view, the AFBCMR's refusal to set aside his LOR and OPR was arbitrary, capricious, and not in accordance with law under 5 U.S.C. §§ 702, 706. See Pl.'s Cross-Mot. for Summ. J. 2-19.

In December 2003, Doe #1 concluded that the AVIP, as administered by the Air Force Reserve in 1999, was illegal because the FDA had not approved the vaccine against inhalation anthrax. Doe #1, 297 F. Supp. 2d at 122-23. The nub of Plaintiff's argument is that Doe #1's injunction against the AVIP retroactively validated his conduct. Therefore, the AFBCMR should have removed all negative reviews in his file and reversed all adverse personnel decisions.

Doe #1, as this case, concerned members of the armed forces who were ordered to receive the anthrax vaccine. See id. at 122. The district court in Doe #1 enjoined the Department of Defense from inoculating military personnel absent informed consent or Presidential waiver. Id. at 135. The injunction eventually

dissolved by its own terms in 2005 when the FDA declared the anthrax vaccine safe and effective for its intended use. Doe v. Rumsfeld, 172 F.App'x. 327, 327-328 (D.C. Cir. 2006). Courts in this jurisdiction have interpreted the Doe litigation, taken as a whole, as establishing that, prior to 2005, military orders to receive the anthrax vaccine were illegal. See Rempfer, 538 F. Supp. 2d at 210.

Nonetheless, Doe #1's proscriptions do not control here. Plaintiffs in that case were threatened with discipline for their individual refusal to receive the vaccine. See Doe #1 v. Rumsfeld, 341 F. Supp. 2d 1, 3. The Administrative Record in this case makes clear that Major Millican was not disciplined for his individual refusal to receive the vaccine, but rather for his actions encouraging dissent among his peers and undermining his leaders. See AR at 3 ("applicant received an LOR for engaging in acts of nature [sic] to cause discontent and undermine military discipline"); AR at 50 (LOR sent by Lt. Col. Padilla because it "has come to my attention that you have engaged in acts of a nature to cause discontent and undermine military discipline within this squadron"); AR at 53 (OPR contains negative reviews because of Major Millican's actions "to foment discord . . . and undermine the credibility of squadron leadership"); AR at 56 ("The specific reason for [recommending removal from the Promotion List] is your inappropriate actions . . . to foment discord . . . and to

purposefully undermine the credibility of squadron leadership").

In reaching its decision, the AFBCMR considered the plain language of the LOR that attributed Plaintiff's reprimand to his attempts to cause discontent and undermine military discipline. AR at 3. The LOR detailed instances where Plaintiff urged his Squadron members to refuse participation in the AVIP, telling them that Lt. Col. Padilla did not care about them. Similarly, Major Millican's OPR cited his actions "to foment discord with this unit and undermine the credibility of the squadron leadership." AR at 53. When Colonel Black informed Major Millican that he would recommend his removal from the Promotion List, he also cited Major Millican's conduct "to purposefully undermine the credibility of squadron leadership" and "to disrupt the orderly operation of this unit and Wing by encouraging other unit members to disregard my directives." AR at 56. In short, the Administrative Record is replete with evidence that the LOR, OPR, and two non-selections for promotion were based on concern over Major Millican's spreading of discord among his Squadron members.[4]

---

[4] Although Deputy Secretary of Defense Paul Wolfowitz's recommendation to President Bush to remove Major Millican's name from the Promotion List does contain a one-sentence reference to Major Millican's individual refusal to receive the vaccine, there is no indication that the AFBCMR relied on that fact in its decision. See AR at 59. Further, it is significant that Plaintiff does not deny that he urged members of his unit to refuse the vaccine and that he fomented discontent and undermined military discipline.

The AFBCMR also reviewed advisory opinions solicited from the APRC/DPB and the USAF/JAA. AR at 4-7. These opinions made clear that Plaintiff was free to refuse the vaccine for himself, but "did not have the right to create the documented discord and undermine military discipline within his unit." AR at 66. The AFBCMR concluded that Plaintiff's LOR and OPR were a result of his attempts to encourage Squadron members to refuse compliance with the AVIP and were unrelated to Plaintiff's personal refusal of the vaccine. AR at 6 ("There was no evidence indicating the applicant was singled out due to his personal views on the anthrax program").

Doe #1 therefore does not govern the AFBCMR's decision in this case on this set of facts. Here, the Board fully examined the relevant evidence of Major Millican's conduct relating to his peers and drew a rational conclusion from that evidence. Moreover, Plaintiff did not produce any evidence demonstrating that he was disciplined for his individual refusal of the vaccine. See Delano v. Roche, No. 04-0830, 2006 WL 2687020, at *6 (D.D.C. Sept. 19, 2006) (finding that AFBCMR's denial of plaintiff's records correction request was not arbitrary or capricious because plaintiff produced no evidence supporting his theory that an injustice had occurred).

In sum, the Board's decision not to correct Major Millican's file was not arbitrary, capricious, or contrary to law, even in light of Doe #1. As the Board found, Major Millican "failed to

sustain his burden of establishing that he has suffered either an error or an injustice" resulting from discipline based on his encouraging of dissent and undermining of command. AR at 8.

### 2. Plaintiff's Encouragement of Others to Refuse the Anthrax Vaccine Was Not Protected Speech

Plaintiff next argues that, even if he was disciplined for urging others to refuse the anthrax vaccine, this speech was legally protected. Pl.'s Cross-Mot. for Summ. J. 19-20. Consequently, he reasons that any punishment for encouraging Squadron members to disobey orders was illegal and that the AFBCMR erred in not correcting his record. Plaintiff argues first that the LOR, OPR, and adverse personnel decisions violated his First Amendment right to free speech and association to "encourage others to uphold the law, and to prevent a crime." Id. at 19. Second, Plaintiff contends that his conduct was protected by the doctrine of necessity.

### i. Disciplinary Actions Against Plaintiff Did Not Violate his First Amendment Rights

The Supreme Court has ruled that "[w]hile the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections." Parker v. Levy, 417 U.S. 733, 759 (1974). Although "[d]isrespectful and contemptuous speech . . . is tolerable in the civilian community," other considerations must be weighed in the

military context. Id. Specifically, in military contexts, speech that "undermine[s] the effectiveness of the response to command" is unprotected. Id.; see also Culver v. Sec'y of Air Force, 389 F. Supp. 331, 334 (D.D.C. 1975).

Here, Plaintiff's conduct encouraging his Squadron members to disobey orders falls squarely within the realm of unprotected speech. Urging Squadron members to disregard orders and calling into question a commander's credibility and concern for his Squadron members "is constitutionally unprotected" because it "may . . . undermine the effectiveness of response to command." Parker, 417 U.S. at 759.

Plaintiff also argues that the Air Force lacks a legitimate interest in punishing him for his conduct, but provides no justification for this assertion and only refers back to the illegality of the AVIP. Pl.'s Cross-Mot. for Summ. J. 20. However, the relevant question is not the legality of the AVIP but rather the military's ability to censure an officer for protesting a policy he believes to be illegal by encouraging others to disobey orders. It is clear that the Air Force has a legitimate interest in prohibiting Plaintiff's conduct to promote discipline and uphold order among its members. See Parker, 417 U.S. 733, at 759 (rejecting First Amendment defense where military physician encouraged soldiers to refuse orders to go to Vietnam); Bitterman v. Sec'y of Defense, 553 F. Supp. 719, 724-25 (D.D.C. 1982)

(finding no Constitutional violation where Air Force forbid officer from wearing a yarmulke while in uniform because adherence to dress code promoted discipline).

### ii. Plaintiff's Conduct Was Not Justified by Necessity

Plaintiff argues that his attempts to encourage Squadron members to refuse the anthrax vaccine should not have been punished because he acted out of necessity. Pl.'s Cross-Mot. for Summ. J. 20-21.

Even assuming that necessity is an available defense, to invoke it, Major Millican must establish that: (1) he was faced with a choice of evils; (2) he acted to prevent imminent harm; (3) he reasonably anticipated a causal relationship between the conduct and the harm to be avoided; and (4) there were no legal alternatives to violating the law. Office of Foreign Assets Control v. Voice in Wilderness, 329 F.Supp.2d 71, 82 (D.D.C. 2004); U.S. v. Frankel, 739 F. Supp. 629, 632 (D.D.C. 1990).

First, the harm that Plaintiff was trying to prevent--the suffering of his Squadron members from adverse physical side effects--was not imminent. Nothing in the record suggests that the anthrax vaccine presented imminent harm to Plaintiff's Squadron members, particularly as the other members of the Squadron could have chosen to withdraw from the reserves and refuse the vaccine. Moreover, Plaintiff could only speculate that harm would occur

based on evidence he had gathered suggesting that the anthrax vaccine posed certain risks of adverse physical side effects.

Second, Plaintiff had a legal alternative to violating the law. The necessity defense is only available where "no reasonable, lawful alternative could prevent" imminent harm. U.S. v. Barton, No. 87-0259-OG, 1988 WL 13174, at *5 (D.D.C. Feb. 11, 1988). Major Millican could have challenged the legality of the AVIP directly. Indeed, that was the course adopted by the plaintiffs in Doe #1, who filed suit to enjoin the military from mandating the vaccine when they believed that the applicable order was unlawful. See Doe #1, 297 F. Supp. at 122.

For these reasons, Plaintiff's conduct was not justified and therefore the AFBCMR did not act contrary to law in refusing to change Major Millican's records.

### 3. Plaintiff's Removal from the Promotion List Was Not Untimely

Plaintiff contends that the AFBCMR's refusal to void his removal from the Promotion List was contrary to law because the removal was untimely. Pl.'s Cross-Mot. for Summ. J. 21-31. Plaintiff's name was removed from the Promotion List on April 17, 2002. Plaintiff's promotion date was June 22, 2000. Hence, Plaintiff's removal from the Promotion List occurred twenty-two months after his promotion date.

10 U.S.C. § 14311(d) governs the permissible length of delay for promotions due to investigation or lack of qualifications. It specifies that a promotion may be delayed for six months after the date of promotion if there are any ongoing investigations or proceedings or any cause to believe that the officer is not qualified. 10 U.S.C. § 14311(a)-(d). The Secretary of Defense may extend the period of delay to a maximum of eighteen months from the date of promotion. Id. If disciplinary or other action is not taken at the conclusion of the eighteen-month delay period, the officer receives the promotion as of the original promotion date. Id.

10 U.S.C. § 14310(a) governs removal from a promotion list by the President. That provision does not provide any time limit, but clearly states that the "President may remove the name of any officer from a promotion list at any time before the date on which the officer is promoted." 10 U.S.C. § 14310(a) (emphasis added). Plaintiff argues that the provisions must be read together, and that the President may not remove an officer from the Promotion List once the eighteen month delay period has run. Defendant contends that the provision governing removals, 10 U.S.C § 14310(a), imposes no time limit, should not be read in tandem with the promotion delay statue, and permits the President to remove a name from the Promotion List "at any time."

The Air Force has previously interpreted these provisions to permit the President to remove a name from the Promotion List at

any time. AFI 36-2504, ¶ 7.8, <u>Officer Promotion, Continuation and Selective Early Removal in the Reserve of the Air Force</u>, Jan. 3, 2003, available at http://www.e-publishing.af.mil/shared/media /epubs/AFI36-2504.pdf.[5]

Major Millican's promotion was delayed pursuant to AFI 36-2504, ¶ 7.8 on March 13, 2000, when Col. Black sent a letter explaining that he was recommending removing Major Millican's name from the Lieutenant Colonel Promotion List, and directing Major Millican "not to assume a higher grade even if your name appears on a promotion order." AR at 56. Major Millican's removal was then consummated by order of the President on April 17, 2002. AR at 59.

## i. **<u>Chevron</u> Step One Applies**

Parties dispute the degree of deference this Court should afford the Air Force's interpretation of these two provisions. Under <u>Chevron, U.S.A. v. NRDC</u>, 476 U.S. 837, 843 (1984), the Court employs a two-step test to determine whether it owes deference to an agency's interpretation of its governing statute. <u>See id.</u> The first step asks whether the statute is "silent or ambiguous with respect to the specific issue." <u>Id.</u> at 842-43. If the statute is not ambiguous and Congress has "directly spoken to the precise question at issue," then the Court and agency "must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> If the statute

_____

[5] The Navy and Army have interpreted the predecessor provision to 10 U.S.C. § 14310(a) differently. <u>Rolader v. U.S.</u>, 42 Fed. Cl. 782, 785-86 (1999).

is silent or ambiguous, then the Court must ask, at the second stage, whether the agency's interpretation is based on a "permissible construction of the statute." Id. at 843. If the agency's construction is permissible, then the Court must defer to its interpretation. Id. at 843.

In this case, we may stop our analysis at step one of Chevron. The simple fact is that 10 U.S.C. § 14310(a) is not ambiguous. Indeed, the language could not be clearer: the President may "at any time" remove the name of an officer from a promotion list. There are no exceptions or limitations set forth in Section 14310(a).

### ii.  10 U.S.C. § 14310(a) Has No Time Limit

When engaging in statutory interpretation, the Court's inquiry must always begin with the language of the statute. Duncan v. Walker, 533 U.S. 167, 172 (2001); Mayer Brown LLP v. IRS, 562 F.3d 1190, 1194 (D.C. Cir. 2009) ("In matters of statutory construction, the text is our primary guide"). If the text does not provide guidance on the issue, courts should avoid interpreting a statute in a way that renders it ineffective. See Wilderness Soc'y, Envtl. Def. Fund v. Morton, 479 F.2d 842, 855 (D.C. Cir. 1973).

10 U.S.C. § 14310(a), in its entirety, reads:

> Removal by President.--The President may remove the name of any officer from a promotion list at any time before the date on which the officer is promoted.

As already noted, Section 14310(a) does not contain any limitation on the timing of the President's power to remove a name from the Promotion List short of the date on which the officer is actually promoted. Section 14310(a) makes no reference to Section 14311(d) or any other provision of 10 U.S.C. §§ 14301-14317 (governing promotions), nor does any other provision of 10 U.S.C. §§ 14301-14317 purport to impose a limitation on Section 14310(a). Nothing in the briefly worded removal provision evinces any design to limit the President's authority to remove the name of an officer currently on a promotion list, but not yet promoted.

Plaintiff argues that the fact that 10 U.S.C. § 14310(a) is silent as to its relationship to 10 U.S.C. § 14311(d) demonstrates that Section 14310(a) is ambiguous as to time limits. Pl.'s Cross-Mot. for Summ. J. 26. Plaintiff's reasoning is unpersuasive.

The absence of any reference to Section 14311(d) is not an invitation to read Section 14311(d)'s proscriptions into the President's removal powers. "Appeals to the design and policy of a statute are unavailing in the face of clear statutory text." Sierra Club v. EPA, 536 F.3d 673, 679 (D.C. Cir. 2008). The lack of a specific time limit in Section 14310(a) simply represents Congress's choice not to apply any time bar to the President's ability to remove a name from the Promotion List prior to the date on which the officer is promoted. Indeed, Congress could easily have included similarly precise limits on removal under Section

14310(a) as it did on promotional delay under Section 14311(d). It
did not. See Russello v. U.S., 464 U.S. 16, 23 (1983) ("[W]here
Congress includes particular language in one section of a statute
but omits it in another section of the same Act, it is generally
presumed that Congress acts intentionally and purposely in the
disparate inclusion or exclusion.").

Congress's decision to distinguish between removal and
promotional delay is supported by a clear rationale. As the
USAF/JAA explained in its supporting opinion to the AFBCMR:

> A promotion removal action [unlike a promotion
> delay for investigation] . . . requires a
> different decision making process. At this
> point, the commander has already determined
> that by a preponderance of the evidence (often
> through the information obtained through the
> promotion delay), the officer is unfit to
> assume the higher grade and is recommending to
> the President through the chain of command
> that the promotion be canceled.

AR at 189.

Even if the legislation's rationale were not so sensible,
"when the statute's language is plain, the sole function of the
courts--at least where the disposition required by the text is not
absurd--is to enforce it according to its terms." In re England,
375 F.3d 1169, 1177 (D.C. Cir. 2004)(internal quotations omitted).
Here, Plaintiff was removed from the Promotion List by the
President pursuant to Section 14310(a) and not pursuant to the
separate provisions of Section 14311. Section 14310(a) plainly

places no time limit on the President's removal power prior to the date of promotion.

Because removal of Plaintiff's name from the Promotion List was not subject to any time restriction, the AFBCMR did not act contrary to law in denying Plaintiff's request to correct his record.

**IV.   CONCLUSION**

Defendant's Motion to Dismiss is **denied in part and granted in part**, Defendant's Motion for Summary Judgment is **granted**, and Plaintiff's Cross-Motion for Summary Judgment is **denied.**


October 13, 2010

/s/
Gladys Kessler
United States District Judge

**Copies to**: attorneys on record via ECF